**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HIRSCHBACH MOTOR LINES, INC.; JOHN CHRISTNER TRUCKING, LLC; THREE DIAMOND LEASING, LLC; GR EQUIPMENT LEASING, INC.; SCHUSTER COMPANY; SCHUSTER ENTERPRISES, LTD.; AEG LEASING LLC; SCHUSTER COMPANY, LLC, individually and on behalf of all others similarly situated, | Case No.: 1-24-cv-11979 |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| NAVISTAR, INC.; PACCAR INC.; and BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, | |
| Defendants | |

**CLASS ACTION COMPLAINT**

NOW COME the Plaintiffs HIRSCHBACH MOTOR LINES, INC., JOHN CHRISTNER TRUCKING, LLC, THREE DIAMOND LEASING, LLC, GR EQUIPMENT LEASING, INC., SCHUSTER COMPANY, SCHUSTER ENTERPRISES, LTD., AEG LEASING LLC, and SCHUSTER COMPANY, LLC, ("PLAINTIFFS") and bring this action as proposed class representatives, by and through their attorneys, and assert the following Class Action claims against Defendants NAVISTAR, INC. ("Navistar"), PACCAR INC. ("Paccar") and BENDIX COMMERCIAL VEHICLE SYSTEMS LLC ("Bendix"), (collectively "Defendants"):

## I.    Introduction & Summary of the Class Claims

PLAINTIFFS are national motor carriers, or the owners of commercial motor vehicles manufactured by Navistar or Paccar and equipped with the Bendix Advanced or Bendix Fusion forward collision mitigation / avoidance systems. PLAINTIFFS' business is the hauling of

freight for compensation throughout the Country utilizing commercial motor vehicles (18-wheelers). PLAINTIFFS purchased commercial motor vehicle power units equipped with collision mitigation systems (CMS) manufactured and supplied by Bendix to Navistar and Paccar for installation and use on the power units or "tractors" in a tractor-trailer commercial motor vehicle.

Navistar and Paccar are manufacturers of power units which are equipped with the Bendix Wingman Fusion collision mitigation system. This unit integrates a camera system and a radar system. In addition, Navistar and Paccar have sold power units with the Bendix Advanced System which is a radar only system. PLAINTIFFS have purchased thousands of power units sold by Navistar and Paccar equipped with the Bendix Wingman Fusion System or Bendix Wingman Advanced System and currently operates more than a 1,000 such power units.

In purchasing and operating these power units in its commercial motor vehicle business, PLAINTIFFS relied upon Navistar, Paccar, and Bendix to provide power units with collision avoidance/mitigation systems that were reasonably safe and performed in accordance with Navistar, Paccar, and Bendix's sales representations regarding these systems' capabilities. The Bendix Wingman Fusion and Wingman Advanced systems fail in their intended and designed purpose, and further fail to perform as advertised to PLAINTIFFS and others similarly situated. Navistar, Paccar, and Bendix sold these systems with full knowledge both the Wingman Fusion and Wingman Advanced systems were defective and not suitable for their intended advertised purpose while concealing these facts from PLAINTIFFS and the members of the class. Because of these actions by Navistar, Paccar, and Bendix, PLAINTIFFS have suffered millions of dollars in damages and the class has suffered hundreds of millions of dollars in damages.

PLAINTIFFS only recently learned of the defective nature of the Bendix Wingman Fusion System and Bendix Wingman Advanced System through recent expert testing. This testing revealed that both the Bendix Wingman Fusion System and Bendix Wingman Advanced System simply fail to perform at highway speeds and fail at their essential and intended purpose. As a result, this action is timely filed for purposes of the statute of limitations as to all vehicles purchased by PLAINTIFFS equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced crash mitigation system. PLAINTIFFS bring these claims on behalf of themselves, and all others similarly situated.

## II.  Parties

1.  Hirschbach Motor Lines, Inc. is a corporation organized under the laws of the State of Iowa, with its principal place of business in the State of Iowa.

2.  John Christner Trucking, LLC is an Oklahoma LLC organized under the laws of the State of Oklahoma with its principal place of business in the State of Oklahoma. This Plaintiff's membership can be traced to a single corporation owning 100% of its interest that is based in Iowa.

3.  Three Diamond Leasing, LLC is an Oklahoma LLC organized under the laws of the State of Oklahoma with its principal place of business in the State of Oklahoma. This Plaintiff's membership can be traced to a single corporation owning 100% of its interest that is based in Iowa.

4.  GR Equipment Leasing, Inc. is a Delaware Corporation with its principal place of business in Iowa.

5.  Schuster Company is an Iowa Corporation with its principal place of business in Iowa.

6.  Schuster Enterprises, LTD., is an Iowa Corporation with its principal place of business in Iowa.

7.      AEG LEASING LLC is an Iowa Limited Liability Company with its principal place of business in Iowa. This Plaintiff's membership can be traced to a single individual owning 100% of its interest who is a resident of Iowa.

8.      Schuster Co. LLC is an Iowa Limited Liability Company with its principal place of business in Iowa. This Plaintiff's membership can be traced to three individuals, two of whom are residents of Florida and one of whom resides in Iowa.

9.      Navistar, Inc. (hereinafter "Navistar") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Illinois, in DuPage County, and within the Eastern Division of the Northern District of Illinois.

10.      Paccar, Inc (hereinafter "PACCAR") is a corporation organized under the laws of the State of Delaware, with its headquarters in Bellevue, Washington, and is publicly traded on the NASDAQ exchange under the symbol PCAR.

11.      Bendix Commercial Vehicle Systems LLC (hereinafter "Bendix") upon information and belief, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the State of Ohio. Bendix's ownership can be traced to a German publicly traded company whose principal place of business is outside of the United States.

### III. Jurisdiction and Venue

12.      Pursuant to 28 U.S. Code § 1332, this Court has proper jurisdiction because all parties are diverse and the amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs.

13.     Pursuant to 28 U.S. Code § 1332(d), this Court has proper jurisdiction because PLAINTIFFS bring this claim as a class action, there is more than $5,000,000 in controversy, there is minimal diversity, and there are more than 50 class members.

14.     Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims and causes of action occurred in this district.

## IV.  Factual Allegations

15.     Navistar is a Delaware Corporation with its principal place of business located in Lisle, Illinois. Navistar manufactures and distributes Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

16.     Paccar is a Delaware Corporation with its principal place of business located in Bellevue, Washington. Paccar manufactures and distributes Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

17.     Bendix is a Delaware Limited Liability Company with its principal place of business located in Avon, Ohio. Bendix Commercial Vehicle Systems offers numerous component parts and systems for trucks and trailers, including antilock brake systems, stability systems, steering, advanced driver assistance systems, valves, accident mitigation/avoidance systems and complete wheel–end solutions.

18.     Bendix is a manufacturer of Frontal Crash Avoidance and Mitigation Systems for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

19.     Frontal Crash Avoidance and Mitigation Systems (commonly referred to as "FCA" in the trucking industry) are meant to prevent or mitigate rear end crashes between power units equipped with FCA technology and other vehicles on the road that are stopped or slowing.

20.     FCA technology is meant to act as a failsafe when the operator of a power unit fails to appreciate an impending collision with a stopped or slowing vehicle for any reason. In the trucking industry it is foreseeable that a commercial driver might be distracted or otherwise prevented from appreciating an impending rear end collision for several reasons including (but not limited to) distraction, impaired visibility, weather conditions, or environmental conditions like smoke to name a few. Safety testing has revealed that properly working FCA technology eliminates most crashes and mitigates the severity of others if the FCA technology provides adequate and timely driver alerts and autonomous braking.

21.     Bendix manufactures FCA systems and sells them to Original Equipment Manufacturers ("OEMs") like Navistar and Paccar to be equipped on the power units sold by Navistar and Paccar as original equipment.

22.     Bendix has two primary FCA systems used by OEMs for this purpose. One is known in the industry as the Bendix Wingman Fusion System. The second is known as the Bendix Wingman Advanced System.

23.     The Bendix Wingman Fusion System combines several components including Fusion radar, Fusion camera, Safety Direct Processor and Fusion brake controller into a computerized system which, relevant to this case, is supposed to provide Autonomous Emergency Braking (AEB), Stationary Vehicle Braking (SVB), Following Distance Alert (FDA), Impact Alert (IA), Stationary Object Alert (SOA) up to 3.5 seconds before an impending rear end collision between another vehicle or object and a power unit equipped with a Bendix Wingman Fusion System.

24.     The Bendix Wingman Advanced System combines several components including radar into a computerized system which, relevant to this case, is supposed to provide Autonomous Emergency Braking (AEB), Following Distance Alert (FDA), Impact Alert (IA), Stationary Object Alert (SOA) at up to 3.0 seconds before an impending rear end collision between another vehicle or object and a power unit equipped with a Bendix Wingman Advanced System. The Bendix Wingman Advanced System does not have a camera in the system.

25.     Since Bendix began selling the Bendix Wingman Fusion System and Bendix Wingman Advanced System, PLAINTIFFS have purchased thousands of Navistar and Paccar power units equipped with the Bendix Wingman Fusion System or Bendix Wingman Advanced System. The Class members have purchased hundreds of thousands of Navistar and Paccar power units equipped with either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System.

26.     PLAINTIFFS' and the Class members' decisions to purchase power units from Navistar and Paccar equipped with the Bendix Wingman Fusion System or Bendix Wingman Advanced System were heavily influenced by the representations made by Navistar, Paccar, and Bendix touting the efficacy and safety of the two Bendix FCA systems.

27.     Navistar, Paccar, and Bendix repeatedly represented that the Wingman Fusion System would provide up to 3.5 seconds of warning alerting the driver of a power unit equipped with the Bendix Fusion System of an impending rear end collision with either a stopped or slowing vehicle in the power units path of travel.

28.     Navistar, Paccar, and Bendix repeatedly represented that the Bendix Wingman Advanced System would provide up to 3.0 seconds of warning alerting the driver of a power unit

equipped with the Bendix Advanced System of an impending rear end collision with either a stopped or slowing vehicle in the power units path of travel.

29.     Upon information and belief, Navistar and Paccar properly installed the Bendix Wingman Fusion System or Bendix Wingman Advanced System in the power units purchased by PLAINTIFFS prior to their delivery to PLAINTIFFS.

30.      The Bendix Wingman Fusion System and Bendix Wingman Advanced System were designed, manufactured, supplied, distributed, and/or sold by Bendix, Navistar, and Paccar and were received by the PLAINTIFFS and class members.

31.     The power units equipped with either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System were defective and caused injury and damage to the PLAINTIFFS and the class, were unreasonably dangerous for their intended and expected use, and the unreasonably dangerous and defective condition existed at the time the power units left the DEFENDANTS' control.

32.     At all material times herein, these Bendix FCA systems were properly maintained by PLAINTIFFS and the class and were in good working order given the maintenance practices engaged in by PLAINTIFFS and the class along with no fault codes triggered which indicate that the Bendix Wingman Fusion System and Bendix Wingman Advanced System were not malfunctioning or behaving in an unusual fashion prior to numerous accident events occurring while power units equipped with these systems were being operated by PLAINTIFFS and the class. These accident events have led to millions of dollars in financial losses caused by the failure of these Bendix FCA systems to perform as represented and intended.

33.     PLAINTIFFS are in the class of persons that Bendix, Paccar, and Navistar should have reasonably foreseen may be subject to harm caused by the defective design and/or

manufacture of these power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System.

34.     During product development and/or testing of the Bendix Wingman Fusion System, on or about April 2, 2015, Navistar performed independent test drives of power units equipped with the Bendix Wingman Fusion System.

35.     During the testing, the Bendix Wingman Fusion System failed to detect a stationary pickup truck/utility trailer combination ahead of the Navistar power unit 30-50 percent of the time, resulting in the complete failure of its Autonomous Emergency Braking system to engage in each instance.

36.     On or about the same date, Navistar sent correspondence to Bendix documenting the detection and braking failures to William Amato who was the Lead Engineer for the Bendix Wingman Fusion System.

37.     Despite having actual knowledge of these detection and braking failures, Bendix (1) performed no further product testing of the Bendix Wingman Fusion System to specifically address Navistar's concerns, (2) classified the issue as "benign" in internal memoranda, and (3) determined to launch the Bendix Wingman Fusion System as scheduled and with current functionality.

38.     On or about July 2015, Navistar sent email correspondence to Bendix representatives with additional complaints regarding the performance of the Bendix Wingman Fusion System, including but not limited to the radar cone of vision being too narrow, necessitating the target vehicle ahead to be positioned directly in front of the radar sensor to be properly detected and alerted to the same.

39. On or about October 2015, Bendix performed a competitor comparison of then-existing FCA systems in the marketplace, including but not limited to the Detroit Assurance 2.0-4.0 and/or Meritor WABCO OnGuard Collision systems.

40. As a result of said competitor comparison, Bendix and Navistar had actual or constructive knowledge of reasonably feasible alternative designs of radar, camera, and/or algorithmic components that would detect the presence of stopped vehicles or vehicles traveling at substantially slower speeds and in the lane of travel of the Navistar and Paccar power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System, and, all of which was or should have been known as reasonably foreseeable scenarios to Bendix, Paccar, and Navistar, and that the Bendix Wingman Fusion System or Bendix Wingman Advanced System should be able to properly identify and warn a commercial motor vehicle driver with timely and adequate alerts to allow the driver to take corrective action to avoid a rear end collision in these reasonably foreseeable scenarios.

41. At all relevant times, Bendix, Paccar, and Navistar had a duty to exercise reasonable care and to comply with existing design standards of care which include designs for reasonably foreseeable events, in their preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion and sale of the power units equipped with the Bendix Wingman Fusion System or the Bendix Wingman Advanced System, which Bendix, Paccar, and Navistar introduced into the stream of commerce.

42. At all relevant times, Bendix, Paccar, and Navistar had a duty to warn its users and consumers of the risks and dangers associated with the subject power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System, and that their system design could not eliminate, design out, or guard against.

43.     At all relevant times, Bendix, Paccar, and Navistar knew or reasonably should have known that the subject power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System, were unreasonably dangerous and defective when used as directed, intended, and as designed for these reasonably foreseeable events.

44.     The power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System, are defective in design, formulation, and construction, and were unreasonably dangerous when the power units left the control of Bendix, Paccar, and Navistar and reached PLAINTIFFS without substantial alteration in the condition in which the power units were sold.

45.     At all relevant times herein, Bendix, Paccar, and Navistar marketed and advertised the Bendix Wingman Fusion System as a next generation advanced safety technology that provided a comprehensive driver assistance system that was more powerful than the other safety system technology combinations in the North American commercial vehicle marketplace.

46.     At all relevant times herein, Bendix, Paccar, and Navistar marketed and advertised the Bendix Wingman Fusion System as an advanced safety technology that would provide drivers of Bendix Wingman Fusion System equipped power units with up to 3.5 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate foreseeable rear-end collisions between their power units  and other vehicles or objects stopped or slowing in their power units' path of travel.

47.     At all relevant times herein, Bendix, Paccar, and Navistar marketed and advertised the Bendix Wingman Advanced System as an industry leading advanced safety technology that would provide drivers of Bendix Wingman Advanced System equipped power units with up to 3.0 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate

foreseeable rear-end collisions between their power units and other vehicles or objects stopped or slowing in their power units' path of travel.

48.     Bendix, Paccar, and Navistar's continuing representations that the Bendix Wingman Fusion System was the most powerful safety system available was false and the Defendants knew these statements were false when made.

49.     Bendix, Paccar, and Navistar's continuing representations that the Bendix Wingman Fusion System was an advanced safety technology that would provide drivers with 3.5 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate collisions was false and the Defendants knew these statements were false when made.

50.     Bendix, Paccar, and Navistar's continuing representations that the Bendix Wingman Advanced System was an advanced safety technology that would provide drivers with 3.0 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate collisions was false and the Defendants knew these statements were false when made.

51.     Bendix, Paccar, and Navistar concealed their knowledge of the true facts, that both the Bendix Wingman Fusion System and the Bendix Wingman Advanced System would fail in their essential design and purpose at highway speeds and would not provide adequate and timely warnings and automated emergency braking assistance to drivers in time to prevent or mitigate collisions.

52.     Bendix, Paccar, and Navistar also represented and advertised that the Bendix Wingman Fusion System's technical advances delivered, among other things, stationary vehicle braking and/or alerts to the commercial motor vehicle driver. The Bendix Wingman Fusion System was marketed, promoted, and designed to alert a driver or engage the Autonomous Emergency Braking system up to 3.5 seconds before an impact. The timing of this alert is

understood to provide a reasonable commercial driver with sufficient time to avoid or mitigate foreseeable rear end collisions involving either stopped or slowing vehicles and power units equipped with the Bendix Wingman Fusion System.

53.     Bendix, Paccar, and Navistar marketed, promoted, designed, and manufactured the Bendix Wingman Fusion System to detect objects, moving and stationary, within a range of 22 degrees and up to 500 feet away.

54.     Bendix, Paccar, and Navistar marketed, promoted, designed, and manufactured the Bendix Wingman Fusion System to create a viewing angle of 42 degrees when the radar and camera worked together, specifically advertising and marketing that the system detects objects visually much like a driver's eyes and is highly effective at determining the size, lane position, and critical characteristics of detected objects.

55.     Bendix, Paccar, and Navistar marketed, promoted, designed, and manufactured the Bendix Wingman Fusion System such that a driver would receive audible and visual alerts up to 3.5 seconds before potential impact when a large metallic object may be blocking a lane of travel.

56.     Despite Bendix, Paccar, and Navistar's marketing, promoting, designing, and manufacturing the Bendix Wingman Fusion System, the system fails to provide audible and visual alerts up to 3.5 seconds before potential impact when the system is engaged at speeds above 50 mph and even lower speeds at night or in low visibility situations.

57.     PLAINTIFFS' power units have been involved in numerous crashes where the Bendix Wingman Fusion System or Bendix Wingman Advanced System failed to perform as marketed, promoted, and designed leading to millions of dollars in economic damages to PLAINTIFFS and the class members.

58.     Class members have also been involved in numerous crashes where the Bendix Wingman Fusion System or Bendix Wingman Advanced System failed to perform as marketed, promoted, and designed leading to millions of dollars in economic damages to PLAINTIFFS and the class members.

59.     PLAINTIFFS' expert testing of the Bendix Wingman Fusion System has demonstrated that the system fails to perform in situations that are reasonably foreseeable or should have been known as reasonably foreseeable to Bendix, Paccar, and Navistar and thereby denies PLAINTIFFS and the class the benefits of a properly functioning FCA system causing PLAINTIFFS and the class members substantial economic damages including the costs of defending claims and out of pocket payments for self-insured retention, self-insurance, deductibles, and attorney fees and costs of litigation. PLAINTIFFS' and the class members' ability to access adequate insurance coverage and the costs of that coverage have also been impacted by accidents caused by the failure of the Bendix Wingman Fusion or Wingman Advanced Systems to perform as intended.

60.     The Bendix Wingman Fusion System and Bendix Wingman Advanced System were unreasonably dangerous and defective when used as directed in their design due to, but not limited to, the following:

> (a) Failure to detect stopped vehicles in the driving lane in the path of PLAINTIFFS' and the class members' power units;
>
> (b) Failure to timely alert and/or properly warn PLAINTIFFS and the class members commercial motor vehicle drivers of the presence of stopped vehicles in the driving lane in the path of PLAINTIFFS' and the class members' power units so as to avoid the subject accident or mitigate any damages resulting therefrom;
>
> (c) Failed to timely and/or properly engage the passive accident mitigation technology to avoid the subject accident or mitigate any damages resulting therefrom;

(d) Failed to provide appropriate "forward accident" warnings to PLAINTIFFS and the class members drivers when confronted with the presence of stopped vehicles within the driving lane of the PLAINTIFFS' and the class members' power units;

(e) Failed to timely provide "forward accident" warnings to PLAINTIFFS and the class members drivers when confronted with the presence of stopped vehicles within the driving lane of the PLAINTIFFS' and the class members' power units;

(f) Failed to warn, either orally or in writing, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or engage at such a time where no corrective action could be taken by PLAINTIFFS' and the class members' drivers when a stationary object would be blocking a lane of travel;

(g) Failed to warn, either orally or in writing, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or engage at such a time where no corrective action could be taken where a stationary object was occupying approximately half of the travel lane;

(h) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such a time where no corrective action could be taken by a driver with the presence of a grade being traveled upon and where a stationary object would be blocking a lane of travel;

(i) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such a time where no corrective action could be taken by a driver when operating at highway speeds;

(j) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such a time where no corrective action could be taken by a driver who is operating a power unit at 50 mph or greater;

(k) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System performance efficacy would decrease with higher speeds being traveled by semi-tractor trailers, particularly speeds greater than 50 mph;

(l) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such time where no corrective action could be taken by a driver

when operating at night or in circumstances of limited illumination and/or visibility;

(m) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System provided limited audio and/or visual warnings alerting a driver to a hazard ahead;

(n) Failed to provide sufficient audio and/or visual cues alerting a driver to a hazard ahead;

(o) Failed to equip the Bendix Wingman Fusion System with reasonably feasible alternative radar, camera, and/or algorithmic components that would have detected the presence of a with the presence of stopped vehicles within the driving lane of the PLAINTIFFS' and the class members' power units, and properly warned PLAINTIFFS' and the class members' drivers at such a time where corrective action could have been taken;

(p) Improperly equipped the Bendix Wingman Fusion System and Bendix Wingman Advanced System with a 24 GHz radar component which provided limited performance regarding the radar cone being too narrow and the radar's reach being limited to no greater than 500 feet when other competitors in the marketplace were utilizing 77 GHz radar units which provided a greater radar cone of vision and far greater reach, which limited the ability of the Bendix Wingman Fusion System and Bendix Wingman Advanced System to detect stationary objects blocking a lane of travel or portions of a lane of travel;

(q) Failed to provide PLAINTIFFS' and the class members' drivers in the Bendix Wingman Fusion System and Bendix Wingman Advanced System Operator's Manuals with proper warnings regarding its performance limitations in detecting the presence of stationary objects blocking a lane of travel or portions of a lane of travel, such that reasonably foreseeable drivers would comprehend and appreciate the risks associated with operating the Bendix Wingman Fusion System and Bendix Wingman Advanced System at highway speeds.

61.     The subject Navistar and Paccar power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System, were designed, manufactured and distributed by Bendix, Paccar, and Navistar and were unreasonably dangerous and defective beyond the extent contemplated by ordinary consumers with ordinary knowledge regarding these products, including drivers, owners, and operators of Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

62. The subject power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System were defective due to inadequate warnings and/or instructions describing the systems' limitations that should have been provided to its consumers in a practical manner for drivers, owners, and operators of Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

63. Navistar, Paccar, and Bendix engaged in a concerted marketing effort to misrepresent the quality, effectiveness, and capability of the Bendix Wingman Fusion System and Bendix Wingman Advanced System to its customers including PLAINTIFFS and the class members.

64. This marketing effort included flatly misrepresenting that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either the Bendix Wingman Fusion System or Wingman Advanced System at highway speeds and at night.

65. Navistar, Paccar, and Bendix concealed their own knowledge of the defects and limitations of the Bendix Wingman Fusion System and Bendix Wingman Advanced System including concealing their own discussions of the failings and limitations of the Bendix Wingman Fusion System and Bendix Wingman Advanced System from their customers such as PLAINTIFFS and the class members.

66. Navistar, Paccar, and Bendix took these actions to increase their sales of the Bendix Wingman Fusion System and Bendix Wingman Advanced System in an effort to capture market share and conceal the harm and risks associated with the defective Bendix Wingman Fusion System and Bendix Wingman Advanced System.

67. Navistar, Paccar, and Bendix made the misrepresentations and suppressed and concealed the true facts during the marketing and sales of their power units equipped with either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System.

68. Navistar, Paccar, and Bendix knew that by concealing their knowledge of these defects the Plaintiffs, the class members, and everyone else using America's roadways faced heightened risk of injury and death due to avoidable crashes involving their defective products.

69. Navistar, Paccar, and Bendix also knew at the time of making these misrepresentations and suppressing and concealing the true facts that its own customers, such as PLAINTIFFS and the class members, would suffer significant economic damages in the form of overpaying for the defective power units, the costs of retrofitting their power units with a safer alternative products such as the OnGuard or Detroit FCA systems, costs of defending claims involving avoidable collisions caused by the failure of the Bendix Wingman Fusion System and Bendix Wingman Advanced System to perform as intended, out of pocket payments for self-insured retention, self-insurance, deductibles, and attorney fees and costs of litigation arising out of avoidable collisions caused by the failure of the Bendix Wingman Fusion System and Bendix Wingman Advanced System to perform as intended, PLAINTIFFS and the class members increased time and effort to find and access adequate insurance coverage and the increased costs of that coverage because PLAINTIFFS' and the class members' claims experience has been more severe than it would have if PLAINTIFFS and the class members had the benefit of a properly functioning collision avoidance / collision mitigation system rather than the defective Bendix Wingman Fusion System and Bendix Wingman Advanced System.

## V. Class Action Allegations

70.     DEFENDANTS' uniform conduct is equally applicable to PLAINTIFFS and the Class. PLAINTIFFS bring this class action against DEFENDANTS for: (1) negligence; (2) strict products liability; (3) violations of the Illinois Consumer Fraud and Unfair Business Practices Act ("ICFA"); (4) Breach of Contract; and (5) Breach of Express and Implied Warranties.

71.     The damages model for the PLAINTIFFS and the Class includes ascertainable economic damages for: (1) overpaying for power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System; (2) the costs of retrofitting those power units with a working FCA system; (3) economic damages sustained by defending claims and making out of pocket payments for (a) self-insured retention, (b) self-insurance, (c) deductibles, (d) claims payments, (e) property damage, (f) lost time and revenue, and (g) attorney fees and costs of litigation arising from foreseeable and avoidable rear end crashes where the failure of either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System to perform as intended was *a* proximate cause of the crash, (h) increased costs of insurance, and other similar categories of recoverable damages suffered by PLAINTIFFS and the members of the class. PLAINTIFFS and the class members also seek an award of exemplary damages for DEFENDANTS' outrageous conduct in this case ratified and condoned by the highest levels of leadership and management in the DEFENDANTS' organizations, as well as attorney's fees and the costs of this litigation.

72.     PLAINTIFFS bring this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> (a) All persons as defined by law who purchased a new power unit equipped with either the Bendix Wingman Fusion System or Bendix

Wingman Advanced System and manufactured by either Navistar or PACCAR on or after January 1, 2015.

(b) Excluded from the class are all persons who are employees, directors, officers, and agents of any Defendant; governmental entities; and

(c) the Court, the Court's immediate family, and Court staff.

73. PLAINTIFFS reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

74. PLAINTIFFS allege that their class definition is adequate.

75. PLAINTIFFS allege that the class is ascertainable from the records of the Defendants and the members of the Class.

76. A class action is superior to individual actions to avoid the risk of inconsistent decisions and because common questions of law and fact predominate.

77. A class action is superior to individual actions because there are thousands of class members spread all over the United States, and joinder is impracticable.

78. With respect to commonality, the PLAINTIFFS and class members have alleged that the Defendants have negligently manufactured and distributed defective products, that the Defendants utilized false, deceptive, and unfair acts or practices in furtherance of their efforts to sell these defective products, that in so doing the Defendants breached their contract with the PLAINTIFFS and the members of the Class and breached their express or implied warranties. The allegations are such that a class action would generate common answers apt to drive the resolution of the litigation and the PLAINTIFFS and class members allegations depend upon common contentions of such a nature that the allegations are capable of class-wide resolution.

79.     The named PLAINTIFFS' claims are typical of the class members claims in this action. In other words, the PLAINTIFFS and class members' claims rise and fall on the ability to prove the wrongdoing of the Defendants in this case and arise from a core set of facts common to the Defendants and their alleged wrongdoing.

80.     The PLAINTIFFS are adequate class representatives who will fairly and adequately protect the interests of the Class. The PLAINTIFFS' claims are aligned with the Class they seek to represent and there are no conflicts of interest between the PLAINTIFFS and the members of the Class.

81.     The PLAINTIFFS have retained competent and skilled class counsel who will adequately represent the interests of the Class, have adequate resources to pursue the case to completion, and will invest the time and effort necessary to adequately represent the interests of the PLAINTIFFS and the Class.

82.     There are questions of law or fact common to class members that predominate over any questions affecting only individual members.

83.     The use of a class action in this context is superior to individual actions by members of the Class because the class action device will achieve economies of time, effort, and expense, and will promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This will result in judicial economy, protect the rights of absent class members, and promote consistency of treatment of the class members.

## VI. Causes of Action

### Count I
### NEGLIGENCE AGAINST BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.

84.    PLAINTIFFS allege and reassert Paragraphs 1-83 as if fully set forth herein.

85.    Bendix, Paccar, and Navistar knew, or in the exercise of reasonable care should have known, that the subject power units, including its Bendix Wingman Fusion System or Bendix Wingman Advanced System, and its related equipment, component parts, warning labels and constituents, was a product of such a nature that if it was not properly manufactured, designed, controlled, assembled, compounded, tested, inspected, packaged, labeled, or fabricated, constructed, analyzed, instructed, warned, distributed, supplied, maintained, repaired, serviced, merchandized, recommended, advertised, promoted, marketed, sold, or leased for the use and purpose which it was intended, it was likely to injure individuals and expose individuals to a reasonably foreseeable risk of harm.

86.    Bendix, Paccar, and Navistar had a duty to properly manufacture, design, control, assemble, compound, test, inspect, package, label, fabricate, construct, analyze, instruct, warn, distribute, supply, maintain, repair, service, merchandize, recommend, advertise, promote, market, sell, or lease the Bendix Wingman Fusion System and Bendix Wingman Advanced System, and its related equipment, component parts, warning labels and constituents for use by its customers such as the PLAINTIFFS and class members.

87.    Bendix, Paccar, and Navistar negligently and carelessly breached their duty to the PLAINTIFFS and the class members by failing to properly manufacture, design, control, assemble, compound, test, inspect, package, label, fabricate, construct, analyze, instruct, warn, distribute, supply, maintain, repair, service, merchandize, recommend, advertise, promote, market, sell, or

lease the Bendix Wingman Fusion System and Bendix Wingman Advanced System, and its related equipment, component parts, warning labels and constituents for use by the PLAINTIFFS and the class members.

87.     As a direct and proximate result of one or more of the foregoing negligent acts, PLAINTIFFS and the class members claim injuries and damages as set out herein.

WHEREFORE, PLAINTIFFS and the class members pray for entry of a judgment in their favor and against BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. under Count I of its Complaint for all damages and injuries suffered by each and every member of the class due to the negligence of Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. and to the fullest extent permitted by law.

## Count II
### STRICT TORT LIABILITY AGAINST
### BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.

88.     PLAINTIFFS reallege Paragraphs 1-87 as if fully set forth herein.

89.     The subject Navistar and Paccar power units equipped with the Bendix Wingman Fusion System or Bendix Wingman Advanced System and their component parts, which were designed, manufactured and distributed by Bendix, Paccar, and Navistar, were defective and unreasonably dangerous in their design, manufacture, and warnings at the time the power units left the possession of Bendix, Paccar, and Navistar and were delivered to the PLAINTIFFS and the class members in an unreasonably dangerous and  defective condition unsuitable their intended uses and purposes.

90.    The power units sold by Navistar and Paccar and equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System were unreasonably dangerous and defective when used as directed in their design due to, but not limited to, the following:

(a) Failure to detect stopped vehicles in the driving lane in the path of PLAINTIFFS' and the class members' power units as is reasonably foreseeable and reasonably expected by consumer end users such as PLAINTIFFS and the class members;

(b) Failure to timely alert and/or properly warn PLAINTIFFS' and the class members' power unit drivers of the presence of stopped vehicles in the driving lane in the path of PLAINTIFFS' and the class members' power units with sufficient time to act to avoid the subject accident or mitigate any damages resulting therefrom;

(c) Failed to timely and/or properly engage the Autonomous Emergency Braking technology to avoid reasonably foreseeable impending crash situations such as a stopped or slowing vehicle in the path of travel in time to avoid the crash or mitigate any damages resulting therefrom;

(d) Failed to provide appropriate "forward accident" warnings to PLAINTIFFS' and the class members' drivers when confronted with the reasonably foreseeable presence of stopped vehicles within the driving lane of the PLAINTIFFS' and the class members' power units;

(e) Failed to timely provide "forward accident" warnings to PLAINTIFFS' and the class members' drivers when confronted with the reasonably foreseeable presence of slowing vehicles within the driving lane of the PLAINTIFFS' and the class members' power units;

(f) Failed to warn, either orally or in writing, that the power units equipped with either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System would not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending crash scenarios such as a stationary or slowing vehicle or other object blocking a lane of travel;

(g) Failed to warn, either orally or in writing, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending crash scenarios such as a stationary or slowing vehicle or other object occupying approximately half of the power units' travel lane;

(h) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System or Bendix Wingman Advanced System would not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending crash scenarios such as a stationary or slowing vehicle or other object fully or partially blocking a lane of travel when there is a slight grade in the lane of travel;

(i) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System or Bendix Wingman Advanced System would not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending crash scenarios such as a stationary or slowing vehicle or other object in the power units path of travel when operating at highway speeds;

(j) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System or Bendix Wingman Advanced System would not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending crash scenarios such as a stationary or slowing vehicle or other object when the power unit is traveling at 50 mph or greater;

(k) Failed to warn, either in writing or orally, that Navistar and Paccar power units equipped with the Bendix Wingman Fusion System and the Bendix Wingman Advanced Systems suffer severe performance deterioration as operating speeds increase to 50 mph and higher and will not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending rear-end crash scenarios these FCA systems were designed to avoid or mitigate;

(l) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System or Bendix Wingman Advanced System would not provide PLAINTIFFS' and the class members' drivers with timely alerts, warnings, and Autonomous Emergency Braking when confronted with reasonably foreseeable impending crash scenarios such as a stationary or slowing vehicle or other object when operating at night or in circumstances of limited illumination and/or visibility;

(m)Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System or Bendix Wingman Advanced System provided limited audio and/or visual warnings alerting a driver to a hazard ahead when operating at 50mph or greater;

(n) Failed to provide sufficient audio and/or visual cues alerting a driver to a hazard ahead; Failed to equip the Bendix Wingman Fusion System or Bendix Wingman Advanced System with reasonably feasible alternative radar, camera, and/or algorithmic components that would have detected the presence of stopped or slowing vehicles within the driving lane of the PLAINTIFFS' and class members' power units, and properly and timely warned PLAINTIFFS' and class members' drivers where corrective action could have been taken to avoid or mitigate reasonably foreseeable rear-end collisions;

(o) Improperly equipped the Bendix Wingman Fusion System or Bendix Wingman Advanced System with a 24 GHz radar component which provided limited performance regarding the radar cone being too narrow and the radar's reach being limited to no greater than 500 feet when other competitors in the marketplace were utilizing 77 GHz radar units which provided a greater radar cone of vision and far greater reach, which limited the ability of the Bendix Wingman Fusion System or Bendix Wingman Advanced System to detect stationary or slowing vehicles or objects blocking a power unit's lane of travel or portions of their lane of travel;

(p) Failed to provide PLAINTIFFS' and class members' drivers in the Bendix Wingman Fusion System or Bendix Wingman Advanced System Operator's Manual with proper warnings regarding its performance limitations reasonably foreseeable situations including detecting the presence of stationary or slow moving objects blocking a lane of travel or portions of a lane of travel, such that reasonable drivers would comprehend and appreciate the risks associated with operating the Bendix Wingman Fusion System or Bendix Wingman Advanced System at highway speeds.

91.     As a direct and proximate result of one or more of the foregoing defects, PLAINTIFFS and the class members have been caused to suffer injuries and damages as set out herein and they claim all damages allowed by law on behalf of itself and all members of the class.

WHEREFORE, PLAINTIFFS and the class members pray for entry of a judgment in their favor and against BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. under Count II of its Complaint for all damages and injuries suffered by each and every member of the class due to the wrongdoing of Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. and to the fullest extent permitted by law.

**Count III**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT, 815 ILCS 505/1 ET. SEQ. ("ICFA")**
**AGAINST BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.**

92.     PLAINTIFFS reallege Paragraphs 1-91 as if fully set forth herein.

93.     The Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use or employment of any
> deception or fraud, false pretenses, false promise, misrepresentation
> or the concealment, suppression or omission of any material fact,
> with intent that others rely upon the concealment, suppression, or
> omission of such material fact, or the use or employment of any
> practice described in Section 2 of the "Uniform Deceptive Trade
> Practices Act," . . . in the conduct of any trade or commerce are
> hereby declared unlawful whether any person has in fact been
> misled, deceived or damaged thereby.

94.     At all times herein, PLAINTIFFS and the class members are consumers within the

definitions and case law interpreting the Act. 815 ILCS 505/1(e).

95.     At all times herein, Navistar, Paccar, and Bendix were engaged in trade or

commerce as those terms are defined in the Act. 815 ILCS 505/1(f).

96.     As alleged in the preceding paragraphs herein, Navistar, Paccar, and Bendix

engaged in unfair acts in its dealings with PLAINTIFFS and the class members in violation of law.

97.     Navistar, Paccar, and Bendix's conduct was directed at consumers generally.

98.     Navistar, Paccar, and Bendix repeatedly misrepresented the safety and efficacy of

the Bendix Wingman Fusion System and Bendix Wingman Advanced System.

99.     Navistar, Paccar, and Bendix repeatedly failed to disclose the known defects with

the Bendix Wingman Fusion System and Bendix Wingman Advanced System.

100.    Navistar, Paccar, and Bendix intentionally chose to conceal the systemic failures

and defects in the Bendix Wingman Fusion System and Bendix Wingman Advanced System

despite knowing the product was meant to prevent or mitigate reasonably foreseeable rear end

collisions between Class 4-8 power units used in interstate and intrastate commerce with stationary and slow-moving vehicles in the path of travel of the power units equipped with the Bendix FCA systems.

101.    Navistar, Paccar, and Bendix's conduct needlessly caused consumers, including PLAINTIFFS and the members of the class, considerable economic damages in the form of overpaying for power units equipped with defective Bendix Wingman Fusion System or Bendix Wingman Advanced System, the costs of removing and / or replacing these defective Bendix FCA systems, financial losses related to the out of pocket payments of self-insured retention funds to persons injured or killed in crashes that should have been avoided or mitigated with a properly functioning FCA system, increased costs of insurance related to crashes that should have been avoided or prevented by a properly functioning FCA system, the costs of investigating and determining the defects in the Bendix Wingman Fusion System and Bendix Wingman Advanced System, increased insurance premiums, injuries to its employees, liability for crashes that should have been avoided or mitigated, worker's compensation payments for employees injured in these crashes, diminished value of the defective power units equipped with defective Bendix FCA systems, the costs of repairs of crashed power units from crashes that would have been avoided by properly working FCA systems, attorney's fees and costs of litigation resulting from these avoidable crashes, and other forms or damages and losses.

102.    Bendix, Paccar, and Navistar's unfair acts and practices proximately caused PLAINTIFFS and the class members' injuries and damages.

103.    PLAINTIFFS and the class members demand all damages allowable by law for the class members including economic, non-economic if appropriate, and punitive damages as a jury deems reasonable and may award after hearing the evidence in this case.

104.    PLAINTIFFS and the class members request the Court award them statutory attorney's fees and the costs of the litigation as well.

WHEREFORE, PLAINTIFFS pray for entry of a judgment in their favor and against BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. under Count III of its Complaint for all damages and injuries suffered by each and every member of the class due to the wrongdoing of Defendants, BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. and to the fullest extent permitted by law.

**Count IV**
**BREACH OF CONTRACT AGAINST**
**BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.**

105.    PLAINTIFFS reallege Paragraphs 1-104 as if fully set forth herein.

106.    There was a contract between PLAINTIFFS and the class members and Bendix, Paccar, and Navistar to provide power units with properly functioning FCA systems.

107.    The Defendants Bendix, Paccar, and Navistar breached their contracts with the PLAINTIFFS and the class members by delivering power units with defective FCA systems.

108.  As a direct and proximate result of the Defendants Bendix, Paccar, and Navistar breach of contract, PLAINTIFFS and the class members have been caused to suffer injuries and damages as set out herein and they claim all damages allowed by law.

WHEREFORE, PLAINTIFFS and the class members pray for entry of a judgment in their favor and against BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. under Count IV of the Complaint for all damages and injuries suffered by each and every member of the class due to the breach of contract by Defendants, BENDIX

COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. and to the fullest extent permitted by law.

### Count V
### BREACH OF EXPRESS AND IMPLIED WARRANTY AGAINST BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.

109.   PLAINTIFFS reallege Paragraphs 1-108 as if set out here in full.

110.   The subject power units, which were designed, manufactured and distributed by Bendix, Paccar, and Navistar, were covered by express and implied warranties of fitness for a particular purpose.

111.   The DEFENDANTS warranted that the power units were equipped with properly functioning FCA systems in the form of the Bendix Wingman Fusion System or Bendix Wingman Advanced System and their component parts.

112.   The DEFENDANTS were sellers of the power units equipped with the Bendix Wingman Fusion System or Bendix Wingman Advanced System.

113.   The DEFENDANTS are merchants with respect to these goods as defined by law.

114.   The goods were not fit for their particular purpose when they left the DEFENDANTS' possession.

115.   As a direct and proximate result of the breach of implied warranty of fitness for a particular purpose, PLAINTIFFS and the class members have been caused to suffer injuries and damages as set out herein and they claim all damages allowed by law.

WHEREFORE, PLAINTIFFS and the class members pray for entry of a judgment in their favor and against BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. under Count V of its Complaint for all damages and injuries suffered by each and every member of the class due to the wrongdoing of Defendants, BENDIX COMMERCIAL

VEHICLE SYSTEMS LLC, PACCAR INC., and NAVISTAR, INC. and to the fullest extent permitted by law.

**<u>Jury Demand</u>**

PLAINTIFFS demand a jury trial.

*Respectfully submitted,*

<u>*/s/ Nick Wooten*</u>
Nick Wooten
CHEELEY LAW GROUP LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
(770) 814-7001
nick@cheeleylawgroup.com

<u>*/s/ Matthew S. Hefflefinger*</u>
<u>*/s/ Devin M. Taseff*</u>
Matthew S. Hefflefinger (ARDC No. 6201281)
Devin M. Taseff (ARDC No. 6333448)
CHARTWELL LAW
7707 N. Knoxville Avenue
Suite 201-A
Peoria, Illinois 61614
(309) 225-5560
mhefflefinger@chartwelllaw.com
dtaseff@chartwelllaw.com