UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LERON LEWIS, Jr., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HIRSCHBACH MOTOR LINES, INC., *et al.*,<br><br>Defendants. | Case No. 3:20-cv-01355-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on a motion to dismiss, (Doc. 276), an amended complaint. (Doc. 269). Third-party Defendant Bendix Commercial Vehicle Systems, L.L.C., ("Bendix"), filed their motion to dismiss on February 15, 2022. Third-party Defendant Navistar, Inc., ("Navistar") joined in the motion. The third-party defendants (hereinafter, collectively "Bendix & Navistar") have moved to dismiss a third amended complaint, filed by third-party plaintiffs Eric Jerome Campbell, Sr., ("Campbell") & Third-party Plaintiff Hirschbach Motor Lines, Inc., ("HML") (hereinafter, collectively "Campbell & HML").

Being duly advised in the premises, having fully considered the issues and arguments raised, the Court **DENIES** the motion to dismiss. (Doc. 276). The Court **GRANTS** Campbell & HML's request for leave to amend their complaint. (Doc. 281). Campbell & HML are **ADVISED** to file their fourth amended complaint within seven days of the entry of this order for it to have legal effect. The Court **FINDS AS MOOT** all other motions pending in this case. The parties are hereby **ORDERED** to submit a proposed amended scheduling order to chambers within fourteen days after Campbell & HML have filed their amended complaint.

I.  **BACKGROUND**

In the early morning hours of December 13, 2020, an employee of HML was driving a 2019 International LT625 tractor ("Tractor") southbound on Interstate 57 in Franklin County, Illinois.[1] The Tractor was manufactured by Navistar and was equipped with a Bendix Wingman Fusion Collision Avoidance/Mitigation System (hereinafter "Wingman System") "which included a Fusion radar, Fusion camera, Safety Direct Processor and Fusion brake controller." (Doc. 261).

The two underlying plaintiffs, Leron Lewis and Jamal Moffett, were parked or stopped in a pickup truck with an attached metal, flatbed trailer ("Truck & Trailer") in the southbound lane of Interstate 57. At approximately 6:30 A.M., before sunrise, the Tractor collided with the Truck & Trailer, causing severe injuries and property damage.

Plaintiff Leron Lewis and Plaintiff Jamal Moffett filed complaints, in December 2020 and January 2021 respectively, against Defendants HML and Eric Jerome Campbell Sr., related to the December 13 collision; the court consolidated both cases. Campbell & HML settled the case with at least one of the underlying plaintiffs—Plaintiff Jamal Moffett—for nearly $60,000. In consideration for that sum, Moffett signed a property damage release form that relinquished his claims against Campbell & HML, as well as Bendix & Navistar, among others.

On November 15, 2021, Campbell & HML filed a third-party complaint against nine parties, including Datway, L.L.C ("Datway"), Bendix, and Navistar. Campbell & HML settled with Datway and Datway's insurer, Progressive Specialty Insurance Company, but the claims against Bendix & Navistar remained.

On January 11, 2024, Campbell & HML filed their third amended complaint. (Doc. 269)

---

[1] The 2019 International LT625 tractor is the motor vehicle portion of a semi-truck—commonly referred to as a "tractor." The vehicle is not a farming instrument, as the name alone may imply.

("amended complaint"). The amended complaint added additional facts common to three counts against both Bendix & Navistar—Count VI for negligence in contribution, Count VII for strict tort liability in contribution, and Count VIII for direct property damage. The relevant additional facts for deciding the motion currently before the Court are that Bendix:

(h) Failed to warn that the Bendix Wingman Fusion System would not engage or would engage at such a time where no corrective action could be taken by a driver when operating at highway speeds;

(i) Failed to warn that the Bendix Wingman Fusion System would not engage or would engage at such time where no corrective action could be taken by a driver when operating at night or in circumstances of limited illumination and/or visibility;

(j) Failed to equip the Bendix Wingman Fusion System with reasonably feasible alternative radar, camera, and/or algorithmic components that would have detected the presence of a 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer containing two 20 foot long overseas containers illegally stopped within the driving lane for Interstate 57 Southbound, and properly warned driver Campbell at such a time where corrective action could have been taken;

(k) Failed to provide drivers such as Campell (sic) in the 144-page Bendix Wingman Fusion Operator's Manual with proper warnings regarding its performance limitations in detecting the presence of a 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer containing two 20 foot long overseas containers illegally stopped within the driving lane for Interstate 57 Southbound, such that reasonably foreseeable drivers such as Campbell would comprehend and appreciate the risks associated with operating the Bendix Wingman Fusion System at highway speeds;

(Doc. 266). Bendix & Navistar have moved for dismissal of the amended complaint. They argue that "all three of HML's counts against Bendix [& Navistar for Counts six, seven, and eight] are conclusory and speculative, fail to identify a product defect, and lack the factual detail required" under modern pleading standards. (Doc. 276).

Additionally, Bendix & Navistar argue that the direct claim for property damage is similarly erroneous because neither Campbell nor HML owned the property, Illinois's economic loss doctrine prohibits the kind of recovery Campbell & HML seek, and awarding damages to

them here would not comply with the Joint Tortfeasor Contribution Act. 740 Ill. Comp. Stat. 100/ (2023). If Campbell & HML seek recovery for the amount they paid to Moffett, they argue that Campbell & HML should have named a count for contribution, not direct property damage. Moreover, they argue that they were unaware of any release of liability including them—a prerequisite for recovery under the Joint Tortfeasor Contribution Act. Furthermore, Bendix & Navistar argue there is no basis for awarding punitive damages or costs here.

Campbell & HML responded, conceding some claims but disputing others. Campbell & HML conceded that their claims for direct property damage and request to award costs were improper. In light of those concessions, Campbell & HML have requested leave to amend their complaint again to properly plea. However, on the product liability issue, Campbell & HML argue that their claims of product defects and failure to warn were factually specific enough to allege a prima facie case of products liability. Furthermore, they argued that the facts they have pled more than satisfy modern pleading standards.

In their reply, Bendix & Navistar renewed their objections as to the purported vagueness of the facts provided, and again asserted that Campbell & HML's amended complaint fails to rise to the level of plausibility that modern pleading standards demand. Regarding the direct property damage claims, the punitive damages, and costs; Bendix & Navistar stated that, while they were not necessarily opposed to Campbell & HML amending their complaint to correct the offending counts, they would like to reserve the right to object to the amended complaint for, *inter alia*, running afoul of the statute of limitations.

## II. LEGAL STANDARD

In diversity cases, federal courts "apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Claims in tort, such as products

liability, negligence, etc., with exceptions immaterial here, are areas of state substantive law. In contrast, federal law governs procedure—including the Federal Rules of Civil Procedure and related case law. In evaluating motions to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), federal courts determine whether the claims made by the plaintiffs under state law satisfy modern, federal pleading standards under FED. R. CIV. P. 8. Here, the plaintiffs have made claims in tort, and therefore, state law—specifically Illinois law—governs the substance of those claims.

### A. Illinois Products Liability

In Illinois, a manufacturer has a nondelegable duty to produce a product that is reasonably safe. *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 43 (Ill. 2002); *Anderson v. Hyster Co.*, 385 N.E.2d 690, 692 (Ill. 1979); *see* Restatement (Second) of Torts § 402A (1965). In order to prevail on a strict liability claim, a plaintiff must prove "that a product was in an unreasonably dangerous condition, that the condition existed at the time it left the manufacturer's control, and that the condition was a proximate cause of the plaintiff's injury." *Suvada v. White Motor Co.*, 210 N.E.2d 182, 188 (Ill. 1965), *overruled in part on other grounds, Dixon v. Chicago & N.W. Transp. Co.*, 601 N.E.2d 704, 711 (Ill. 1992); *see Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 532 (7th Cir. 2005), *vacated in part on other grounds*, 448 F.3d 936 (7th Cir. 2006); *Romero v. Cincinnati Inc.*, 171 F.3d 1091, 1094 (7th Cir. 1999). S*ee* Restatement (Second) of Torts § 402A (1965).

A product is "unreasonably dangerous" when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Palmer v. Avco Distributing Corp.* (1980), 82 Ill.2d 211, 216, 45 Ill. Dec. 377, 412 N.E.2d 959, quoting Restatement

(Second) of Torts § 402A, comment i (1965); *Hunt v. Blasius* (1978), 74 Ill.2d 203, 211-12, 23 Ill. Dec. 574, 384 N.E.2d 368.) A product may be unreasonably dangerous in one of two ways: a design or manufacturing defect or a failure to warn of a danger posed by the product of which the average consumer would not be aware. *See Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200, 1202 (7th Cir. 1984). "Ordinarily, the determination of whether a product is defective, and therefore unreasonably dangerous, is a question of fact for the jury." *Wortel v. Somerset Indus., Inc.*, 770 N.E.2d 1211, 1215 (Ill. App. Ct. 2002) (citing *Korando v. Uniroyal Goodrich Tire Co.*, 637 N.E.2d 1020, 1024 (Ill. App. Ct. 1994)).

1. **Design or Manufacturing Defect**

In products liability cases in which the plaintiff alleges a design defect, Illinois permits the claim to be established in either of two ways: the consumer-expectation test and the risk-utility test.

To establish a design defect under the consumer-expectation test, a plaintiff must show "that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 526–27, 327 Ill. Dec. 1, 901 N.E.2d 329 (2008) (internal quotations and citations omitted).

To establish a design defect under the risk-utility test, a plaintiff must show:

> [T]hat the product's design proximately caused [their] injury. If the defendant thereafter fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs, the plaintiff will prevail. This test . . . added the balancing of risks and benefits to the alternative design and feasibility inquiries.

*Id. See also Show v. Ford Motor Co.*, 2011 WL 4350043, 1 (7th Cir. Sep. 2011).

## 2. <u>Failure to Warn & False Sense of Security</u>

Even if a product is not defectively designed or manufactured, a plaintiff can still establish liability for the defendant's product if the defendant had a duty to warn consumers of non-obvious dangers. A defendant has a duty to warn when there is "unequal knowledge" in their possession, and the defendant knew or should have known that "harm might occur if no warning is given." *Daniels v. John Crane, Inc.*, 2019 IL App (1st) 190170 at 72. A defendant is liable for a failure to warn when the defendant failed to warn the average customer of an "unreasonably dangerous condition" or failed to "instruct on the proper use of the product" that the average customer may not be aware of. A non-defective product that presents a danger that the average consumer would recognize does not give rise to strict liability. *See Hunt*, 74 Ill.2d 203, 23 Ill. Dec. 574, 384 N.E.2d 368. *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990).

However, even if defendants instruct customers on the risks of a product, they may still be liable even when the customer took all recommended precautions. A defendant must not only warn customers of non-obvious dangers, a defendant must *adequately* warn customers of the risks and the proper precautions. If a defendant fails to *adequately* advise customers, a customer may erroneously believe they have taken the necessary precautions when they in fact, have not. A failure to adequately advise would run afoul of a manufacturer's duty to warn of non-obvious dangers and, therefore, fall under the category of "unreasonably dangerous." Defendants that failed to adequately advise customers of non-obvious risks may be liable for providing customers with a "false sense of security." *McCarthy v. Cessna Aircraft Co.*, 2005 U.S. Dist. LEXIS 51892 (S.D. Ill. Apr. 18, 2005) (citing *McColgan v. Environmental Control Systems*, 212 Ill. App. 3d 696, 571 N.E.2d 815, 156 Ill. Dec. 835 (Ill. App. 1991).

> [A] manufacturer is not required to produce a product incapable of causing injuries, but where an unavoidably unsafe product is manufactured, then the manufacturer may be required to warn potential users. If the warning is adequate, the consumer would proceed to use the product at the consumer's own risk. In order to decide if the warning is adequate, the courts must find it is adequate to perform the intended function of risk reduction . . . . Whether there was a duty to warn is, in the first instance, a question of law and, for the purpose of determining the existence of such a duty, the manufacturer is held to the degree of knowledge and skill of the experts. . . . However, the question of whether a product is unreasonably dangerous because the warnings are inadequate is a question of fact for the jury. Such warnings may be found to be inadequate if the warnings fail to specify the risk presented by the product, if the warnings are inconsistent with how the product is to be used, if they fail to advise of the reason for the warnings, or if the warnings do not reach the foreseeable users.

*Byrne v. SCM Corp.*, 182 Ill. App. 3d 523, 546–47, 538 N.E.2d 796, 131 Ill. Dec. 421 (Ill. App. 1989) (internal citations omitted).

For example, in *McCarthy v. Cessna Aircraft Co.* a federal court in this district denied Cessna Aircraft Company's motion for partial summary judgment, finding that whether Cessna provided a false sense of security was a question for the trier of fact. 2005 U.S. Dist. LEXIS 51892 (S.D. Ill. Apr. 18, 2005).

Cessna manufactures small aircraft. The pilot's seats in some of Cessna's planes are on metal tracks that allow the seat to slide forward or backward and are meant to lock into place. The plaintiff alleged that, based on Cessna's inadequate warnings, the decedent believed that he had locked the pilot's seat in place when, in fact, he had not. When the decedent tried to operate the plane, the pilot's seat shifted, causing the decedent to lose control of the aircraft, leading to his death.

Cessna argued that they had warned that failure to lock the pilot's seat in place can result in shifting during take off or flight that could affect the pilot's control of the aircraft. Cessna also stated that they had provided instructions on how to engage the seat's locking mechanism.

Cessna believed the warning and instructions on how to properly lock the seat in place satisfied their duty to warn.

However, the plaintiff argued that these instructions failed to advise that, due to the seat's design, "it might be difficult to lock the seats into place and more importantly, that even if all the directions are followed, the seat may not actually be locked into place, which creates a false sense of security," *Id*. at *7—precisely what happened to the decedent. The district court found that "[t]his oversight puts the seat locking mechanism into the category of [an] unreasonably dangerous" product. *Id.* at *9.

### B. Pleading

Under modern pleading standards, a complaint must not only present a cognizable claim, a complaint must also contain sufficient factual matter to "state a claim to relief that is *plausible* on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (emphasis added). The plausibility standard is not akin to a "probability requirement;" in fact "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 556. A complaint "must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level,'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Twombly*, 550 U.S. at 555). Thus, while there is no probability requirement, a complaint must allege sufficient facts to establish that there is more than a mere possibility that a defendant is liable. *Id.*

"Determining whether a complaint states a *plausible* claim for relief is context specific; it requires the court to draw on its judicial experience and common sense." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis added). *Twombly*, at 555. The complaint must contain "more than labels and conclusions;" "a formulaic recitation of the elements of a cause of

action," is insufficient. *Twombly*, at 555. Assuming all facts alleged in the complaint are true, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. When well-pleaded facts do *not* lend themselves to an inference that there is more than the mere possibility of misconduct; then the complaint has alleged, but failed to show "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (brackets omitted). *Ashcroft v. Iqbal*, 556 U.S. at 678–79 (2009). *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774 (7th Cir. 2022). A complaint need not contain *detailed* factual allegations, only enough to infer plausible relief. *Twombly*, at 555. However, if the factual details of a complaint are "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," then the complaint is subject to dismissal. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *see, e.g.*, *Kaminski*, 8 F.4th at 776-77.

  In the context of products liability cases a complaint must allege the specific issues with the product. It is not enough to merely allege that a product or part of the product is "defective." A plaintiff must allege reasons why, or ways in which, a product is defective. In the spirit of notice pleading, the plaintiff must provide enough specificity to put the defendant on notice of precisely what is at controversy. Due to the complexity of some products, as well as intellectual property protections, sometimes the exact nature of a defect may be unclear to a plaintiff. Consequently, plaintiffs are only required to allege facts commensurate with the knowledge they have. Plaintiffs in products liability cases are not required to submit highly detailed factual claims—claims need to be specific enough to apprise defendants of the issues while not requiring

a level of specificity from plaintiffs that would frustrate the purpose of adopting notice pleading. Even when the Rules call for pleading with greater particularity—such as in cases of fraud and mistake—a plaintiff is not required to present exacting evidence.

For example, a complaint that merely states a bullet was defective, causing explosive barrels, is insufficient. *See generally Corwin v. Conn. Valley Arms, Inc.*, 2015 U.S. Dist. LEXIS 62515. Merely stating that something is defective alone does not provide the defendant with an idea on how the bullet was purportedly defective. If, however, the complaint states that the bullet was manufactured with a base that was too large to safely discharge from the gun, that is sufficient to place the defendant on notice. Courts do not require that a plaintiff state how large the base of the bullet was in specific measurements, nor what precise measurements the bullet ought to have—demanding such detail on pain of dismissal prevents the very discovery that would be necessary to develop more precise claims.

### III. ANALYSIS

Revisiting the allegations that Bendix & Navistar object to, Campbell & HML allege that Bendix:

(h) Failed to warn that the Bendix Wingman Fusion System would not engage or would engage at such a time where no corrective action could be taken by a driver when operating at highway speeds;

(i) Failed to warn that the Bendix Wingman Fusion System would not engage or would engage at such time where no corrective action could be taken by a driver when operating at night or in circumstances of limited illumination and/or visibility;

(j) Failed to equip the Bendix Wingman Fusion System with reasonably feasible alternative radar, camera, and/or algorithmic components that would have detected the presence of a 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer containing two 20 foot long overseas containers illegally stopped within the driving lane for Interstate 57 Southbound, and properly warned driver Campbell at such a time where corrective action could have been taken;

> (k)  Failed to provide drivers such as Campell (sic) in the 144-page Bendix Wingman Fusion Operator's Manual with proper warnings regarding its performance limitations in detecting the presence of a 2017 Chevrolet Silverado 3500 and 2019 Big Tex Trailer containing two 20 foot long overseas containers illegally stopped within the driving lane for Interstate 57 Southbound, such that reasonably foreseeable drivers such as Campbell would comprehend and appreciate the risks associated with operating the Bendix Wingman Fusion System at highway speeds;

(Doc. 266). Campbell & HML's claims boil down to alleging that Bendix failed to warn consumers of the Wingman Systems non-obvious defects. Bendix & Navistar argue that their claims are not sufficiently detailed. The Court disagrees.

Bendix & Navistar argue that Campbell & HML's amended complaint fails to state a plausible claim for relief. Rather than simply stating that the Wingman System was defective; Campbell & HML state that Bendix & Navistar failed to warn of the Wingman System's limitations at night and in other low visibility conditions. Additionally, they allege that Bendix failed to warn consumers that, when traveling at highway speeds, the Wingman System could not detect imminent collisions or alert a consumer of an imminent collision before they could take corrective action. Campbell & HML also argue that the Wingman System's limitations were caused by Bendix's failure to equip the Wingman System with components necessary to deliver the functionality represented by Bendix, and general failure to warn of the system's performance limitations. Campbell & HML allege defects and failure to warn of *specific aspects* of the Wingman System and its limitations, along with poor quality components that make the Wingman System unreasonably dangerous. The Court interprets the claims in favor of the movant. Presuming for the sake of analysis that Bendix equipped the Wingman System with poor components or programming, failed to warn of its limitations in low visibility environments or at night, and failed to warn that it may not engage early enough to stop a collision; those facts would establish an at least *plausible* prima facie case of products liability.

Bendix & Navistar argue that there is no evidence of the Wingman System's defects and that it is insufficient to conclude that the Wingman System is at fault when there is no definitive evidence in the complaint that the system was on or responsible for the crash—especially when the driver admitted in his deposition that he had not been paying attention. Even were the Court to take Bendix & Navistar's statements as true, whether the Wingman System was on or somehow responsible for the collision is a question of fact. Even if the evidence is flimsy or not yet developed, as *Twombly* stated, "[a] well-pleaded complaint may proceed *even if* it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, at 556 (emphasis added). At the current pleading stage, the Court assumes that the Wingman System was on.

Turning to the driver's admission, the Court has not examined the deposition transcript, but even presuming *arguendo* that the driver has admitted to being distracted, that does not make a claim for failure to warn implausible. It is certainly *plausible* that, due to Bendix's purported failure to warn of the Wingman System's limitations at highway speeds and in low visibility environments, that the driver was not as attentive *because* the Wingman System provided him with a false sense of security. The claims are plausible.

Ultimately, claims should be stated in enough particularity to put Bendix & Navistar on notice of what precisely is being litigated. It is difficult to think what further details would be required to adequately apprise Bendix & Navistar of the nature of the claims against them. Component quality, detection ability, and warning ability—these are the three areas where Campbell & HML have alleged defects in the Wingman System. Comparing this case to *McCarthy v. Cessna* and *Corwin v. Conn. Valley Arms Inc.*, this case is far more similar to *McCarthy v. Cessna*—where the plaintiff alleged a design defect and failure to warn the

consumer of the limitations of the seat locking mechanism—than *Corwin v. Conn. Valley Arms, Inc.*—where the plaintiff alleged only that the bullet was defective, causing damages. Exact factual details are not necessary at this stage.

In arguing that the complaint is not specific enough, given Campbell & HML have performed multiple tests with the Wingman System for this litigation and were provided hundreds of documents related to this case, Bendix & Navistar argue that Campbell & HML are in possession of enough information to plead more particular facts. Neither of these reasons are convincing.

Firstly, Bendix & Navistar question why Campbell & HML have decided to amend their complaint now. However, their own motion to dismiss the complaint states that Campbell & HML have recently conducted tests with the Wingman System. It seems straightforward that, if Campbell & HML have recently concluded tests with the Wingman System, that they became aware of these specific limitations through that testing, thus prompting the amended complaint— but may not be in possession of the specific details of the alleged defects—especially if the Wingman System contains encrypted, protected, or proprietary software.

Secondly, while it is true that discovery has been extensive, to the Court's knowledge, neither of the parties have exchanged discovery pertaining to the Wingman System's construction, design, or programming. As discovery is generally limited to the relevant claims in a litigation, if the limitations of the Wingman System were not explicitly alleged, the Court sees no reason why Bendix & Navistar would provide extensive, and likely proprietary information on the design and technical specifications of the system, making discovery thus far inadequate.

At this stage, without discovery and sufficient evidence, it would be inappropriate for the Court to rule on whether the Wingman System fails the risk-utility test or the consumer-

expectation test; those questions should be reserved for summary judgment. However, dismissing the amended complaint would serve no purpose but delaying this litigation. It is doubtful that Campbell & HML will simply abandon their claims of products liability if the amended complaint is dismissed. Bendix & Navistar have been provided with sufficient notice to proceed with discovery—as intended by the Federal Rules.

Turning to Bendix & Navistar's objections related to the direct property damage and costs issues, Campbell & HML have conceded on those counts. However, in their reply, Campbell & HML included an exhibit showing that Bendix & Navistar were released from liability through a property release form ostensibly negotiated by Campbell & HML. Under the Joint Tortfeasor Contribution Act, Campbell & HML may be entitled to contribution. Therefore, the Court sees no reason to prevent them from amending their complaint. The Court also sees no reason to bar Bendix & Navistar from raising objections to that same complaint.

## IV. CONCLUSION

Finding that the third-party plaintiffs, Campbell & HML, have stated a plausible claim for relief, the Court **DENIES** the third-party defendants', Bendix & Navistar's, motion to dismiss. (Doc. 276). The Court **GRANTS** Campbell & HML leave to amend their complaint. Campbell & HML are **ADVISED** to file their fourth amended complaint within seven days of the entry of this order for it to have legal effect. The Court **FINDS AS MOOT** all other motions pending in this case. The parties are hereby **ORDERED** to submit a proposed amended scheduling order to chambers, no later than fourteen days after Campbell & HML have filed their fourth amended complaint.

**IT IS SO ORDERED.**
**DATED: September 19, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**