IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HIRSCHBACH MOTOR LINES, INC.; JOHN CHRISTNER TRUCKING, LLC; THREE DIAMOND LEASING, LLC; GR EQUIPMENT LEASING, INC.; SCHUSTER COMPANY; SCHUSTER ENTERPRISES, LTD.; AEG LEASING LLC; and SCHUSTER COMPANY, LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NAVISTAR, INC.; PACCAR INC.; and BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, <br><br> Defendants. | Case No. 1:24-cv-11979 <br><br> Hon. Thomas M. Durkin <br><br> Magistrate Judge Jeffrey Cole |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE CLASS ALLEGATIONS**

**Introduction**

Defendants urge this Court to strike Plaintiffs' class allegations at the pleadings stage, however, Rule 23 does not permit premature dismissal of class actions absent a clear legal bar to certification. Here, Plaintiffs have plausibly alleged that Defendants engaged in a nationwide fraudulent scheme to sell defective frontal crash avoidance systems to the trucking industry through a concerted, uniform advertising campaign that uniformly damaged motor carriers and other purchasers of said systems throughout the country by overpaying for systems they otherwise would not have purchased. Contrary to Defendants' Motions, Plaintiffs' First Amended Complaint plausibly establishes a nationwide conspiracy of Defendants in which they had actual knowledge of universal defects in their systems before

1

launching them, and concealed said defects from their motor carrier customers using uniform, deceptive advertising materials.

Defendants' motions to strike rely primarily on false characterizations of Plaintiff's class action and tactical omissions of relevant law and authority. For example, they mischaracterize that just because Plaintiffs have alleged purchases of these systems by potential class members in all fifty states, the laws of all fifty states will automatically apply to Plaintiffs' claims at large, which is pure hyperbole when viewed in the context of Illinois' "most significant relationship" choice of law test. ECF No. 84, 90. Second, Defendants argue that proving issues of liability will inevitably involve product-by-product and statement-by-statement analysis, which ignores the universal system defects alleged here, along with the uniform, concerted nature of Defendants' conduct and misleading statements plead with specific supporting facts. Third, Defendants incorrectly state that the Complaint does not identify a single common question or answer, which is readily refutable per a fair reading of Plaintiffs' merits allegations. Finally, Defendants' motions are silent on the availability of the subclass provision of Rule 23 designed to resolve any bona fide conflicts of law that may arise through the course of class discovery and further ignore the fact that similar actions have in fact been certified before by this very court in recent history. *In re Navistar MaxxForce Engines Mktg.*, No. 1:14-cv-10318, 2020 U.S. Dist. LEXIS 83859 (N.D. Ill. Jan. 20, 2020) (certified for settlement purposes nationwide class including breach of express and implied warranty claims).

Thus, while Defendants' motions to strike identify potential issues relevant to class certification in general, and hypothesize about those that arise later through class discovery, they have failed to carry their burden of showing a legal bar to certification. Rather, Plaintiffs have adequately alleged their class claims under Rule 23 at the pleadings stage, and their complaint raises multiple, common questions suitable for class-wide resolution. Plaintiffs reasonably require class discovery to

conclusively answer choice of law questions for the class at large and determine proper subclasses to address any legitimate conflicts of laws between interested states. This reasonably requires class discovery, as the answers to these questions lie in the possession and control of Defendants. This is precisely why striking class allegations from the start is disfavored as shown below. Therefore, the Court should deny Defendants' Motion to Strike.

## Class Allegations

Plaintiffs' First Amended Complaint alleges that Defendant Bendix's Wingman Fusion and Wingman Advanced crash-avoidance systems are universally defective, rendering all Navistar and Paccar tractors in which they were installed defective also. 1st Am. Compl. ¶¶ 15–97, ECF No. 74. Plaintiffs purchased tractors that Defendants Navistar and Paccar equipped with these defective systems. *Id.* ¶¶ 21–26. Defendants have had actual knowledge that the systems were defective since at least 2015 and did nothing to fix them before launching and marketing them nationwide. *Id.* ¶¶ 51-56. Then, between 2015 and 2024, Defendants attempted to conceal these defects through a coordinated marketing campaign using uniform marketing materials targeting national motor carriers including Plaintiffs. *Id.* ¶¶ 33-34.

Defendants thus engaged in a nationwide, concerted marketing effort to misrepresent the quality, effectiveness, and capability of the defective Bendix systems to their motor carrier customers including Plaintiffs and the class. *Id.* ¶ 74. Thus, the proposed class comprises "[a]ll persons, as defined by law, who purchased a new power unit equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System and manufactured by either Navistar or Paccar on or after July 1, 2015." *Id.* ¶ 100(a).

**Argument**

## I. Defendants' motions to strike fail to satisfy their heightened burden of showing a complete legal bar to class certification.

Defendants have not carried their burden of showing a fatal legal bar to Plaintiffs' class action complaint. "On a motion to strike class allegations (as opposed to a motion for class certification) the moving defendant bears the burden of persuasion." *Brown v. Swagway, LLC*, No. 3:15-CV-588, 2017 U.S. Dist. LEXIS 31997, 2017 WL 899949 (N.D. Ind. Mar. 7, 2017) (citing *Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2015 U.S. Dist. LEXIS 169124, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015)). "[T]he burden lies with [Defendants] 'to *definitively* establish that a class action cannot be maintained consistent with the class allegations.'" *Chandler v. Zinus, Inc.*, No. 3:20-cv-265-DWD, 2022 U.S. Dist. 104500, at *28, 2022 WL 2104516 (S.D. Ill. June 10, 2022) (emphasis added) (quoting *Dowding v. Nationwide Mut. Ins.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020)). Nothing in Defendants' motions "definitively" proves that "a class action cannot be maintained" here. *Id.* What's more, the Seventh Circuit "disfavor[s]" these motions because defendants "generally control the information plaintiffs need [for class certification]." *Robinson v. Lake Ventures LLC*, No. 22CV6541, 2023 U.S. Dist. LEXIS 156296, at *21, 2023 WL 5720873 (N.D. Ill. Sept. 5, 2023) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (1989)). So too here. And that is why—as "most often" is the case— "it will not be practicable for the court to strike class allegations at the pleading stage." *Id.* (quoting *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013)). Addressing each of Defendants' core arguments individually below, striking Plaintiffs' class allegations would be wholly improper.

4

A. **Choice-of-law analyses are premature because there has been no class discovery, and Plaintiffs can address conflicts with subclasses.**

The crux of Defendants' motions to strike is that general variations in the fifty states' laws with respect to fraud, breach of contract, and breach of express and implied warranties universally preclude certification of Plaintiffs' class action at the pleadings stage. Per Defendants' own motions, however, under Illinois' "most significant relationship" test, the factors of (1) where the injury-causing conduct occurred, (2) Defendants' domiciles, and arguably (3) where the parties' relationship is centered, are not solely contingent on the state in which the defective products were purchased. Given that no discovery has been taken to determine the select few states in which Defendants' system and tractors were designed, programed, manufactured, assembled, etc., along with where and how it was deceptively marketed to motor carriers, and absent individual purchase agreements relevant to this class potentially speaking to choice of law issues in the first place, Defendants' fifty-state-law argument places the cart before the horse.

The Northern District of Illinois has largely declined to strike nationwide class allegations at the pleadings stage where the defendants argued that general variations in state laws made a nationwide class impossible. *See, e.g., Flaherty v. Clinique Labs. LLC,* No. 1:21-cv-03447, 2021 U.S. Dist. LEXIS 219455 at *19 (N.D. Ill. Nov. 15, 2021) (declining to strike nationwide class allegations including claims of consumer fraud, common law fraud, and unjust enrichment), *citing Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.,* 522 F. Supp. 3d 402, 409-12 (N.D. Ill. 2021) (concluding that it was premature to strike class allegations where movant offered a superficial choice of law analysis and issues raised would benefit from discovery); *Al Haj v. Pfizer Inc.,* 338 F. Supp. 3d 741, 757-58 (N.D. Ill. 2018) (declining to strike class allegations at the pleading stage); *Carrol v. S.C. Johnsons & Son, Inc.,*

5

No. 17-cv-05828, 2018 U.S. Dist. LEXIS 57052, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (denying defendant's motion to strike nationwide class claims as premature); *Wagner v. Gen. Nutrition Corp.,* No. 16-CV-10961, 2017 U.S. Dist. LEXIS 112106, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017) (concluding that it would be "sensible to wait to conduct the relevant [class certification] analysis until the issues are fully briefed and the record is fully developed")*; Bietsch v. Sergeant's Pet Care Prods., Inc.,* No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928, 2016 WL 1011512, at *11 (N.D. Ill. Mar. 15, 2016) (finding that the "proposed inquiry into the impact of state law variations [was] premature").

While some courts have struck class allegations where the moving party focuses on variations in state laws that would make a nationwide class impracticable, the elephant in the room is that it is unclear at this early stage, by no fault of Plaintiffs, what states' laws will ultimately apply. *See Cowen v. Lenny & Larry's, Inc.,* No. 17 CV 1530, 2017 U.S. Dist. LEXIS 169929, 2017 WL 4572201, at *3-5 (N.D. Ill. Oct. 12, 2017). Choice of law analyses involve factual inquiries that reasonably require discovery to affirmatively answer. *Id.* This renders Defendants' arguments premature on additional grounds. For example, after further factual development, the court may also discover that the class does not include individuals in every state, thereby rendering some of the distinctions identified by Defendants inapposite. *See Flaherty,* 2021 U.S. Dist. LEXIS 219455 at *21. If the choice of law analyses ultimately points to the laws of multiple states, Plaintiffs propose certifying subclasses under Rule 23(c)(5), a provision that is noticeably absent from Defendants' briefs. *See Caterpillar, Inc.,* 522 F. Supp. 3d at 411 ("[T]he court cannot rule out the possibility that there will be no material conflicts of laws or that, if there are, state-specific subclasses may be a manageable alternative in the event that certifying a national class proves unworkable").

Akin to the plaintiffs in *Caterpillar*, purchase records for these systems sought in discovery will further identify class members and refine the choice of law issues raised by Defendants, however, "the court does not have those records." *Id.* In the absence of this information, Defendants have not actually performed the requisite analysis under Illinois' fact-specific "most significant relationship" in anticipating which states' laws will ultimately apply, and this is an arguable condition precedent to establishing if there are in fact any fatal conflicts of laws that cannot be resolved through subclassing. "Even if [Defendants are] right and the choice of law analysis will point to the laws of up to 50 states, [Defendants have' not shown that the conflicts of law it has identified are material enough to defeat certification at the pleading stage." *Id.* Given that it is Defendants' burden to show impossibility at this stage, and their argument fails to engage in several steps of the requisite analysis to meet such burden, Defendants' motions should be denied.

**B    Plaintiffs' class claims will not require system-by-system, tractor-by-tractor, or statement-by-statement inquires.**

Defendants also incorrectly argue that this class action will involve a system-by-system, truck-by-truck, and/or statement-by-statement analysis to determine issues of liability, and therefore, per Defendants' argument, Plaintiffs cannot show that commonalities predominate and that the class action vehicle is the superior method of adjudicating this controversy ECF No. 90 at pgs. 9-11. To the contrary, Plaintiffs' First Amended Complaint alleges a universal defect in the Wingman systems of which Defendants had actual knowledge before launching the same nationwide and did nothing to fix the known issues before it. ECF No. 74 at pgs. 1-3. Per the Complaint, Defendants then acted in concert, with actual knowledge of these defects, to fraudulently conceal them using uniform sales strategies and marketing materials, with the goal of inducing motor carriers to purchase tractors equipped with said systems. *Id.*

Therefore, it logically follows that each of Defendants' tractors in which said defective systems were installed, within the relevant time period, was inherently defective also and thus this action will not require product-by-product inquiries as Defendants suggest. This conclusion is supported by applicable law in many states following the "integrated product doctrine," in which a vehicle and its components are to be treated as one singular product. *See, e.g., Trans States Airlines*, 177 Ill.2d 21, 51 (1997) (where the plaintiff did not bargain for an airplane and its engine separately, "damage to the airframe caused by the defective engine constitutes damage to a single product"). With all of Defendants' trucks being equipped with these defective systems, combined with Defendants' actual knowledge of the same, there is not necessarily a need to perform a truck-by-truck analysis over hundreds of thousands of units in question.

The same goes for the nature of Defendants' material misrepresentations of known performance limitations of these systems. Attached to Plaintiffs' First Amended Complaint are Defendants' advertising materials distributed nationwide to motor carriers in which the core performance representations are distinctly uniform—that the systems provide critical safety alerts 3.0–3.5 seconds before forward collisions with stationary objects or vehicles. 1st Am. Compl. at Exs. A-D.

There are clear similarities and consistencies in Defendants' marketing materials with respect to the performance capabilities of these systems that in no way requires a statement-by-statement analysis. Plaintiffs reasonably believe that Defendants possess additional marketing materials in further proof of the same that Plaintiffs should be afforded the opportunity to obtain in discovery. Accordingly, this is not a case in which Plaintiffs are required to plead and prove each and every misrepresentation that may have occurred nationwide to each and every motor carrier that was induced to purchase these systems, as it is entirely plausible per the First Amended Complaint that the fraudulent statements in question can and will be

attributed to Defendants uniformly. For this additional reason, Defendants have failed to carry their burden of showing complete legal bar to this class action at the pleadings stage and, therefore, the motions to strike should be denied.

## II. Plaintiffs adequately allege class claims under Rule 23.

At this stage, Hirschbach need only "allege that [Rule 23's requirements] are met," and it has done so. *Moore v. Nicole Hupp & Assocs.*, No. 23CV4334, 2023 U.S. Dist. LEXIS 195293, at *11, 2023 WL 7166555 (N.D. Ill. Oct. 31, 2023) (quotation omitted). Hirschbach's class allegations are far more plausible than those that sufficed in *Poonja v. Kelly Services, Inc.*, No. 20-cv-4388, 2021 U.S. Dist. LEXIS 186809, 2021 WL 4459526 (N.D. Ill. Sept. 29, 2021). A single text message was enough to make striking class allegations premature there, and Hirschbach's allegations are enough here. In short, this is not that "rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class." *Moore*, 2023 U.S. Dist. LEXIS 195293, at *9 (quoting *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263 (W.D. Wis. 2013)).

### A. Plaintiffs' allegations satisfy commonality, typicality, and adequacy under Rule 23 for pleading purposes.

Plaintiffs' First Amended Complaint alleges uniform misrepresentations regarding the performance of Bendix's Wingman Fusion and Wingman Advanced Systems, which Defendants uniformly marketed as providing critical safety alerts (3.0–3.5 seconds before forward collisions), where Defendants had actual knowledge that said systems failed in product testing, upwards of 50 percent of the time, to detect and alert to common vehicle-trailer combinations on the roadways, especially at highway speeds and/or in conditions of limited visibility. *See* Class Action Allegations, *supra*. Plaintiffs have pled in good faith that Defendants' conduct and statements were directed at all fifty states, specifically targeting national motor

9

carriers in an attempt to secure the highest possible market share with respect to this emerging technology. *Id*. These allegations of Defendants' uniform statements and conduct support the class elements of commonality, typicality, and predominance.

Beginning with commonality, Rule 23(a)(2) requires only "a single common question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Per the above, Plaintiffs' class allegations raise multiple common questions, including, but not limited to, the following:

- Whether the Wingman Systems in question fail to perform as represented at highways speeds, in conditions of low visibility, and/or when presented with certain types of vehicle-trailer combinations ahead;
- Whether Defendants had actual or constructive knowledge of the severe performance defects in the Wingman systems alleged in Plaintiff's First Amended Complaint;
- Whether these defects are product-wide or otherwise universal within the relevant time period;
- Whether these defects are material to class members' decisions to buy them;
- Whether Defendants intentionally concealed these defects in uniform marketing materials or otherwise;
- Whether Defendants conspired to suppress knowledge of these design flaws in the trucking industry;
- Whether Plaintiffs overpaid for said systems given these defects and suffered damages as a proximate result thereof.

As such, there are a myriad of common questions central to each class member's claims, where Defendants' motions proclaim that there is not a single common issue of law or fact discernable from Plaintiffs' First Amended Complaint.

The same goes for typicality and adequacy requirements at the pleadings stage. Given the uniformity of Defendants' material statements and conduct alleged here,

10

Plaintiffs' class claims arise from the same course of acts, omissions, and material events— the purchase of Defendants' tractors within the relevant time period tractors equipped with universally defective forward crash avoidance systems. Defendants raise a litany of hypothetical future concerns with certification but fail to specifically relate these concerns to the allegations of Plaintiffs' First Amended Complaint.

In reality, Plaintiffs' First Amended Complaint neither reinvents the wheel nor attempts certification in a context that has never been done before or is otherwise impossible, which is essentially Defendants' burden of showing at this stage. "[T]he Seventh Circuit has upheld decisions to certify a nationwide class so long as 'the central questions in the litigation are the same for all class members." *Gibson v. Albertsons Co.*, 754 F. Supp. 3d 793, 802 (N.D. Ill. Oct. 17, 2024) (denying defendant's motion to strike class allegations where proposed class included consumers in 44 U.S. states and territories), *quoting Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010). Further, "Seventh Circuit precedent teaches that [multistate consumer protection] certifications are not categorically prohibited." *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 757 (N.D. Ill. 2018).

Defendant Navistar in particular is no stranger to being a party-defendant to nationwide class actions concerning its tractors. Navistar recently resolved a similar nationwide matter that was not only certified for settlement purposes by this very Court, but also involved the same law firm in defense for Navistar as this class action. *See In re Navistar MaxxForce Engines Mktg.*, No. 1:14-cv-10318, 2020 U.S. Dist. LEXIS 83859 (N.D. Ill. Jan. 20, 2020). In the *MaxxForce* litigation, Plaintiffs asserted nationwide claims for breach of express and implied warranties on the grounds that Navistar's Maxxforce engine installed in its tractors was knowingly defective, causally resulting in repeated engine failures and frequent repairs. *In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, 67 F. Supp. 3d 1382 (N.D. Ill. Dec. 17, 2024).

In granting certification for settlement purposes, the Northern District provided ample reasoning for its conclusion that Rule 23 class requirements were satisfied on a nationwide basis, all of which is readily applicable to this case. The Court found that numerosity was satisfied because the record established that there were approximately 45,000 class members and purchases of the Navistar tractors in question; here, Plaintiffs' allegations establish the likelihood that there are thousands of class members who bought hundreds of thousands of tractors in question. *MaxxForce Engines Mktg.*, 2020 U.S. Dist. LEXIS 83859 at *27; 1st Am. Compl. at pg. 2.

Perhaps most importantly, the Court also found that the element of commonality was also satisfied on the grounds that resolution would depend on common answers to common questions, "such as whether the Class Vehicles are defective; whether Defendants knew or should have known of the defect prior to sale; whether Defendants' warranties required them to fix the defect; and whether the Class Vehicles came with an implied warranty of merchantability. *Id.* Here, Plaintiffs allege similar core, common questions such as whether the Wingman systems were defective, whether Defendants knew or should of known this in advance of launch, and whether the class vehicles came with implied warranties. Lastly, the court found typicality because the plaintiffs were challenging the same conduct—the design and sale of the same Navistar trucks—that allegedly affected all Class Members, and they made the same legal arguments in support thereof. *MaxxForce Engines Mktg.*, 2020 U.S. Dist. LEXIS 83859 at *27-28. Thus, the notion that Plaintiffs cannot possibly obtain certification, i.e. Defendants' burden here, is sorely misguided.

### B. Rule 23 allows Plaintiffs to represent class members in different states.

Bendix makes an additional argument in its motion–that "Plaintiffs cannot represent individuals who have claims under the laws of different states than [themselves]," which amounts to rhetorical gaslighting. ECF No. 84 at pgs. 6-7. Bendix relies on *Baldwin* case, which is distinguishable from this matter, and when read in its entirety, contradicts Bendix's position. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724 (N.D. Ill. Jan. 13, 2015). In *Baldwin*, the sole plaintiff claimed violations of specific consumer protection statutes of 36 states, and breach of express and implied warranties under the laws of all 50 states, based on his own purchases of Antabloc, a dietary supplement developed by the defendant, all of which occurred solely in the state of Illinois. *Id.* On these facts, the Northern District reasoned it was "apparent that Mr. Baldwin himself has no claims under the consumer protections laws of states where he did not purchase or use Anatabloc." *Id.* at 731.

Here, unlike in *Baldwin*, Plaintiffs are national motor carriers representing a class of fellow motor carriers and other purchasers of these systems of which they have reason to believe occurred in all fifty states, however, Plaintiffs' claims are at common law not state consumer protection statutes with heightened jurisdictional requirements. As stated by the *Baldwin* court: "The case before this court differs in that Mr. Baldwin has brought claims under the statutes of dozens of other states." *Id.* at 733. As Bendix's Motion conveniently ignores, even if Plaintiffs' action were analogous to *Baldwin*, the *Baldwin* court discusses numerous precedents wholly contrary to Bendix's position as it tries to apply to this case. *See, e.g., In re Aftermarket Filters Antitrust Litig.*, 08-cv-4883, 2009 U.S. Dist. LEXIS 104114, 2009 WL 3754041, at *5 (N.D. Ill. Nov.5, 2009) (declining to dismiss antitrust claims under the laws of 28 states brought by a proposed nationwide class of purchasers of autofilters); *Kuhl v. Guitar Ctr. Stores*, Inc., No. 07-cv-0214, 2008 U.S. Dist. LEXIS

13

17222, 2008 WL 656049, at *3 (N.D. Ill. March 5, 2008) (declining to dismiss fair pay claims brought under the laws of states other than Illinois, where proposed class representatives worked); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010) ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."). *Baldwin* is not on point to this case and, therefore, Bendix's attempted standing argument based on the same should be disregarded.

## Conclusion

It is Defendants' burden at this stage to show a complete legal bar to certification or otherwise demonstrate that certification is impossible. Defendants have failed to meet their burden. While Defendants' briefs highlight general differences between the laws of the fifty states in an attempt to meet this burden, they preemptively conclude that all 50 states' laws will apply as if the Parties had any of the requisite discovery needed to perform any bona fide choice of law analysis in the first place. Even if a genuine conflict of law arises in the course of discovery, Defendants' briefs are silent on Rule 23's subclass provision designed to deal with this very circumstance. Defendants also ignore the clear common questions of defect, actual knowledge thereof, and uniform, concerted efforts to conceal them as part of nationwide marketing campaign to motor carriers. To the contrary, even a cursory review of Plaintiffs' First Amended Complaint demonstrates that Plaintiffs have satisfied their pleading burden at this early stage of the case. For those reasons, the Court should deny the motions to mtrike and class discovery should proceed.

14

Dated: June 30, 2025                    Respectfully submitted,

                                        /s/ *Devin M. Taseff*
                                        Matthew S. Hefflefinger
                                        Devin M. Taseff
                                        John Bickley
                                        CHARTWELL LAW
                                        7707 North Knoxville Avenue
                                            Suite 201-A
                                        Peoria, Illinois 61614
                                        (309) 225-5560
                                        mhefflefinger@chartwelllaw.com
                                        dtaseff@chartwelllaw.com
                                        jbickley@chartwelllaw.com

                                        Nicholas H. Wooten
                                        Robert D. Cheeley
                                        Andre T. Tennille III
                                        Gabrielle D. Gravel
                                        CHEELEY LAW GROUP LLC
                                            Suite 200
                                        Alpharetta, Georgia 30009
                                        (770) 814-7001
                                        nick@cheeleylawgroup.com
                                        bob@cheeleylawgroup.com
                                        dre@cheeleylawgroup.com
                                        gabby@cheeleylawgroup.com

                                        *Counsel for Plaintiffs*


CERTIFICATE OF SERVICE

I certify that today I filed the forgoing document electronically with the Clerk of Court through the Court's electronic filing system, which automatically serves all counsel of record.

                                        */s/ Devin M. Taseff*

15