IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| HIRSCHBACH MOTOR LINES, INC.; JOHN CHRISTNER TRUCKING, LLC; THREE DIAMOND LEASING, LLC; GR EQUIPMENT LEASING, INC.; SCHUSTER COMPANY; SCHUSTER ENTERPRISES, LTD.; AEG LEASING LLC; and SCHUSTER COMPANY, LLC, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-11979 Hon. Thomas M. Durkin Magistrate Judge Jeffrey Cole |

Plaintiffs,

v.

NAVISTAR, INC.; PACCAR INC.; and
BENDIX COMMERCIAL VEHICLE
SYSTEMS LLC,

Defendants.

## PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Matthew S. Hefflefinger
Devin M. Taseff
John Bickley
CHARTWELL LAW
7707 North Knoxville Avenue
    Suite 201-A
Peoria, Illinois 61614
(309) 225-5560
mhefflefinger@chartwelllaw.com

Nicholas H. Wooten
Robert D. Cheeley
Andre T. Tennille III
Gabrielle D. Gravel
CHEELEY LAW GROUP LLC
2500 Old Milton Parkway
    Suite 200
Alpharetta, Georgia 30009
(770) 814-7001
nick@cheeleylawgroup.com

June 30, 2025

*Counsel for Plaintiffs*

## Table of Contents

Table of Authorities ........................................................................................... 3

Introduction ....................................................................................................... 6

Facts .................................................................................................................... 7

Standard .............................................................................................................. 9

Argument ........................................................................................................... 10

I.     Plaintiffs plausibly plead fraudulent inducement. ........................................... 10

II.    Plaintiffs plausibly plead breach of contract. ................................................. 12

III.   Plaintiffs plausibly plead breach of warranty. ................................................ 14

     A.    Plaintiffs state claims for breach of express warranty. ........................ 14

     B.    Plaintiffs state claims for breach of implied warranty of merchantability. ................................................................................... 19

     C.    Plaintiffs state claims for breach of implied warranty of fitness for a particular purpose. ............................................................................... 21

Conclusion ......................................................................................................... 22

# Table of Authorities

**Cases**

*AnchorBank, FSB v. Hofer,*
  649 F.3d 610 (7th Cir. 2011) ............................................................................. 9

*Aprill v. Aquila,*
  No. 20C04657, 2022 LEXIS 36188, WL 614984 (N.D. III, Mar. 1, 2022) ...... 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................ 7, 10, 22

*Baldwin v. Star Sci., Inc.,*
  78 F. Supp. 3d 724 (N.D. Ill. 2015) .................................................................. 15

*Bandurin v. Aeroflot Russian Airlines*
  No. 19CV255, 2020 U.S. Dist. LEXIS 10296 (N.D. Ill. Jan. 22, 2020) ...... 13-14

*Bayer HealthCare LLC v. Aeropres Corp.,*
  717 F. Supp. 3d 738 (N.D. Ill. 2024) ............................................................ 19-21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................... 7, 10, 13, 22

*Brownmark Films, LLC v. Comedy Partners,*
  682 F.3d 687 (7th Cir. 2012) ....................................................................... 12-13

*Crest Container Corp. v. R.H. Bishop Co.,*
  111 Ill. App. 3d 1068 (1982) ....................................................................... 15-16

*Elward v. Electrolux Home Prods.,*
  214 F. Supp. 3d 701 (N.D. Ill. 2016) ......................................................... 19, 22

*Gibson v. Chicago,*
  910 F.2d 1510 (7th Cir. 1990) ...................................................................... 9-10

*Gurrola v. Ford Motor Co.,*
  2025 U.S. Cist. LEXIS 49028, WL 84366 (N.D. Ill. Mar. 18, 2025) ........... 16-18

*Hammer v. Residential Credit Sols., Inc.,*
  No. 13C6397, 2014 U.S. Dist. LEXIS 128104 (N.D. Ill. Sept. 11, 2014) ......... 12

*Hanson-Suminski v. Rohrman Midwest Motors, Inc.,*
  898 N.E.2d 194 (Ill. App. Ct. 1st Dist. 2008) ................................................... 10

*In re Takata Airbag Prods. Litig.,*
  462 F. Supp. 3d 1304 (S.D. Fla. 2020) ......................................................... 10-11

*Indeck Power Equip. Co. v. Ashley Energy, LLC,*
  No. 21C1353, 2024 U.S. Dist. LEXIS 45154 (N.D. Ill. Mar. 14, 2024) ........... 18

*Indus. Hard Chrome, Ltd. v. Hetran, Inc.,*
  64 F. Supp. 2d 741 (N.D. Ill. 1999) ............................................................ 14-15

*JTG Equities, LLC v. Greenberg*,
    No. 18C7927, 2019 U.S. Dist. LEXIS 111469, 2019 WL 2866713
    (N.D. Ill. July 3, 2019)...................................................................................... 10-12

*Maldonado v. Creative Woodworking Concepts, Inc.*,
    296 Ill. App. 3d 935 (1998) ............................................................................ 17

*Mann v. Vogel*,
    707 F.3d 872 (7th Cir. 2013) ......................................................................... 12

*Mitchell v. Skubiak*,
    618 N.E.2d 1013 (Ill. App. Ct. 1993) ............................................................ 11

*Pickens v. Mercedes-Benz USA, LLC*,
    No. 20C3470, 2021 U.S. Dist. LEXIS 210340, 2021 WL 5050289
    (N.D. Ill. Nov. 1, 2021) .................................................................................. 10-11

*Rodriguez v. Ford Motor Co.*,
    596 F. Supp. 3d 1050 (N.D. Ill. 2022)........................................................... 16-18

*Rosenstern v. Allergan, Inc.*,
    987 F. Supp. 2d 795, 2013 U.S. Dist. LEXIS 153225, WL 5782382.......... 15-16

*Sneed v. Ferrero*,
    656 F. Supp. 3d 777 (N.D. Ill. 2023) ............................................................ 20

*Solvay v. Cutting Edge Fabrication*,
    521 F. Supp. 3d 718 (N.D. Ill. 2021) ............................................................ 20

*Solvay USA, Inc. v. Cutting Edge Fabrication, Inc.*,
    2022 U.S. Dist. LEXIS 25851, WL 444116 (N.D. Ill. Feb. 11, 2022).............. 14

*Tamayo v Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ...................................................................... 13

*Tierney v. Vahle*,
    304 F.3d 734, 738 (7th Cir. 2002) ................................................................. 13

*188 LLC v. Trinity Indus., Inc.*,
    300 F.3d 730, 735 (7th Cir. 2002). ............................................................... 12-13

*White v. Monohan*,
    326 Fed. Appx. 385 2009 U.S. App. LEXIS 8205 ...................................... 14-15

**Statutes**

810 ILCS 5/2-313 .................................................................................................. 14

810 ILCS 5/2-314 .................................................................................................. 19

810 ILCS 5/2-315 .................................................................................................. 21

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................... 7, 10, 14

Fed. R. Civ. P. 9(b) ...................................................................................... 7, 11

## Introduction

Plaintiffs' First Amended Complaint tells a tale as old as time in corporate America, and in this case, the trucking industry. Defendants' company decisionmakers had actual knowledge of severe performance limitations and defects in Bendix's Wingman Frontal Crash Avoidance and Mitigation Systems and the semitractor models in which they were installed. Defendants not only consciously refused to fix these known issues in advance of launching the same nationwide but actively concealed them and the associated dangers from their motor carrier customers at large, using uniform, deceptive advertising materials. In doing so, Defendants engaged in a conspiracy to defraud Plaintiffs by inducing them to "upgrade' their power unit fleets with a system they actually knew would not perform as advertised in a number of inherently dangerous situations on the roadway, particularly its known failure, upwards of 50 percent of the time, to detect certain stationary vehicles ahead on the roadway while traveling at highway speeds or at nighttime, or both.

Plaintiffs submit that at common law, in virtually all fifty states, the allegations of the First Amended Complaint plausibly establish causes of action against Defendants for fraud, breach of contract, and breach of both express and implied warranties. In short, no reasonable person, let alone a national motor carrier, would purchase a frontal crash avoidance and mitigation system with a known failure rate of this magnitude amongst other known defects and performance limitations, had they been properly informed of the same by those who designed or manufactured it, or both. As such, arguably every person or entity who purchased one of Defendants' tractors equipped with said systems received an objectively inferior product compared to the product they were deceptively sold and, therefore, constitute a proper plaintiff entitled to money damages.

6

By and large, Defendants' motions to dismiss attempt to impose heightened, non-existent pleading standards upon Plaintiffs' claims as if they were required to present their case in chief from the outset. For example, Defendant Navistar's motion to dismiss states that "detail would defeat Plaintiffs' claims." However, as a matter of common sense, Defendants have the exclusive possession or control, or both at this time of the discovery reasonably required for Plaintiffs to comprehensively answer the questions of "who, what, when, where, why, and how" surrounding purchases of hundreds of thousands of tractors across potentially tens of thousands of buyers. Even a cursory reading of the allegations of Plaintiffs' First Amended Complaint provides sufficient "detail" and, therefore, fair notice, of the nature of Plaintiffs' claims and their remedies sought in compliance with Rule 8. Further, all allegations in support of fraud are plead with ample particularity in compliance with Rule 9. Accordingly, the Court should deny Bendix's, Paccar's, and Navistar's[1] Rule 9 and Rule 12(b)(6) motions to dismiss Plaintiffs' First Amended Class Action Complaint because the specific factual allegations made therein far exceed what is required at this stage of the case under *Twombly* and *Iqbal*.

## Facts

Plaintiffs are national motor carriers, or the owners of commercial motor vehicles manufactured by Navistar or Paccar and equipped with the Bendix Frontal Crash Avoidance and Mitigation Systems for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes. 1st Am. Compl. at 1-2, ECF No. 74. Frontal Crash Avoidance and Mitigation Systems (commonly referred to as "FCA" in the trucking industry) are meant to prevent or mitigate rear-end crashes between power units equipped with FCA systems and other vehicles on the

---

[1] Navistar, Inc. underwent a corporate reorganization and name change to International Motors, LLC ("International") effective October 1, 2024.

road that are stopped or slowing. *Id.* at 2. Bendix manufactures and sells two FCA systems that are marketed under the names Bendix Wingman Fusion System and Bendix Wingman Advanced System (the "defective Wingman systems") for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce. *Id.*

Plaintiffs' business is the hauling of freight for compensation throughout the country using commercial motor vehicles. *Id.* Plaintiffs purchased commercial motor vehicle power units equipped with FCA systems manufactured and supplied by Bendix to Navistar and Paccar for installation and use on the power units or "tractors" in tractor-trailer commercial motor vehicles. *Id.* Navistar and Paccar are manufacturers of power units which are equipped with either the Bendix Wingman Fusion System or the Bendix Advanced System. *Id.* Plaintiffs have purchased thousands of power units sold by Navistar and Paccar equipped with one or the other of the defective Bendix systems and Plaintiffs currently operate more than 1,000 such power units. *Id.*

In purchasing and operating these power units in its commercial motor vehicle business, Plaintiffs justifiably relied upon the knowledge, skill, and expertise of Navistar, Paccar, and Bendix to provide power units with reasonably safe and performing FCA systems in accordance with Navistar's, Paccar's, and Bendix's sales representations regarding these defective Wingman systems' capabilities. *Id.* Navistar, Paccar, and Bendix sold these defective Wingman systems with actual knowledge that both the Wingman Fusion and Wingman Advanced systems were defective and not suitable for their intended, advertised purpose while concealing these facts from Plaintiffs and the class. *Id.* Bendix, Paccar, and Navistar concealed from Plaintiffs the fact that the defective Wingman systems fail in their intended and designed purpose and further fail to perform as advertised to Plaintiffs and others similarly situated. *Id.* Hundreds of thousands of power units were affected, potentially across thousands, or tens of thousands, of individual purchas-

8

ers, and the damages to each power unit from the defective Bendix systems are in the tens of thousands of dollars. *Id.* Therefore, the wrongdoing of Navistar, Paccar, and Bendix caused Plaintiffs millions of dollars in damages and the class has suffered at least hundreds of millions of dollars in damages. *Id.* at 3.

Plaintiffs only recently learned of the defective nature of the defective Wingman systems through recent expert testing. *Id.* This testing revealed that both the Bendix Wingman Fusion System and Bendix Wingman Advanced System simply fail to perform at highway speeds and fail at their essential and intended purpose. *Id.* The Defendants had actual knowledge of the defects in these systems since 2015 but chose to intentionally withhold that information from Plaintiffs. *Id.* As a result, this action is timely filed for purposes of the statute of limitations as to all vehicles purchased by Plaintiffs equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced crash mitigation system. *Id.* Plaintiffs sued for fraudulent inducement (Count I), breach of contract (Count II), breach of express warranty (Count III), and breaches of implied warranties (Counts IV & V). They assert these claims individually and on behalf of all others similarly situated.[2] Defendants have moved to dismiss Plaintiffs' claims. Plaintiffs oppose Defendants' motions.

### Standard

These motions challenge the "sufficiency of the complaint, not the … merits" of the case. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quotation omitted). "The issue is not whether [Plaintiffs] will ultimately prevail but whether [they are] entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (quotation and punctuation omitted). To that end,

---

[2] Plaintiffs incorporate the allegations in their First Amended Complaint, ECF No. 74, here.

9

the Court "must accept as true" all of Plaintiffs' "well-pleaded factual allegations and the inferences reasonably drawn from them." *Gibson*, 910 F.2d at 1521 (quotation omitted).

Even then, under Rule 8, the complaint need only "state a claim to relief that is plausible on its face," something more than merely "speculative." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "labels and conclusions" are not enough, "detailed factual allegations" are not required. *Id.* at 570. The complaint need only contain enough facts to warrant a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While fraud must be alleged "with particularity," Defendants' "intent" and "knowledge" "may be alleged generally." Fed. R. Civ. P. 9(b).

## Argument

## I. Plaintiffs plausibly plead fraudulent inducement.

Plaintiffs state claims for fraudulent inducement. Under Illinois law, this claim has five elements: (1) false statement of material fact, (2) knowledge, (3) intent, (4) reliance, and (5) damages. *JTG Equities, LLC v. Greenberg*, No. 18C7927, 2019 U.S. Dist. LEXIS 111469, at *6, 2019 WL 2866713 (N.D. Ill. July 3, 2019) (quotation omitted). Plaintiffs allege all five elements and facts plausibly supporting them. *See* Am. Compl. at ¶¶ 116-–124. Defendants have fair notice of the claim. In fact, they objected to Plaintiffs alleging more facts showing their fraudulent intent. The Court should thus deny the motions to dismiss the fraud claim.

The complaint is brimming with specific, false representations "about safety" that are "actionable as fraud." *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 898 N.E.2d 194, 204 (Ill. App. Ct. 1st Dist. 2008); *see also Pickens v. Mercedes-Benz USA, LLC*, No. 20C3470, 2021 U.S. Dist. LEXIS 210340, 2021 WL 5050289 (N.D. Ill. Nov. 1, 2021) ("A failure to disclose specific information impacting the safety of a

[vehicle] can serve to state a claim for fraud.") (citing *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1318 (S.D. Fla. 2020)). For example, Defendants represented that the Wingman systems would provide 3- to 3.5-second warnings even though they knew the systems do not provide those warnings. Am. Compl. ¶¶ 34–41, 51–87. Defendants represented that the Wingman systems detect stationary or slow-moving objects even though they knew that the systems do not do so. Am. Compl. ¶¶ 28–29, 51–87. Those are false statements about safety, and they are enough to "state a claim for fraud." *Pickens*, 2021 U.S. Dist. LEXIS 210340, at *10.[3]

Plaintiffs also allege facts plausibly showing intent, reliance, and damages. Am. Compl. at ¶¶ 88–97, 116–124. Defendants' "intent" and "knowledge" "may be alleged generally." Fed. R. Civ. P. 9(b). Defendants made false statements affecting vehicle safety in a coordinated marketing campaign, knowing that the statements were false and intending for Plaintiffs to rely on the false statements. Am. Compl. ¶¶ 34-37, 65-67, 107, 119-20, 122. And Plaintiffs reasonably relied on Defendants' false representations. No reasonable person would buy defective crash avoidance systems for use in commercial motor vehicles on public roads. Plaintiffs would not have bought the Wingman systems if they had known the systems were defective. In any event, "[w]hether reliance was reasonable is generally a question of fact." *JTG Equities*, 2019 U.S. Dist. LEXIS 111469, at *8 (citing *Mitchell v. Skubiak*, 618 N.E.2d 1013, 1018 (Ill. App. Ct. 1993)).

Plaintiffs' fraud allegations satisfy Rule 9(b). Defendants know who made the false statements—they did—and that they made the false statements beginning at least in April 2015. Defendants know what, where, and how: They used coordinated

---

[3] None of these representations are "puffery." Representing that products detect stationary objects and provides 3.0- to 3.5-second warnings are not the sort of "broad, non-quantifiable" statements that amount to "puffery." *Cf. Pickens*, 2021 U.S. Dist. LEXIS 210340, at *9 (quoting *Johnson v. FCA US LLC*, 2021 U.S. Dist. LEXIS 154132, 2021 WL 3633595, at *13 (E.D. Mich. Aug. 17, 2021)).

marketing materials that the Wingman systems provided 3- to 3.5-second warnings, including for stationary or slow-moving objections. *Compare JTG Equities*, 2019 U.S. Dist. LEXIS 111469, at *8 ("[Defendant's] acts and omissions are attributable to both defendants and there is no concern the defendants have not adequately been informed of their participation."). In fact, Defendants objected to Plaintiffs including more factual allegations in the complaint. Test results and emails from 2015 show that Defendants knew the systems were defective. Am. Compl. ¶¶ 53-55.

## II.     Plaintiffs plausibly plead breach of contract.

Plaintiffs state claims for breach of contract. Under Illinois law, breach of contract comprises four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by Plaintiffs; (3) breach of contract by Defendants; and (4) resultant damages. *Hammer v. Residential Credit Sols., Inc.*, No. 13C6397, 2014 U.S. Dist. LEXIS 128104, at *18-19 (N.D. Ill. Sep. 11, 2014) (citations omitted). Plaintiffs allege facts showing that they have valid and enforceable contracts with Defendants. Am. Compl. ¶¶ 25, 125-129. Plaintiffs allege substantial performance and breach. *Id.* And Defendants do not question the sufficiency of Plaintiffs' damages allegations. *Id.* In short, Plaintiffs state a claim for breach of contract, and that precludes dismissal.

None of this is "artful pleading," as Defendants claim. It is simply plausible pleading. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hammer*, at 17-18 (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013)).

Defendants' reliance on the incorporation-by-reference doctrine, as defined in *Brownmark Films* and *188 LLC*, is misplaced. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *188 LLC v. Trinity Indus., Inc.*, 300

F.3d 730, 735 (7th Cir. 2002). The doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Brownmark Films*, LLC, at 687, 690 (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). Plaintiffs are not withholding documents to dodge dismissal, and they specifically allege the existence of contracts between Plaintiffs and Defendants. Am. Compl. at 2-3. Defendants' assertion that Plaintiffs must attach each individualized contract at the pleadings stage, where Plaintiffs' allegations concern hundreds of thousands of power units across potentially tens of thousands of individual purchasers, is contrary to law and impractical. Whether or not the contracts are attached is immaterial at this pleading stage where the allegations give Defendants notice of the claims and the grounds on which they rest.[4]

Defendants rely on *Aprill v. Aquila*, to assert that Plaintiffs claims are based on conclusory allegations. No. 20C04657, 2022 LEXIS 36188, WL 614984 (N.D. III. Mar. 1, 2022). However, the plaintiff in *Aprill* relied on an oral employment contract and a promise of an annual bonus, which led to dismissal. *Id.* at 33. Here, Plaintiffs identify the contracts, allege performance, and describe the breach by Defendants. Am. Compl. ¶¶ 25, 125-129

Defendants' reliance on *Bandurin v. Aeroflot Russian Airlines* rests on readily distinguishable facts. No. 19CV255, 2020 U.S. Dist. LEXIS 10296 (N.D. Ill. Jan. 22, 2020). The Plaintiffs in *Bandurin* are individual airline passengers who failed to allege any contractual relationship beyond their own plane tickets and the Russian Aviation Code, neither of which the Court found to be enforceable obligations. *Id.* at

---

[4] *See Tamayo v Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("A plaintiff's complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis.") (citing Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

31-32. In contrast, here Plaintiffs allege the existence of numerous purchases and sale contracts and do not rely on abstract contract sources to state their claims. Am. Compl. ¶¶ 25, 125-129.

As to Defendants' claim that Plaintiffs fail to allege substantial performance under the contract, "whether a party has substantially performed the essential elements of a contract is a question of fact" and Plaintiffs' references to the contracts in the Complaint are "enough to cross the plausibility threshold in the notice pleading regime set out in Rule 8." *Solvay USA, Inc. v. Cutting Edge Fabrication, Inc.*, No. 20-cv-849, 2022 U.S. Dist. LEXIS 25851, at *7, 8, WL 444116 (N.D. Ill. Feb. 11, 2022). "In deciding a motion to dismiss, the district court must accept as true all well pleaded facts and draw all permissible inferences, other than the utterly fantastic, in the plaintiff's favor." *White v. Monohan*, 326 Fed. Appx. 385, 386, 2009 U.S. App. LEXIS 8205, *1. In short, Plaintiffs are not required to attach the referenced contracts at this stage. They need only plausibly allege breach, which they have done.

## III. Plaintiffs plausibly plead breach of warranty.

Plaintiffs state claims for breach of express and implied warranties. Plaintiffs allege facts plausibly showing that Defendants made express warranties and breached them along with warranties implied by law.

### A. Plaintiffs state claims for breach of express warranty.

Plaintiffs "state a claim for breach of express warranty" under Illinois law by alleging that (1) Defendants made affirmations of fact or promises (2) about the Wingman systems, (3) those affirmations were part of the basis for the bargain, and (4) Defendants guaranteed that the systems would conform to the affirmations of fact or promises. *Indus. Hard Chrome, Ltd. V. Hetran, Inc.,* 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999); 810 ILCS 5/2-313; Am. Compl. ¶¶ 130-159. Plaintiffs allege affirma-

14

tions of fact and promises in marketing materials and direct communications. Am. Compl. ¶¶ 75, 133, 136(a)-(i), and 141. Those affirmations or promises were part of the basis for the bargain. *Id.* ¶¶ 135-137. And Defendants guaranteed that the Wingman systems would perform as promised. *Id.* ¶ 136(a)-(i). That is more than enough to state a claim.

In deciding a motion to dismiss, the trial court must accept as true all well pleaded facts and draw all permissible inferences, other than the utterly fantastic. *White*, 326 Fed. Appx. at 386. Plaintiffs alleged that Defendants "made affirmations of fact or promises that are part of the basis of the bargain between Plaintiffs and the class as buyers" relating to "[t]he Wingman Advanced System" and "[t]he Wingman Fusion System" guaranteeing that the Wingman systems would conform to the affirmation or promise. Am. Compl. ¶ 136; *Indus. Hard Chrome,* 64 F. Supp. at 747. Specifically, Plaintiffs "state[d] the terms of the [express warranties made by Defendants]" through brochures in the complaint—broken down into nine affirmations or promises. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 739 (2015); Am. Compl. ¶ 136(a)-(i). Unlike in *Baldwin*, this complaint lays out exactly which "affirmation[s] of fact or promise" were made by Navistar, Bendix, and Paccar. *Id.*

The complaint alleges that Defendants made these warranties to Plaintiffs through Navistar-branded brochures "through a coordinated marketing campaign … from July 2015 through January 2024."[5] Am. Compl. at ¶¶ 27, 31-33; *see also* Exhibit C and D to Am. Compl. "Documents and brochures may constitute express warranties; such affirmations made during a bargain become a basis of the bargain

---

[5] "At this stage of the litigation, however, Plaintiff[s] [are] not required to specifically identify what promotional materials [Plaintiffs] relied on. It is enough for Plaintiff to describe [Defendants'] promotional activities and allege that [Plaintiffs] relied on this information. These allegations make [Defendants'] liability plausible." *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805, 2013 U.S. Dist. LEXIS 153225, WL 5782382 (denying motion to dismiss for breach of express warranty claim).

unless clear affirmative proof shows otherwise." *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068 (1982). Further in line with the facts here, "[i]n the context of a buyer purchasing a product *from a dealer and not the manufacturer*, Illinois courts have concluded that brochures, documents, and advertisements may be the basis of express warranty." *Rosenstern*, 987 F. Supp. 2d at 805 (citation omitted) (emphasis added). "In other words, manufacturer documents given directly to the buyer prior to a purchase may give rise to an express warranty because the assertions become part of the basis of the bargain unless clear affirmative proof shows otherwise." *Id*. Although Plaintiffs have pleaded breach of express warranty by "stat[ing] the terms of the warranty," Plaintiffs also attached the brochures containing the warranties to the complaint. Am. Compl. ¶¶ 28-32, 42, and 56; Ex. A-G.

Ignoring all that, Defendants drum up a technicality. They fault Plaintiffs for purportedly failing to give pre-suit notice, as if a form letter would make Defendants rethink a years-long fraud. In any event, pre-suit notice is not required here (1) because Defendants (the sellers) always had "actual knowledge" that these particular Wingman systems are defective. *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1054 (N.D. Ill. 2022) (citations omitted). Bendix and Navistar knew the Wingman systems were defective and could not detect stationary or slow-moving objects years ago. Am. Compl. ¶¶ 54, 58-62, 82, 87, 95-96, 107, 139-140, 148, 157. Paccar also had actual knowledge long ago. *Id*. ¶¶ 59-62 86, 97, 139-140, 148, 157.

While this Court did not find sufficient pre-suit notice in *Rodriguez*, the circumstances here do more than show "general allegations" that Navistar "had knowledge of the defect in the [Wingman systems] product line." 596 F. Supp. 3d at 1055. Unlike here, in *Rodriguez*, the argument for actual knowledge was only backed up by "'ten years' of testing door use in 'tens of thousands of load cycles,' and because Ford received numerous negative customer reviews regarding the backup camera malfunctioning." *Id*. at 1054-55. In *Gurrola v. Ford Motor Co.* plaintiffs al-

16

leged only "settlement talks" and "[t]aking a car to a [Defendant] dealership." 2025 U.S. Dist. LEXIS 49028, *15, WL 84366 (N.D. Ill. Mar. 18, 2025). In *Maldonado*, the appellate court reversed the dismissal of plaintiff's warranty claim, and says that "[d]irect notice" to the seller "is unnecessary when (1) the seller has actual notice of the defect in a product," and that "[w]hether sufficient notice has been provided is generally a question of fact to be determined based upon the particular circumstances of each case." *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 940 (1998) (citations omitted).

This case is a prime example of why the actual knowledge exception exists. Unlike any authority cited by Defendants, the Wingman systems were part of a national recall where Navistar and Paccar were listed as a purchasers of "this defective/noncompliant equipment for possible use or installation in new motor vehicles or new items o motor vehicle equipment."[6] Am. Compl. at ¶ 86-87. Navistar and Bendix were sued and are currently litigating a personal injury case caused by these defects in the Southern District of Illinois[7] well before the filing of this lawsuit. *Id*. To claim no knowledge of the many avoidable crashes that have occurred while actively defending in *Lewis* is nonsensical.

Testing was conducted in April 2015, and Navistar and Bendix became apprised of the fact that "the Wingman Fusion System failed to detect a stationary pickup truck/utility trailer combination ahead of the Navistar power unit approximately 30-50 percent of the time, resulting in the complete failure of its emergency

---

[6] Bendix Commercial Vehicle Systems LLC, Part 573 Safety Recall Report No. 24E-086 (Oct. 11, 2024), https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24E086-1354.PDF; *also see* Bendix Commercial Vehicle Systems Letter to OEMs Regarding Recall No. 24E-086 (Oct. 2024), https://static.nhtsa.gov/odi/rcl/2024/RCMN-24E086-0331.pdf

[7] *See Lewis v. Hirschbach Motor Lines*, Case No. 3:20-cv-01355-JPG; *see also Rodriguez*, 596 F. Supp. 3d at 1054 (allowing for an exception to pre-suit notice when "a consumer plaintiff suffers a personal injury, in which case the notice requirement could be satisfied by filing a lawsuit.").

braking system to engage in each instance." *Id.* This fact alone shows that Navistar and Bendix "[were] 'somehow apprised of the trouble with the particular product purchased by a particular buyer.'" *Rodriguez*, 596 F. Supp. 3d at 1055. The trouble with the Wingman systems is not a general defect in the line, but "a complete failure of its emergency braking system to engage in each instance" in *every* unit sold with either Wingman system to *every* buyer. Am. Compl. at ¶ 26.

After the testing, Navistar sent emails to Bendix acknowledging these defective results with additional complaints about the performance of the Bendix Wingman System—specifically about radar-detection failure concerns. Am. Compl. ¶¶ 53, 54, 55. Defendants objected to Plaintiffs attaching such correspondence to the Amended Complaint for confidentiality concerns—so Plaintiffs summarized the substance of those communications. Am. Compl. ¶¶ 53-55. Because the content of the emails from Navistar to Bendix are "consistent with the pleadings," the Court "may nonetheless consider additional facts set forth in a brief opposing dismissal." *Indeck Power Equip. Co. v. Ashley Energy, LLC*, No. 21 C 1353, 2024 U.S. Dist. LEXIS 45154, at *4-5 (N.D. Ill. Mar. 14, 2024). So Navistar and Bendix were "apprised of the trouble with the particular product purchased by [Plaintiffs]" *Rodriguez*, 596 F. Supp. 3d at 1055 (citations omitted). This is about as "specific[] and granular[]" as knowledge of a defect can be and shows that Navistar was informed years ago that *every* transaction with this product involved a breach. *Gurrola*, LEXIS 49028, *14 (N.D. Ill. Mar. 18, 2025).

After Navistar communicated its knowledge of the complete failure of the Wingman systems to Bendix, Bendix still classified the issue as "benign" in internal memoranda and engaged in marketing and advertising the Wingman Fusion system as next-generation safety technology that would provide drivers with up to 3.5 seconds of warnings at highway speeds—even though it already knew the defect

made this impossible. Am. Compl. ¶¶ 54, 55, 62, 63. Paccar also had actual knowledge long ago. *Id.* ¶¶ 59-62 86, 97, 139-140, 148, 157.

All in all, the circumstances here overwhelmingly move the needle for Defendants having actual knowledge of the defects and the complaint shows that express warranties were sufficiently plead.

## B. Plaintiffs state claims for breach of implied warranty of merchantability.

Plaintiffs "state a claim for breach of the implied warranty of merchantability" under Illinois law by alleging (1) the sale of the Wingman Systems, (2) by Defendants, and (3) that the Wingman Systems were not of merchantable quality. *Bayer HealthCare LLC v. Aeropres Corp.*, 727 F. Supp. 3d 738, 753 (2024); 810 ILCS 5/2-314; Am. Compl. ¶¶ 143-150. Plaintiffs allege the sale of the Wingman systems by Navistar, Bendix, and Paccar, all "merchants…with respect to the defective power units," and that the systems were not of merchantable quality because the "Wingman systems would not pass without objection in the trade under the contract description [and] are not fit for their ordinary purpose." Am. Compl. at 2, ¶¶ 145-149; *Bayer*, 727 F. Supp. 3d at 753. The systems' ordinary purpose is "for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes" and "are meant to prevent or mitigate rear-end crashes between power units equipped with [FCA] and other vehicles on the road that are stopped or slowing." Am. Compl. at 1-2. That is more than enough to state a claim.

While Illinois recognizes various privity requirement exceptions, "[g]iven 'the fact-intensive nature' of the privity inquiry…a determination as to whether privity exists is often 'not appropriate at the motion-to-dismiss stage.'" *Elward v. Electrolux Home Prods.*, 214 F. Supp. 3d 701, 704-705 (2016). Nonetheless, there are two exceptions to the privity requirement: (1) where there is a direct relationship between

the manufacturer and the seller, or (2) where the manufacturer knew the identity, purpose, and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements. *Bayer*, 727 F. Supp. 3d at 753.

Plaintiffs alleged that they "purchased commercial motor vehicle power units equipped with [the Wingman systems] manufactured and supplied by Bendix to Navistar and Paccar," and alleged privity. Am. Compl. at 2, ¶ 149. Plaintiffs alleged more than "legal assertions" and "mere conclusory statement" allowing for a privity exception. *Sneed v. Ferrero*, 656 F. Supp. 3d 777, 786 (2023). Plaintiffs pleaded that "[a]t the time of contracting, Navistar, Paccar, and Bendix…had reason to know that Plaintiffs…had a particular purpose for which the defective power units and Wingman systems were required. That particular purpose includes operating commercial motor vehicles in compliance with Federal Motor Carrier Safety Regulations." Am. Compl. at ¶ 154; *see also Id.* at 1-2, ¶¶ 11, 18-22, 27-32, 39, 62.

Despite all this, Defendants have attempted to create new elements for breach of implied warranty—such as pleading details of the "point of sale" and pleading stopped use of the power units—though these are not pleading requirements. ECF No. 88 at 13. Instead, Plaintiffs needed only allege Defendants "sold goods that were not merchantable at the time of sale," and Plaintiffs plead exactly that: "At the time of sale and all relevant times, the defective power units equipped with the defective Wingman systems would not pass without objection in the trade under the contract description, are not fit for their ordinary purpose, and do not conform to the promise or affirmations of fact made in marketing materials." Am. Compl. ¶ 147; *Solvay v. Cutting Edge Fabrication*, 521 F. Supp. 3d 718, 725-26 (N.D. Ill. 2021). In *Solvay*, the plaintiff failed to plead that the goods were not merchantable at the time of sale altogether. *Id.* Minute details are not required at this stage of pleading.

Finally, Plaintiffs clearly plead the Wingman systems' ordinary purpose: for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes" and "are meant to prevent or mitigate rear-end crashes between power units equipped with [FCA] and other vehicles on the road that are stopped or slowing." Am. Compl. at 1-2. Plaintiffs alleged exactly what these Wingman systems failed to do: "the system fails to provide audible and visual alerts up to 3.5 seconds before potential impact when the system is engaged at speeds above 50 mph and even lower speeds at night or in low-visibility situations." *Id.* ¶ 73. Here, Plaintiffs' case is about the Wingman systems installed *for use* on the power units. The cost of retrofitting the existing trucks and replacing them with systems that actually prevent and mitigate crashes are plead as part of Plaintiffs' damages, just to name one. Am. Compl. ¶¶ 81, 99.

## C. Plaintiffs state claims for breach of implied warranty of fitness for a particular purpose.

Plaintiffs "state a claim for breach of the implied warranty of fitness for a particular purpose" under Illinois law by alleging that (1) Defendants had reason to know of the particular purpose for which the Plaintiffs required the Wingman systems, (2) Plaintiffs relied on Defendants' skill and judgment to select suitable goods, and (3) Defendants knew of Plaintiffs' reliance on Defendants' skill and judgment. *Bayer*, 727 F. Supp. 3d at 753; 810 ILCS 5/2-315; Am. Compl. ¶¶ 151-159. Plaintiffs alleged that they relied on Defendants' skill and judgment to select suitable goods and that Defendants "knew" that Plaintiffs were relying on that skill and judgment. Am. Compl. ¶ 154. Plaintiffs alleged the particular purpose including "operating commercial vehicles in compliance with Federal Motor Carrier Safety Regulations." *Id.* That is more than enough to state a claim.

Again, pleading details of a purchase is not an element that Plaintiffs must plead at this stage. Plaintiffs undoubtedly pleaded the particular purpose—compliance with Federal Motor Carrier Safety Regulations—which is different from the systems' ordinary purpose—use on Class 4-8 trucks and buses in both interstate and intrastate commerce to mitigate crashes. Am. Compl. at 1-2, ¶ 154. The difference between these two uses is significant, creating heightened liability, duties, and licensing. At its core, the complaint plausibly pleads a breach of implied warranty of fitness for a particular purpose.

## Conclusion

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts alleged and draw all possible inferences in the plaintiff's favor. *Elward*, 214 F. Supp. 3d at 704. Defendants' motions to dismiss should be denied in their entirety because Plaintiffs' First Amended Complaint provides them with ample notice of the nature of Plaintiffs' fraud, breach of contract, and warranty claims, along with specific facts in support. A common theme of Defendants' motions is that Plaintiffs have not fully and comprehensively described the circumstances of each individual power-unit purchase at issue and, therefore, have failed to satisfy *Twombly* and *Iqbal*. This theme can be disposed of by simply taking it to its logical conclusion: assuming that Plaintiffs were truly required to plead all such facts in their complaint in such itemized fashion, and that there are potentially tens of thousands of individual power unit purchases at issue, the Complaint would have to be thousands of pages long if Defendants' position were true.

To spare this Court the unconscionable result of having to read through such an initial pleading, Plaintiffs' First Amended Complaint readily establishes the ultimate facts required to state causes of action in fraud, breach of contract, and

breach of warranties and, therefore, readily survives dismissal. Therefore, Defendants' Motions to Dismiss should be denied in their entirety.

Dated: June 30, 2025

Respectfully submitted,

*/s/    Gabrielle D. Gravel*
Nicholas H. Wooten
Robert D. Cheeley
Andre T. Tennille III
Gabrielle D. Gravel
CHEELEY LAW GROUP LLC
Suite 200
Alpharetta, Georgia 30009
(770) 814-7001
nick@cheeleylawgroup.com
bob@cheeleylawgroup.com
dre@cheeleylawgroup.com
gabby@cheeleylawgroup.com

Matthew S. Hefflefinger
Devin M. Taseff
John Bickley
CHARTWELL LAW
7707 North Knoxville Avenue
Suite 201-A
Peoria, Illinois 61614
(309) 225-5560
mhefflefinger@chartwelllaw.com
dtaseff@chartwelllaw.com
jbickley@chartwelllaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that today I filed the foregoing document electronically with the Clerk of Court through the Court's electronic filing system, which automatically serves all counsel of record.

*/s/    Gabrielle D. Gravel*

23