IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HIRSCHBACH MOTOR LINES, INC.; JOHN CHRISTNER TRUCKER, LLC; THREE DIAMOND LEASING, LLC; GR EQUIPMENT LEASING, INC.; SCHUSTER COMPANY; SCHUSTER ENTERPRISES, LTD.; AEG LEASING LLC; SCHUSTER COMPANY, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVISTAR, INC.; PACCAR INC.; and BENDIX COMMERCIAL VEHICLE SYSTEMS LLC,<br><br>Defendants. | Case No. 1:24-cv-11979<br><br>Honorable Thomas M. Durkin |

**REPLY IN SUPPORT OF DEFENDANT BENDIX COMMERCIAL VEHICLE SYSTEMS LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM**

Dated: July 21, 2025

Respectfully Submitted,

 /s/ *Erica L. Calderas*
J. Patrick White (ARDC# 6292078)
Hahn Loeser & Parks LLP
200 West Madison Street, Suite 2700
Chicago, IL  60606
pwhite@hahnlaw.com

Erica L. Calderas (Admitted *Pro Hac Vice*)
Eric B. Levasseur (Admitted *Pro Hac Vice*)
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, OH  44114
elcalderas@hahnlaw.com
eblevasseur@hahnlaw.com

*Attorneys for Defendant Bendix Commercial Vehicle Systems LLC*

18987132.1

# **TABLE OF CONTENTS**

                                                                                                                                  **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ....................................................................................................1

II.     LAW AND ARGUMENT .........................................................................................1

        A.      Plaintiffs Fail to State a Claim for Fraud in the Inducement (Count I) ....................1

        B.      Plaintiffs Fail to State a Claim for Breach of Contract (Count II) ...........................2

        C.      Plaintiffs Fail to State Any Breach of Warranty Claim ...........................................3

                1.      Lack of Pre-Suit Notice Bars Each Warranty Claim (Counts III, IV, V) .................................................................................................................3

                2.      Plaintiffs Fail to Plead Breach of Express Warranty (Count III) .................5

                3.      Plaintiffs Fail to Plead Breach of Implied Warranties (Counts IV and V) .........................................................................................................6

                        a.      Counts IV and V Fail for Lack of Vertical Privity ..........................6

                        b.      Plaintiffs Fail to Plead the "Ordinary Purpose" Elements (Count IV) .........................................................................................9

                        c.      Plaintiffs Fail to Plead a Plausible "Particular Purpose" (Counts V) ........................................................................................10

III.    CONCLUSION ........................................................................................................10

CERTIFICATE OF SERVICE .................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aquino v. C.R. Bard, Inc.*,
   413 F. Supp. 3d 770 (N.D. Ill. 2019) ....................................................................................... 6

*Bayer HealthCare LLC v. Aeropres Corp.*,
   727 F. Supp. 3d 738 (N.D. Ill. 2024) ....................................................................................... 8

*Bonte v. U.S. Bank, N.A.*,
   624 F.3d 461 (7th Cir. 2010) ................................................................................................... 1

*Cont'l Bank, N.A. v. Meyer*,
   10 F.3d 1293 (7th Cir. 1993) ................................................................................................... 2

*Darne v. Ford Motor Co.*,
   No. 13 CV 03594, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2017) ............................................. 5

*Elward v. Electrolux Home Prods.*,
   214 F. Supp. 3d 701 (2016) ..................................................................................................... 7

*In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*,
   966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd on other grounds sub nom. Briehl v.
   Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ................................................................... 9

*Gurrola v. Ford Motor Co.*,
   774 F. Supp. 3d 959 (N.D. Ill. 2025) ........................................................................... 3, 4, 7, 8, 9

*Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*,
   946 F. Supp. 1358 (N.D. Ill. 1996) .......................................................................................... 2

*Lewis v. Hirschbach Motor Lines*,
   S.D.Ill. Case 3:20-cv-01355-JPG ............................................................................................ 4

*Maldonado v. Creative Woodworking Concepts, Inc.*,
   296 Ill. App. 3d 935 (1998) ................................................................................................. 4, 5

*Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*,
   347 Ill.App.3d 828, 807 N.E.2d 1165 (2004) ......................................................................... 7

*O'Connor v. Ford Motor Co.*,
   477 F. Supp. 3d 705 (N.D. Ill. 2020) ................................................................................... 4, 5

*Rodriguez v. Ford Motor Co.*,
   596 F. Supp. 3d 1050 (N.D. Ill. 2022) ................................................................................. 4, 5

**Other Authorities**

https://www.merriam-webster.com/dictionary/mitigate?src=search-dict-box ..............................10

Fed.R.Civ.P. 9......................................................................................................................................2

Fed.R.Civ.P. 9(b) ................................................................................................................................1

18987132.1

I.  **INTRODUCTION**

Plaintiffs' Opposition (ECF 93) to Bendix's Motion to Dismiss (ECF 81, 82)[1] does nothing more than double down on the defective First Amended Complaint ("FAC"). Plaintiffs have not and cannot plead essential claim elements as a matter of law. Plaintiffs fail to show otherwise. Plaintiffs are masters of their complaint. Having had the benefit of amendment, including after Defendants briefed claim deficiencies, it is appropriate to presume the FAC states the allegations as favorably as possible for Plaintiffs. Thus, the FAC should be dismissed with prejudice.

II.  **LAW AND ARGUMENT**

A.  **Plaintiffs Fail to State a Claim for Fraud in the Inducement (Count I)**

Plaintiffs have not plausibly and particularly alleged fraud in the inducement.

**First**, Bendix showed Plaintiffs cannot prove their central allegation of that Bendix induced them to purchase power units from Bendix. ECF 82 at 4; FAC ¶ 120. Plaintiffs do not dispute that Bendix does not sell power units. Indeed, Plaintiffs do not respond to this argument at all and thus concede it. *See* ECF 93 at 10-12; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[Plaintiffs] fail completely to respond to the specific arguments … as to why their complaint fails to state a claim"; "Failure to respond…results in waiver.").

**Second**, Plaintiffs fail to show they pled the who/what/when/where-details that Rule 9(b) requires regarding any alleged purchase of any power unit. ECF 82 at 4-5. Just like the FAC, their Opposition fails to distinguish between the Defendants or offer any specifics. Unable to cite to any alleged details, they continue to misquote brochures and are content to leave those brochures untethered to any actual purchase by any one of the Plaintiffs. ECF 93 at 10-11. Plaintiffs do not dispute that some brochures are patently not even related to Plaintiffs' claims. *Cf.* ECF 82 at 4-5 with ECF 93 at 10-12. Plaintiffs also do not dispute that their assertions of what the brochures supposedly said cannot be taken as true when they are contradicted by the brochures. And Plaintiffs do not address that the brochures' conditional statements about how the system would operate if certain conditions are met, are not statements of fact at all. *See, e.g.*, FAC Ex. A. Plaintiffs do drop a footnote to contend that the brochures' statements are not "puffery" (*see* ECF 93 at 11, n. 3) but

---

[1] Plaintiffs' Opposition also addresses and fails to overcome the Motions to Dismiss filed by Defendants International (ECF 87, 88) and PACCAR (ECF 85,86) who are separately replying.

1

that suggests a false premise that there is only a binary choice of statements of puffery or statements of fact. *Cf. Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) ("A 'statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts" is ordinarily not actionable); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1364 (N.D. Ill. 1996) ("statements that are 'nothing more than a recommendation of one's product are not representations of fact"). Thus, Plaintiffs' assertion that mischaracterized/misquoted statements are not puffery does not make them statements as to past or present facts. Indeed, Plaintiffs fail to identify even a single fact statement that they contend was false when made. *See* ECF 93 at 11.

**Third**, Plaintiffs fail in their attempt to avoid their pleading burden altogether. Plaintiffs contend they do not have to plead details because "Defendants know who made the false statements—they did—and that they made the[m]… beginning in at least April 2015." ECF 93 at 11. This only confirms Plaintiffs' inability to allege the details Rule 9 demands. Plaintiffs imply they cannot say more because emails regarding test results are confidential. *Id.* at 12. But the FAC is not deficient because it fails to reveal confidential documents about testing; it is deficient because Plaintiffs fail to allege the specifics of their own supposed purchases of power units as induced by any alleged false statement. To do so simply requires references to documents and information that—if they exist—would be in Plaintiffs' possession. Plaintiffs say they allege nine "false statements" and that is sufficient. ECF 74 at ¶118. But, to paraphrase Plaintiffs, Plaintiffs should know who made these allegedly false statements, to whom, when, and what happened as a result. The FAC utterly fails to include any such detail. Accordingly, Count I should be dismissed.

**B.**     **Plaintiffs Fail to State a Claim for Breach of Contract (Count II)**

Bendix showed that Count II is entirely conclusory, with no facts that could be taken as true. ECF 82 at 5-6. Plaintiffs stand on their pleading, asserting that, because they parroted claim elements, Count II is plausible. ECF 93 at 12-14. It is not. While Plaintiffs fail to show that they plausibly pled ***all*** breach of contract elements, Plaintiffs' failure on the ***first element***—the existence of a contract—is sufficient in and of itself to dismiss the claim against Bendix.

Bendix showed Plaintiffs have not alleged and cannot allege a contract with Bendix

2

because none exists. ECF 82 at 5-6. Plaintiffs' attempt to dodge Bendix's argument, but the attempt fails. Plaintiffs cite FAC ¶25 and ¶¶125-129 as alleging the actionable contracts. Plaintiffs contend that they have sufficiently "allege[d] the existence of numerous purchases and sales contracts" and that they "are not required to attach the referenced contracts" to their FAC. ECF 93 at 14. But, FAC ¶25 and ¶127 allege the purchase, pursuant to contracts, of thousands of power units. It does not matter how many power-unit sales contracts there may be; none of those contracts would be with Bendix. As Plaintiffs alleged, Bendix is a manufacturer of the Wingman® systems; it is not a seller of power units such as those that Plaintiffs allegedly purchased. ECF 82 at 6; FAC p. 2, Intro., ¶¶ 19, 21. Accordingly, Plaintiffs fail to plead a contract with Bendix and the remaining claim elements such that Count II should be dismissed.

C. **Plaintiffs Fail to State Any Breach of Warranty Claim**

   1. **Lack of Pre-Suit Notice Bars Each Warranty Claim (Counts III, IV, V)**

Plaintiffs fail to overcome Bendix's argument that the warranty claims must be dismissed for lack of the required pre-suit notice. *See* ECF 82 at 6-7; ECF 93 at 16-19.

**First**, Bendix established a pre-suit notice requirement for all of Plaintiffs' warranty claims and that Plaintiffs failed to allege their compliance. ECF 82 at 6-7. Plaintiffs characterize this established law as a "drum[med] up … technicality" and suggest that had they complied they would have only sent a "form letter". ECF 93 at 16. Legal requirements are not a "drum[med] up … technicality"; they are a condition precedent to suit. "No notice, no claim." *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 970 (N.D. Ill. 2025). And Plaintiffs' suggestion that a "form letter" would suffice, misapprehends the requirement. There must be notice "of the trouble with the *particular product* purchased by a *particular buyer*.'" *Id.* (emphasis added by court). This is not just notice of problems; it is notice of a breach of warranty. *Id.* Plaintiffs concede they gave no such notice of a breach of warranty here before filing this action. ECF 93 at 16.

**Second**, Plaintiffs fail to show an "actual knowledge" exception applies. ECF 93 at 16. Plaintiffs contend Defendants "always had 'actual knowledge' that these particular Wingman[®] systems are defective." ECF 93 at 16. Plaintiffs use the words "these particular Wingman[®] systems" but they do not, in fact, identify notice as to any particular product purchased by any

3

particular buyer as is required. *See Gurrola*, 774 F. Supp. 3d at 971. Instead, Plaintiffs' contention is squarely within the cases Bendix cited which show that even actual knowledge of a problem in a product line is not sufficient to excuse a failure to give the required pre-suit notice about a particular product. ECF 82 at 7. Plaintiffs address just two of those cases and fail to distinguish them. *See* ECF 93 at 16-17. If ten years of testing and complaints were insufficient for actual notice in *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1055 (N.D. Ill. 2022) (Durkin, J.) and pre-suit settlement discussions and specific repair work was insufficient in *Gurrola*, 774 F. Supp. 3d at 968, then the alleged testing and knowledge here are likewise insufficient.

**Third**, Plaintiffs cite *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 940 (1998), suggesting it is an example of "actual notice" being a fact issue requiring the court to deny the motion to dismiss. ECF 93 at 17. To the contrary, *Maldonado* involved a personal injury claim, so "the plaintiffs could provide notice by their complaint." *Maldonado,* 296 Ill. App. 3d at 941. The fact issue in *Maldonado* was whether the plaintiff slept on her rights to sue. *Id.* at 941. Here, as in, for example, *Rodriguez, Gurrola,* and *O'Connor*, Plaintiffs' failure to plead the requisite notice is determinable on the pleadings. *Rodriguez*, 596 F. Supp. 3d 1050; *Gurrola*, 774 F. Supp. 3d 959; *O'Connor v. Ford Motor Co.,* 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020) (with no allegation or assertion that plaintiff ever contacted defendant about his vehicle pre-suit, "[p]laintiff has not identified any questions of fact that need to be decided").

**Fourth**, if Plaintiffs are contending a personal injury exception applies here such that notice may be given by the complaint, they are wrong. *See* ECF 93 at 17, n. 7 (citing the exception). Plaintiffs do not contend that they have alleged personal injury here. *Cf.* ECF 74, ¶88 (alleging economic damages). However, Plaintiffs do state that Navistar and Bendix are currently litigating a personal injury case, *Lewis v. Hirschbach Motor Lines*, S.D.Ill. Case 3:20-cv-01355-JPG. *See* ECF 93 at 17. If Plaintiffs are suggesting the personal injury exception to pre-suit notice applies here by virtue of *Lewis*, it does not. *Lewis* is obviously a separate action. Moreover, it does not involve injured consumers suing Bendix for breach of warranty. It involves two individuals claiming personal injury and suing a truck driver and his employer, Hirschbach. S.D.Ill. Case 3:20-cv-01355-JPG ECF No. 292, ¶¶ 8-15. In turn, Hirschbach filed a third party complaint against

4

Bendix and Navistar in contribution, alleging negligence and strict tort liability, not breach of any warranty. *Id.* at ¶19; *Cf. Maldonado*, 296 Ill. App. 3d at 941 (consumer injured by door sued door installer for breach of warranty and her complaint satisfied the notice requirement).

**Fifth**, Plaintiffs seek to evade the notice requirement by stating that the "Wingman[®] systems were part of a national recall". ECF 93 at 16. That is misleading. The Wingman® systems were not recalled. As the documents cited and hyperlinked in the FAC state, National Highway Traffic Safety Administration (NHTSA) Campaign 24E-086 was for certain Bendix Electronic Control Units, a component of an antilock braking system. ECF 74, FAC at ¶¶ 86.c., n. 4, 5, and 6. The recalled product interacts with other systems, but the recalled product is not the Wingman® products at issue in this action. *See id.* Moreover, even a recall of the Wingman® products would not satisfy the notice requirement here. The notice requirement is specific to a plaintiff's particular transaction and vehicle and "the Illinois Supreme Court has expressly rejected [a] theory of notice" that an actual knowledge exception could be premised on generalized knowledge about safety concerns. *See Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at *9 (N.D. Ill. Sept. 1, 2017) (dismissing with prejudice a breach of warranty claim; Ford had recalled another vehicle containing the same engine; "[plaintiff] has not has not adequately alleged pre-suit notice" and no exception applied); *O'Connor*, 477 F. Supp. 3d at 715 (dismissing claim; no exception based on consumer complaints to NHTSA and defendant's resulting bulletins addressing problems).

### 2. Plaintiffs Fail to Plead Breach of Express Warranty (Count III)

Plaintiffs fail to show that they have plausibly pled breach of express warranty.

**First**, Bendix showed that Plaintiffs' conclusory allegations do not competently allege that Plaintiffs were in privity with Bendix as required for an express warranty claim. ECF 82 at 8. In response, Plaintiffs simply maintain their group pleading stance and repeat that "Defendants made affirmations of fact or promises." *Id.* at 14. Plaintiffs fail to show allegations specific to any of the eight Plaintiffs on which this Court could find that each Plaintiff has plausibly alleged privity between Plaintiffs and Bendix, who they admit was not their immediate seller.

**Second**, Bendix showed that Plaintiffs fail to plead cognizable express warranty terms.

5

ECF 82 at 8. Bendix showed that Plaintiffs' purported summary of the brochures' "affirmations of fact or promises" (FAC ¶ 136) cannot be taken as true because they are contradicted by the actual statements in the brochures as Plaintiffs' own pleading shows. *Id.* Plaintiffs ignore that argument and simply double down on their position that the brochures, broken down into "nine affirmations or promises" in the FAC, are the express warranty terms. ECF 93 at 15-16. Accordingly, just as the courts did in the various cases Bendix cited, this Court may review the brochures for itself and see that they do not make "nine affirmations or promises". *See* ECF 82 at 8-9, *citing, inter alia, Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 791 (N.D. Ill. 2019)(Durkin, J.) (dismissing claim; no express warranty where brochure claimed "'resistance to deformation'"; "an assertion that the device is 'resistant' to a particular issue does not mean that the issue will not occur").

**Third**, Plaintiffs do not address Bendix's argument that Plaintiffs fail to competently allege breach of any alleged warranty for any specific power unit or any specific alleged failure of any power unit. ECF 82 at 9. They only say that they "have pleaded breach of express warranty by 'stat[ing] the terms of the warranty' [and] also attach[ing] brochures". ECF 93 at 16. However, breach is its own separate element distinct from proving the existence of a warranty.

**Fourth**, Plaintiffs fail to address Bendix's argument that Plaintiffs failed to allege an essential element of demand for performance under the terms of the alleged warranty and failure by the defendant to perform. ECF 82 at 10.

**Finally**, Plaintiffs fail to address Bendix's argument that Plaintiffs failed to allege their compliance with the terms of any alleged warranty. ECF 82 at 10.

Accordingly, Count III should be dismissed for failure to state a claim.

### 3. Plaintiffs Fail to Plead Breach of Implied Warranties (Counts IV and V)
#### a. Counts IV and V Fail for Lack of Vertical Privity

Bendix showed that for Plaintiffs' claims of economic loss, implied warranties give a buyer of goods a potential cause of action only against his immediate seller and, as Plaintiffs' FAC confirms, Bendix was not an immediate seller to Plaintiffs. ECF 82 at 11. Plaintiffs do not contest the argument. They instead assert that they alleged privity and that "Navistar, Bendix, and Paccar [are] all 'merchants … with respect to the defective power units" (*i.e.,* the tractor trailer trucks).

6

ECF 93 at 19-20. This ignores Plaintiffs' own binding judicial admissions that Bendix did not sell them power units; indeed, Bendix was not their immediate seller of any product. ECF 74, FAC ¶21. Accordingly, Plaintiffs' repeating their incompetent allegations does not establish the requisite vertical privity between Plaintiffs and Bendix for their implied warranty claims.

Implicitly conceding the lack of privity with Bendix, Plaintiffs seek an exception to privity. ECF 93 at 19. However, as Bendix showed and Plaintiffs ignore, the Illinois Supreme Court has consistently required privity such that there is doubt as to whether any exceptions exist. ECF 82 at 12; *see also Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill.App.3d 828, 807 N.E.2d 1165, 1168 (2004) ("Although this vertical privity requirement has been challenged on a number of occasions, our supreme court has consistently declined to abolish the doctrine in cases where purely economic damages are sought."); *Gurrola*, 774 F. Supp. 3d at 975 ("Time and again, the Illinois Supreme Court has "hammered home the necessity of privity" for implied-warranty claims.") Plaintiffs do not respond to this argument. They ignore it and assert "Illinois recognizes various privity exceptions". *Id.* at 19. In support, they cite *Elward v. Electrolux Home Prods.*, 214 F. Supp. 3d 701, 704-705 (2016), a federal court decision that multiple courts have declined to follow as not correctly stating Illinois law. *See Gurrola*, 774 F. Supp. 3d at 976 (collecting cases).

Even assuming *arguendo* that privity exceptions exist, Plaintiffs fail to show that they plead them. First, Plaintiffs argue that a privity exception exists where there is a direct relationship between the manufacturer and seller. ECF 93 at 19-20. Bendix anticipated Plaintiffs might argue for such an exception and preemptively addressed it. ECF 82 at 12-13. As Bendix showed, Plaintiffs do not allege the direct dealings with Bendix that would be required to apply such an exception if it exists. *Id.* Although the Opposition is unclear, it does not actually appear to be arguing for application of such an exception. Plaintiffs state that they "alleged that they 'purchased commercial motor vehicle units equipped with [the Wingman® systems] manufactured and supplied by Bendix to Navistar and Paccar". ECF 93 at 20. If Plaintiffs meant that statement to have alleged a direct relationship between Plaintiffs and Bendix, it patently does not.

Second, Plaintiffs argue that a privity exception exists "where the manufacturer knew the identity purpose, and requirements of the dealer's customer and manufactured or delivered the

7

goods specifically to meet those requirements." ECF 93 at 20. Assuming *arguendo* such an exception exists, Plaintiffs misplace their reliance on *Bayer HealthCare LLC v. Aeropres Corp.*, 727 F. Supp. 3d 738, 753 (N.D. Ill. 2024) as supporting application of this exception here. *See id. Bayer* was not a suit by a product purchaser or consumer against a component part manufacturer. It involved one manufacturer purchasing from another manufacturer—*i.e.*, from a component part manufacturer. In *Bayer*, the plaintiff pharmaceutical manufacturer (Bayer) manufactured antifungal spray and the defendant manufactured a component part (propellant). Bayer had privity with the defendant because it directly purchased the component part from the defendant. *Id.* at 746. Bayer even had a written quality assurance agreement with the defendant. *Id.* at 744-745. At some point, Bayer outsourced manufacturing of its antifungal spray to a third party and assigned the quality assurance agreement to the third party, with the defendant's consent. *Id.* at 745. The court concluded that Bayer still had privity with the defendant because Bayer was the intended third-party beneficiary of the assigned contract. *Id.* Here, in comparison, the FAC does not allege that Bendix manufactured Wingman® systems for Plaintiffs directly or even for any assignee of Plaintiffs, with Plaintiffs as an intended third-party beneficiary. And *Bayer* does not provide an example of a product purchaser, like Plaintiffs, being able bring a breach of warranty claim against a component part manufacturer with whom they are not in privity.

In contrast to *Bayer, Gurrola*, 774 F. Supp. 3d 959 is an example of vehicle purchaser being unable to state a claim against a component part manufacturer (Ford) due to lack of privity. In *Gurrola*, Ford manufactured vehicle frames known as Cutaways and supplied them to a final-stage manufacturer who manufactured vehicles. *Id.* The plaintiffs did not buy their vehicle from Ford, so there was no privity. *Id.* at 975. The plaintiffs instead argued they were intended third-party beneficiaries because Ford knew consumers would use the vehicle as a motorhome and Ford specifically marketed and sold the Cutaway for that purpose. *Id.* at 977-978. But the plaintiffs had bought an "off-the-lot RV" not a product manufactured to their specifications. *Id.* If the third-party-beneficiary exception exists, it "does not contemplate such a mundane relationship between manufacturer and end consumer." *Id.* Here, Plaintiffs likewise do not allege that Bendix manufactured a Wingman® system to their custom specifications. Instead, their allegations of

8

18987132.1

"hundreds of thousands" of purchases by "thousands" of purchasers confirm the same type of off-the-lot purchases as in *Gurrola*. ECF 74, FAC at 2.

In sum, Plaintiffs' Opposition does nothing to change the admitted fact that Bendix was not an immediate seller to Plaintiffs and thus Plaintiffs lack the privity required for their breach of implied warranty claims. Thus, Count IV and V should be dismissed.

b. **Plaintiffs Fail to Plead the "Ordinary Purpose" Elements (Count IV)**

Bendix showed that Count IV (breach of implied warranty of merchantability) should be dismissed for failure to allege the ordinary purpose of the power units and facts showing that they are not fit for their ordinary purpose. ECF 82 at 13-14. Plaintiffs do not dispute that the ordinary purpose of the power units is transportation. And Plaintiffs do not claim to have alleged facts that the power units were fit for the ordinary purpose of transportation. Nor could they. The words "ordinary purpose" appear only in FAC ¶147 and only as part of a conclusory allegation that "the defective power units … are not fit for their ordinary purpose." *See* ECF 74, FAC ¶147.

Trying to salvage their claim, Plaintiffs seek to shift focus from the allegedly defective power units that they allege they purchased, to the Wingman® systems themselves. ECF 93 at 19. Plaintiffs contend they alleged "[t]he systems' ordinary purpose is 'for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes' and 'are meant to prevent or mitigate rear-end crashes between power units equipped with [FCA] and other vehicles on the road that are stopped or slowing.'" ECF 93 at 19 citing FAC 1-2; *accord* ECF 93 at 21 and 22 (same). That allegation does not satisfy the pleading requirements for multiple reasons.

First, Plaintiffs ignore cases like *In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd on other grounds sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) where plaintiffs similarly alleged breach of an implied warranty of merchantability for vehicles with an allegedly defective crash-avoidance system and resulting economic damages. *Briehl* showed that the proper question was whether the plaintiffs had alleged the ordinary purpose of the vehicles and that the vehicles were not fit for their ordinary purpose. Here, Plaintiffs' FAC recognizes that the proper question focuses on the power units, but the FAC only ***concludes*** the power units are not fit for their ordinary purpose. ECF 74, FAC ¶147.

9

18987132.1

As in *Briehl* Plaintiffs do not plead sufficient facts to satisfy the claim elements.

Second, even if it was proper to focus on the Wingman® systems themselves, Plaintiffs fail to show they allege that the Wingman® systems are not fit for what Plaintiffs say is the ordinary purpose of "prevent[ing] or mitigat[ing] rear-end crashes", with "mitigate" meaning "to cause to become less harsh" or "to make less severe or painful".[2] ECF 93 at 19. Indeed, Plaintiffs' complaint is not that the Wingman® systems did not fulfill such an ordinary purpose. Instead, Plaintiffs complaint that the systems did not ***prevent all*** rear-end crashes "as a ***failsafe*** when the operator of a power unit fails to appreciate an impending collision . . . ***for any reason***… including, but not limited to, distraction, impaired visibility, weather conditions, or environmental conditions." *See* FAC ¶20 (emphasis added). By definition, crash mitigation is not crash elimination. And being a product that "prevents or mitigates rear-end crashes" is a far cry from being a failsafe product that ends all accidents no matter the circumstances. Indeed, this Court could readily take judicial notice of the generally known fact that even with the advent of vehicle safety features accidents happen.

### c. Plaintiffs Fail to Plead a Plausible "Particular Purpose" (Counts V)

Bendix showed that Plaintiffs failed to allege a "particular purpose" distinct from any ordinary purpose. ECF 82 at 14-15. Plaintiffs simply double down on their deficient pleading. ECF 93 at 21-22. Plaintiffs ignore the point that regardless of whether the product is the power units or the Wingman systems themselves, a ***particular purpose*** of complying with federal regulations would necessarily mean the ***ordinary purpose*** is not to comply with federal regulations and that that is absurd. Plaintiffs fail to show that they alleged a plausible particular purpose that is different from any ordinary purpose so Count V should be dismissed.

### III. CONCLUSION

For the foregoing reasons, each Count fails to state a claim upon which relief may be granted and this Court should grant Bendix's motion and dismiss all claims with prejudice.

---

[2] https://www.merriam-webster.com/dictionary/mitigate?src=search-dict-box.

18987132.1

| | |
|---|---|
| Dated: July 21, 2025 | Respectfully Submitted,<br><br>  /s/ *Erica L. Calderas*  <br>J. Patrick White (ARDC# 6292078)<br>Hahn Loeser & Parks LLP<br>200 West Madison Street, Suite 2700<br>Chicago, IL  60606<br>Phone: 312-637-3000<br>Fax: 312-637-3001<br>pwhite@hahnlaw.com<br><br>Erica L. Calderas (Admitted *Pro Hac Vice*)<br>Eric B. Levasseur (Admitted *Pro Hac Vice*)<br>Hahn Loeser & Parks LLP<br>200 Public Square, Suite 2800<br>Cleveland, OH  44114<br>Phone: 216-621-0150<br>Fax: 216-241-2824<br>elcalderas@hahnlaw.com<br>eblevasseur@hahnlaw.com<br><br>*Attorneys for Defendant*<br>*Bendix Commercial Vehicle Systems LLC* |

**CERTIFICATE OF SERVICE**

I, J. Patrick White, an attorney, hereby certify that on this 21st day of July, 2025, I caused a true and accurate copy of the foregoing *Reply in Support of Defendant Bendix Commercial Vehicle Systems LLC's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint For Failure to State a Claim* to be filed using the courts CM/ECF electronic filing system, which will generate service on all parties of record.

    Respectfully submitted,

    */s/ Erica L. Calderas*
    Erica L. Calderas

    *One of the Attorneys for Defendant*
    *Bendix Commercial Vehicle Systems LLC*

18987132.1