UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HIRSCHBACH MOTOR LINES, INC.;
JOHN CHRISTNER TRUCKER, LLC;
THREE DIAMOND LEASING, LLC; GR
EQUIPMENT LEASING, INC.;
SCHUSTER COMPANY; SCHUSTER
ENTERPRISES, LTD.; AEG LEASING
LLC; SCHUSTER COMPANY, LLC,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

        Plaintiff,

    v.

NAVISTAR, INC.; PACCAR INC.; AND
BENDIX COMMERCIAL VEHICLE
SYSTEMS LLC,

        Defendant.

No. 24 CV 11979

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Defendants Navistar, Inc., Paccar Inc., and Bendix Commercial Vehicle Systems LLC conspired to defraud Plaintiffs by selling them trucks with defective safety systems. Defendant Bendix Commercial Vehicle Systems LLC (hereinafter "Bendix") moves to dismiss for lack of personal jurisdiction. For the following reasons, that motion is denied.

**Background**

Plaintiffs are national motor carriers based primarily in Iowa or Oklahoma who are in the business of freight hauling throughout the country using 18-wheeler trucks. R. 74 at 1–4. Defendant Bendix, incorporated in Delaware and based in Ohio,

manufactures and sells two Frontal Crash Avoidance and Mitigation Systems ("FCA systems")—safety systems meant to prevent or mitigate rear-end crashes—to truck manufacturers such as co-Defendants Navistar and Paccar. *Id.* at 2, 4. Navistar and Paccar install the FCA systems in trucks which are then sold to customers. *Id.* at 2. Plaintiffs allege that Defendants had actual knowledge that the FCA systems were defective and conspired to conceal this information from Plaintiffs. *Id.* at 2–3.

Specifically, Plaintiffs claim that Navistar, which is based in Illinois, conducted product testing in April 2015 that revealed significant deficiencies in the functionality of the Bendix FCA systems. *Id.* at 4, 11. Navistar thereafter corresponded with Bendix's lead engineer for the FCA systems regarding detection and breaking failures. *Id.* at 12. Bendix proceeded with its product launch schedule without making any responsive changes. *Id.* On or about July 2015, Navistar again contacted Bendix regarding performance complaints for the FCA systems. *Id.* At that point, Bendix ran a competitor comparison with other FCA systems on the market. *Id.* Despite knowing the defective nature of the technology and the alternative technology available, Bendix allegedly entered into an agreement with Navistar, formed at Navistar's corporate headquarters in Lisle, Illinois, to fraudulently conceal the defects and to advertise and sell trucks with faulty FCA systems. *Id.* at 4, 12–17; R. 91 at 2.

According to Plaintiffs, during the period between July 2015 through January 2024, Defendants engaged in a concerted marketing effort to misrepresent the quality, effectiveness, and capability of the defective Bendix FCA systems. *See* R. 74

2

at 8, 13–17. Relying on the representations from Defendants, Plaintiffs purchased thousands of trucks from Navistar and Paccar featuring Bendix FCA systems. *Id.* at 7. These trucks have since been involved in numerous crashes in which defective Bendix FCA systems failed to perform as marketed, promoted, and designed, leading to millions of dollars in economic damage. *Id.* at 20. On October 11, 2024, Bendix notified the National Highway Traffic Safety Administration of the defective nature of the FCA systems, among other technology, and issued a recall. *See id.* at 18. On November 20, 2024, Plaintiffs filed suit. R. 1. In their amended complaint Plaintiffs assert five claims: (I) Fraud in the Inducement; (II) Breach of Contract; (III) Breach of Express Warranty; (IV) Breach of Implied Warranty of Merchantability; and (V) Breach of Implied Warranty of Fitness for a Particular Purpose. R. 74.

## Legal Standard

"A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a determination is made without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* The court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to determine whether it has set forth a prima facie case of personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of

3

jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783.

## Discussion

Because this Court is sitting in diversity, it has personal jurisdiction over the parties to the extent that an Illinois state court could exercise such jurisdiction. *See Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). Consistent with due process, the defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 395 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two forms of personal jurisdiction—general and specific. Plaintiffs do not allege that Bendix is subject to general jurisdiction; the issue here is whether Bendix is subject to specific jurisdiction. The three requirements that must be satisfied for a court to obtain specific jurisdiction over a defendant are: (1) the defendant's minimum contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state; (2) the suit must have arisen out of or relate to the defendant's contacts with the forum; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *B.D. v. Samsung SDI Co.*, 143 F.4th 757, 765–66, 774 (7th Cir. 2025).

When assessing whether a defendant has purposefully availed itself of the privilege of conducting business in the forum state, the question is whether the defendant has "purposefully directed" its activities at the forum such that it will not be haled into a jurisdiction solely as a result of contacts that are "random, fortuitous, or attenuated." *Curry*, 949 F.3d at 398 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Such "purposeful direction" may be shown by evidence that the defendant is knowingly doing business with Illinois customers. *See id. at 398–99*; *see also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) ("[Defendant]'s argument that it did not purposefully avail itself of doing business in Illinois rings particularly hollow" when it "stood ready and willing to do business with Illinois residents" and "in fact, knowingly did do business with Illinois residents.").

Here, Bendix does not deny that it knowingly does business with Illinois customers, including Illinois-based trucking company Navistar. It argues, however, that such business is not sufficiently related to Plaintiffs' claims. *See* R. 80.

Bendix relies on *Bristol-Myers Squibb Company v. Superior Court of California*, 582 U.S. 255 (2017) to argue that Plaintiffs' claims do not "arise out of or relate to" the Defendant's contacts with the forum state, as is required to demonstrate personal jurisdiction. *Samsung*, 143 F.4th at 770. In *Bristol-Myers Squibb*, over 600 plaintiffs filed product liability claims in California against a pharmaceutical company regarding a prescription drug. *Id.* at 258–59. The Supreme Court dismissed the out-of-state plaintiffs' claims after determining they had no connection to California other than being similar to the claims of the in-state plaintiffs. *Id.* at 264–

65. While many in-state plaintiffs had purchased and ingested the drugs in California, the out-of-state plaintiffs had not. *Id.* The Supreme Court explained "[w]hat is needed"—and what was missing for the out-of-state plaintiffs in *Bristol-Myers Squibb*—"is a connection between the forum and the specific claims at issue." *Id.* In the instant case, Bendix argues a connection is lacking because it did not make any direct sales to Plaintiffs in Illinois, rather it sold products to Navistar, who is headquartered in Illinois, and Plaintiffs then purchased products from Navistar. R. 97 at 6. But here the connection between the forum and the claims is not that Bendix sold products directly to Plaintiffs in Illinois; the connection is that Bendix allegedly made an agreement with Navistar in Illinois to defraud Plaintiffs. Notably, in *Bristol-Myers Squibb*, the Supreme Court mentioned that allegations that the defendant had engaged in relevant acts together with a California company in California could provide a basis for specific personal jurisdiction over non-residents' claims in California. *See* 582 U.S. at 268. Those allegations are similar to those that Plaintiffs raise here—Defendant conspired with Navistar, an Illinois company, in Illinois to promote and sell trucks to Plaintiffs with defective FCA systems.

Despite Plaintiffs' allegations that Bendix engaged in a conspiracy in Illinois, Bendix argues that personal jurisdiction is not proper in Illinois because Plaintiffs do not reside in Illinois and were not injured in Illinois. R. 80 at 4–5. But as Bendix itself notes in its brief, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571

6

U.S. 277, 284 (2014). The "proper question" is not where the plaintiff resides or where the plaintiff experienced a particular injury but "whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* Here, Bendix's conduct connects it to the forum in a meaningful way because Bendix knowingly did business in Illinois that included entering into an agreement formed in Illinois with an Illinois company to allegedly defraud Plaintiffs. *See Sheehan v. Breccia Unlimited Co.*, 48 F.4th 513, 523 (7th Cir. 2022) ("A 'meaningful way' is one in which defendants 'purposefully directed' their actions at the forum.").

Bendix further argues that it is improper for it to be subject to personal jurisdiction in Illinois based on the acts of its alleged co-conspirator Navistar. *See* R. 80 at 7–8. While it is true that the constitutionality of this "conspiracy theory" of personal jurisdiction remains somewhat unsettled under Illinois law, *see Dixon v. Gatzke*, 790 F. Supp. 3d 679, 695 (N.D. Ill. 2025) (discussing the state of the law in Illinois regarding whether a co-conspirator's contacts with the forum can confer jurisdiction), that is not at issue here—Plaintiffs do not argue that Navistar's actions can be imputed onto Bendix. Rather, Plaintiffs argue that forming the conspiracy *in and of itself* was an action taken by Bendix in Illinois sufficient to confer personal jurisdiction. At bottom, Bendix established minimum contacts with Illinois through its business dealings with Navistar. Furthermore, Plaintiffs claims arise out of those

7

business dealings. That is all that is required to establish personal jurisdiction over Bendix.

The last prong in the specific jurisdiction analysis is whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Curry*, 949 F.3d at 402. Courts typically consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiffs' interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the dispute, and the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Bendix argues that this prong is not met because the lack of relatedness precludes it; however, once sufficient minimum and related contacts have been established as they have here, "[t]hese factors rarely will justify a determination against personal jurisdiction." *See Hemi*, 622 F.3d at 760; *see also Curry*, 949 F.3d at 402 ("[A]s long as the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (internal quotations omitted)). Bendix further argues that as a foreign Defendant litigation would be burdensome, and that the foreign Plaintiffs' interest in obtaining convenient and effective relief is unrelated to Illinois. *See* R. 97 at 9–10. But jurisdiction over foreign defendants is regularly deemed fair when they have conducted business in Illinois. *See Hemi*, 622 F.3d at 760 (finding personal jurisdiction over a foreign defendant while lamenting defendant "wants the benefit of

8

a nationwide business model with none of the exposure"). And Plaintiffs fairly assert that their interest in litigating in Illinois centers on judicial efficiency by resolving the underlying dispute at once. *See* R. 91 at 8. While Bendix's argument that Illinois has little interest in the suit has some merit given that this is a putative class action involving Plaintiffs and Defendants with connections to many states, Illinois has interest in litigating cases pertaining to business connected to this state. Considering Plaintiffs' allegations liberally and with all inferences drawn in their favor, Plaintiffs have established a prima facie case of personal jurisdiction.

## Conclusion

For the foregoing reasons, the Court denies Defendant's Rule 12(b)(2) motion to dismiss.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: March 19, 2026

9