**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| HIRSCHBACH MOTOR LINES, INC.; JOHN CHRISTNER TRUCKER, LLC; THREE DIAMOND LEASING, LLC; GR EQUIPMENT LEASING, INC.; SCHUSTER COMPANY; SCHUSTER ENTERPRISES, LTD.; AEG LEASING LLC; SCHUSTER COMPANY, LLC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | No. 24 CV 11979 <br><br> Judge Thomas M. Durkin |
| Plaintiffs, | |
| v. | |
| NAVISTAR, INC.; PACCAR INC.; AND BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Defendants Navistar, Inc.,[1] Paccar Inc., and Bendix Commercial Vehicle Systems LLC conspired to defraud Plaintiffs by selling them trucks with defective safety systems. Defendants separately move to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6). For the following reasons, Defendants' motions are granted.

---

[1] Navistar, Inc. underwent a corporate reorganization and name change to International Motors, LLC ("International") effective October 1, 2024. R. 88 n.1. Because Navistar is the name used in Plaintiffs' complaint and consequently the Court's docket, the Court will use Navistar here.

1

## Background

Plaintiffs are national motor carriers in the business of freight hauling throughout the country using 18-wheeler trucks. R. 74 at 1–2. Bendix manufactures and sells two Frontal Crash Avoidance and Mitigation Systems called the Wingman Fusion System and the Wingman Advanced System (together, the "FCA Systems")—safety systems meant to prevent or mitigate rear-end crashes—to truck manufacturers such as Navistar and Paccar. *Id.* at 2. Navistar and Paccar install the FCA Systems in trucks which are then sold to customers. *Id.*

Plaintiffs allege that Navistar conducted product testing in April 2015 that revealed significant deficiencies in the functionality of the FCA Systems. *Id.* ¶¶ 51–52. Navistar thereafter corresponded with Bendix's lead engineer for the FCA Systems regarding detection and braking failures. *Id.* ¶ 53. But Bendix allegedly proceeded with its product launch schedule without making any responsive changes. *See id* ¶ 54. On or about July 2015, Navistar again contacted Bendix regarding performance complaints for the FCA Systems. *Id.* ¶ 55. At that point, Bendix ran a competitor comparison with other FCA Systems on the market. *Id.* ¶ 57. Despite knowing the defective nature of the FCA Systems and the alternative FCA technology available, Defendants allegedly conspired to fraudulently conceal the defects and to advertise and sell trucks with faulty FCA Systems. *See id.* ¶¶ 58–62.

According to Plaintiffs, between July 2015 through January 2024, Defendants engaged in a concerted marketing effort to misrepresent the quality, effectiveness, and capability of the defective FCA Systems. *See id.* ¶¶ 34–37. Each Defendant provided identical written representations in marketing materials including

2

brochures, documents, and advertisements given directly to Plaintiffs. *Id.* ¶¶ 75. Relying on the representations from Defendants, Plaintiffs purchased thousands of trucks from Navistar and Paccar featuring the FCA Systems. *Id.* ¶¶ 25, 27. These trucks have since been involved in numerous crashes in which the FCA Systems allegedly failed to perform as marketed, promoted, and designed, leading to millions of dollars in economic damage. *Id.* ¶ 88. On October 11, 2024, Bendix notified the National Highway Traffic Safety Administration ("NHTSA") of the defective nature of the FCA Systems, among other technology, and issued a recall. *See id.* ¶ 85. On November 20, 2024, Plaintiffs filed this lawsuit. R. 1. In their amended complaint Plaintiffs assert five claims against all Defendants and on behalf of a putative class of truck purchasers: (I) Fraud in the Inducement; (II) Breach of Contract; (III) Breach of Express Warranty; (IV) Breach of Implied Warranty of Merchantability; and (V) Breach of Implied Warranty of Fitness for a Particular Purpose. R. 74.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The

complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

In addition, a party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). But the Seventh Circuit has "warned that courts and litigants often erroneously take an overly rigid view of the formulation" and that "[t]he precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). At bottom, to satisfy the Rule 9(b) particularity standard, "[i]t is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Rolls-Royce*, 570 F.3d at 854–55 (citations omitted).

4

## Discussion

As a preliminary matter, the Court must first address a choice-of-law issue raised by two Defendants. Bendix and Paccar both assert that Plaintiffs have not provided sufficient factual allegations to conduct a choice-of-law analysis and therefore they must apply the law of this forum. *See* R. 82 n.2; R. 86 p. 5–6. Neither Navistar nor Plaintiffs dispute that Illinois law applies. Because all parties rely exclusively on Illinois law, the Court will apply Illinois law for the purpose of this motion.

I.     Fraud in the Inducement

In their separately filed motions to dismiss, Defendants make distinct as well as overlapping arguments that Plaintiffs have not sufficiently alleged fraud in the inducement (Count I). To state a claim for fraud in the inducement under Illinois law, Plaintiffs must sufficiently allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (citation omitted). Plaintiffs must also satisfy the heightened pleading standard of Rule 9(b). The Court first addresses Defendants' distinct arguments.

a.  Paccar

Paccar argues that Plaintiffs have not sufficiently alleged it engaged in fraudulent inducement because it had no knowledge that the FCA Systems were defective. Although Plaintiffs make the conclusory allegation that all three

Defendants conspired to fraudulently induce Plaintiffs to purchase trucks with the FCA Systems while knowing they were defective, there is no basis for the Court to infer that Paccar's involvement in this alleged fraudulent conspiracy was plausible rather than merely speculative. *See Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025) ("The factual allegations 'must be enough to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)). Plaintiffs detail product testing that revealed defects in the FCA Systems and the resulting communications between Navistar and Bendix in 2015, but there are no factual allegations that Paccar knew of this testing nor that it conducted any of its own. *See* R. 86 at 3, 7. Indeed, there is nothing in the complaint to support that Paccar had any knowledge of the alleged defects prior to the NHTSA recall of October 2024. *See id.* at 3. Even though Plaintiffs allege that Paccar engaged in a coordinated marketing campaign with Navistar and Bendix, *see* R. 74 ¶ 75, this does not suggest that Paccar knew the FCA Systems were defective at the time. Therefore, Plaintiffs have not alleged sufficient facts for the Court to infer the second element of fraudulent inducement: Paccar made false statements about the effectiveness of the FCA Systems *with the knowledge or belief* that they were false. The Court grants Paccar's motion to dismiss Count I.

b. Bendix

Bendix's sole unique argument is that Plaintiffs complaint is factually inconsistent with the fraudulent inducement claim. According to Bendix, because Plaintiffs do not allege that Bendix sold trucks to them directly, Plaintiffs cannot

6

claim that Bendix induced them to purchase trucks. R. 82 at 4. This argument, however, is unconvincing. Plaintiffs do not need to allege they purchased trucks directly from Bendix; just because Bendix sells technology to trucking manufacturers and not directly to motor carriers does not mean it does not promote, advertise, or induce sales of trucks with Bendix technology, as Plaintiffs allege here. Plaintiffs allege Bendix directly provided Plaintiffs with marketing materials meant to induce Plaintiffs to purchase trucks from Navistar and Paccar equipped with the allegedly defective Bendix FCA Systems, R. 74 ¶ 75, which can still suffice as fraudulent inducement.

### c. Navistar

Navistar argues Plaintiffs have not alleged actionable fraud because the representations in Defendants' advertising are not false; they are conditional statements and puffery. *See* R. 88 at 6–7. Navistar points to a Navistar- and Bendix-branded brochure attached to the complaint that says "*[w]hen* Bendix Wingman Fusion can *definitively identify* the large, stationary object as a vehicle, the system will alert the driver with *up to* 3.5 seconds notice" to argue the conditional language means allegations that the systems did not *always* work does not mean the representations are false. R. 88 at 7. But Plaintiffs do not need to prove actual falsity of the alleged misrepresentations at this stage. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (explaining that under the Rule 9(b) pleading standard, the plaintiff is not required to "plead facts showing that the representation is indeed false"). Taking Plaintiffs' well-pleaded facts as true and

drawing all reasonable inferences in their favor, *see Hernandez*, 63 F.4th at 666, Plaintiffs have plausibly alleged that Navistar made false statements about the efficacy of the FCA Systems.

Navistar also deems the phrase "industry-leading advanced safety technology" in Plaintiffs' complaint puffery. However, this is not included in the statements that comprise Plaintiffs' fraudulent inducement argument. Plaintiffs instead point to representations such as the FCA Systems would provide 3.0–3.5 seconds of warning before a potential collision, detect stationary objects at highway speeds and at night, and provide autonomous, emergency braking. *See* R. 74 ¶ 118. These are not the sort of "vague" opinions "a reasonable consumer would not rely on" that amount to puffery. *See O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 962 (N.D. Ill. 2021); *see also Lake v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 908 (N.D. Ill. 2013) ("Generally, statements that ascribe specific virtues to a product that it does not possess are not considered puffing.").

Navistar further argues that Plaintiffs fail to allege Navistar knew these representations were false when made. Even under the heightened pleading standards for fraud, knowledge may be pleaded generally. Fed. R. Civ. P. 9(b). The complaint must simply "afford a basis for believing that plaintiffs could prove [knowledge]." *Tricontinental Ind., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (citations omitted). Plaintiffs have clearly afforded that basis here: Plaintiffs allege that Navistar's testing of the FCA systems gave it knowledge of defects in 2015, and it then discussed those defects with Bendix before agreeing to

engage in a marketing campaign that included fraudulent representations concealing those defects. These facts allow the Court to plausibly infer that Navistar knew the representations were false when made.

> d. All Defendants

Last, Defendants all argue that Plaintiffs' fraud-in-the-inducement allegation does not provide sufficient detail as to the "who" and "when" to proceed under the Rule 9(b) heightened pleading standard.

Defendants argue that Plaintiffs improperly lump all Defendants together and do not plead with particularity which Defendant made each misrepresentation and when they were made. *See* R. 82 at 4; R. 86 at 6–8; R. 88 at 4–6. In a case involving multiple defendants, the complaint must inform each defendant of the nature of its alleged participation in the fraud. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.") (citation omitted); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (Rule 9(b) requires dismissal when "the complaint lump[s] all the defendants together and [does] not specify who was involved in what activity"). And pleadings regarding misrepresentations that rely on broad time ranges, instead of specific dates, are also insufficient under Rule 9(b). *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 794 (7th Cir. 2004).

Plaintiffs argue that they do not need to allege specifics because Defendants are already aware of the representations they made and when they made them, R. 93

9

at 11–12, but that is not how pleading works. To successfully plead under 9(b), a plaintiff must allege "*specific* misrepresentations made by *specific* [d]efendants, as 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.' This is true regardless of whether [d]efendants made similar or even identical misrepresentations that were communicated to [p]laintiff." *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing a fraud claim based on allegations that three defendants allegedly made false representations in advertising a pharmaceutical drug) (quoting *Vicom*, 20 F.3d at 778). Here, Plaintiffs allege that Defendants all made the same representations. Indeed, Plaintiffs attached three brochures to their complaint that contain both Bendix and Navistar branding. *See* R. 74-3; 74-4; 74-7. But none of the brochures are purportedly from Paccar, illustrating why specificity is needed. Plaintiff must clarify which Defendants made which misrepresentations and when to sufficiently plead under 9(b).

Defendants also argue that Plaintiffs do not plead with particularity which Plaintiffs purchased trucks from which Defendants and when. Plaintiffs only allege that they purchased trucks from Navistar or Paccar since July 2015. *See* R. 74 ¶¶ 25, 100. Alleging purchases over a span of years is generally insufficient under Rule 9(b). *See Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001) (explaining that under 9(b), "[f]or the 'when,' it is not enough to merely allege a period of months or years"). Defendants all point to *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814 (N.D. Ill. 2021) as illustrative. In *Willard*, plaintiffs filed suit against Tropicana for allegedly falsely advertising juice products. 577 F. Supp. 3d at 820. The

10

court held that plaintiffs' claims did not satisfy Rule 9(b) because plaintiffs only detailed one specific date of sale and otherwise generally alleged that they made purchases within the last few years. *Id.* at 835. ("[D]ismissal is appropriate where plaintiffs generally allege they purchased [defendant's] products within the last four years but did not allege . . . when they purchased them.") (citation omitted). Here, Plaintiffs generally allege they made purchases over an even longer period—9 years. Thus, Plaintiffs have not met the 9(b) pleading standard. Plaintiffs contend that there are potentially tens of thousands of individual truck purchases at issue and that pleading each sale at this stage in an itemized fashion would be unwieldly. *See* R. 93 at 22. While the Court is not persuaded that Plaintiffs need to provide this level of granularity given the facts of the case, Plaintiffs do need to provide additional details such as which Plaintiffs purchased from which Defendants and at least some dates of sales for each Plaintiff. *See Mason v. Medline Industries*, 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010) ("A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples."). This is especially true when the dates of purchase are in the possession of the Plaintiffs.

Ultimately, without any indication of which Defendants made which representations to which Plaintiffs and when, and which Plaintiffs purchased trucks from which Defendants and when, the Court cannot plausibly infer that purchases were made in reliance on a particular Defendant's alleged misrepresentations. For example, if a Plaintiff only made purchases from Paccar, the Court cannot uphold its

fraud claim against Navistar. Or if a Plaintiff only made purchases in 2017, the Court cannot infer it relied on alleged misrepresentations made in 2022. More is needed here to answer the "who" and "when" to move forward under Rule 9(b). The Court grants Bendix's and Navistar's motions to dismiss Count I. [2]

## II. Breach of Contract

Defendants argue in concert that Plaintiffs' breach of contract claim (Count II) is conclusory and lacks the requisite specificity to provide them with "fair notice" of the basis for the claim. *Twombly*, 550 U.S. at 555. To assert a breach of contract under Illinois law, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citations omitted).

Here, Plaintiffs provide a threadbare recitation of these elements with little more. *See* R. 74 ¶¶ 125–29. Plaintiffs allege "[t]here was a contract between Plaintiffs and the class and Bendix, Paccar, and Navistar to provide power units with properly functioning FCA systems" but in the next sentence refer to "[Defendants] breach[ing] their contracts" in the plural. *Id.* ¶¶ 127–28; *see also* R. 93 at 12–14 (referring repeatedly to "contracts"). This inconsistency sows confusion as to how many contracts exist and between whom as a threshold matter. The Court is left to speculate whether there is one contract or multiple, or contracts between one plaintiff and multiple defendants. Without more clarity, the Court is unable to infer the

---

[2] The Court already granted Paccar's motion to dismiss Count I on other grounds. *See supra* I.a.

existence of any valid or enforceable contract the parties, jointly or separately, entered into.

Beyond the dearth of information regarding the number of contracts or the specific parties thereto, Defendants argue Plaintiffs rely on the "rote recitation" of the other elements as well. *See, e.g.*, R. 95 at 4–5. Plaintiffs provide no factual allegations pertaining to the type of contract, the contract formation, or what the contract covered. Plaintiffs do not allege their own substantial performance. *See Reserve Hotels Pty Ltd. v. Mavrakis*, 790 F.3d 738, 740 (7th Cir. 2015) ("Under Illinois law, a 'party cannot sue for breach of contract without alleging . . . that he has himself substantially complied with all the material terms of the agreement.'" (citations omitted)). While it's true that substantial performance is a question of fact, as Plaintiffs argue, R. 93 at 14, the *allegation* of substantial performance still needs to be made. *Mavrakis*, 790 F.3d at 740 ("[A]t the pleadings stage, the issue is not whether [plaintiff] substantially performed, but whether he has pleaded substantial performance."); *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 723–24 (N.D. Ill. 2021) (dismissing a breach of contract claim because plaintiff did not "allege any facts that identify what its obligations under the contract were or how it complied with such obligations"). And Plaintiffs do not include any of the contract's terms nor allege which of them was breached. *See Sevugan*, 931 F.3d at 614 ("A breach of contract claim requires an identifiable breach of a contract term."); *see also CooLab Foods, LLC v. Creamalicious, Inc.*, 669 F. Supp. 3d 696, 702–03 (N.D. Ill. 2023) (dismissing a breach of contract claim despite allegations that the products

13

were defective because plaintiff did not identify specific contract terms that defendant failed to satisfy). Therefore, the Court cannot reasonably infer the existence of a valid and enforceable contract that was breached. The Court grants the Defendants' motions to dismiss Count II.

III.     Warranties

Defendants argue that Plaintiffs' three warranty claims (Counts III–V) should be dismissed because Plaintiffs did not provide pre-suit notice. In response, Plaintiffs argue that Defendants' actual knowledge of the defects prior to the lawsuit negates the need for pre-suit notice.

A plaintiff pursuing a breach of warranty claim must give the seller notice of the claimed breach or be barred from recovery. U.C.C. § 2-607; 810 ILCS 5/2-607(3)(a). This notice requirement is intended to encourage pre-suit settlement negotiations. U.C.C. § 2-607 cmt. 4; *Reyes v. McDonald's Corp.*, No. 06 C 1604, 2006 WL 3252579, at *3 (N.D. Ill. Nov. 8, 2006). Pre-suit notice is subject to two exceptions: (1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff suffers a personal injury and files a lawsuit against the seller with a breach of warranty action. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 492, 495 (1996).

Plaintiffs argue that Defendants had actual knowledge of defects in the FCA Systems based on: (1) product testing in 2015; (2) the NHTSA recall in 2024; and (3) ongoing litigation in the Southern District of Illinois. *See* R. 93 at 16–18. Taking each of these in turn, product testing that reveals defects in an entire product line does not

14

establish actual notice. In *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482 (1996), despite it being "uncontroverted" that defendant, a vehicle manufacturer, was aware of a defect causing a safety risk with its vehicles, the Illinois Supreme Court declined to find the actual knowledge exception was satisfied as to the class of plaintiffs because "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the *particular* product purchased by a *particular* buyer." *Id.* at 493–94 (emphasis added); *see also Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565 at *1, 6 (N.D. Ill. Sept. 6, 2017) (finding insufficient plaintiff's allegations that a food manufacturing company "deliberately made false or misleading statements while advertising [a] product" despite knowing definitively from a study it conducted that the statements were false because it did not give defendant notice that "*this particular transaction* is troublesome" (quoting *Connick*, 174 Ill. 2d at 493)). Following *Connick*, this Court discussed the few cases in which actual knowledge was found based on product testing that revealed defects in every product in a production line and "declined to follow these decisions, finding them either inconsistent with or completely contrary to Illinois law." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1055 (N.D. Ill. 2022). Thus, despite allegations that Navistar and Bendix had knowledge of deficiencies in the FCA Systems following product testing, Plaintiffs cannot support that they had pre-suit notice as to the *particular* trucks bought by these *particular* Plaintiffs. *See Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 971 (N.D. Ill. 2025) ("It's the difference between telling a

15

manufacturer that a certain type of vehicle has problems, and telling a manufacturer that Bob's vehicle has a problem.").

Similarly, a recall is insufficient to provide actual notice because it "does not constitute an admission of a defect in a particular product but merely acknowledges the possibility of a defect in a certain class of products." *Horan v. Ford Motor Co.*, No. 21 CV 01116, 2026 WL 395630, at *4 (N.D. Ill. Feb. 12, 2026).

Last, the litigation in the Southern District of Illinois also does not provide actual notice as to the *particular* trucks bought by these *particular* Plaintiffs. That case, *Lewis v. Hirschbach Motor Lines*, S.D.Ill Case 3:20-cv-01355-JPG, involves two plaintiffs who sued Hirschbach for negligence after being rear-ended by trucks driven by Hirschbach employees. *See* R. 98 at 4. Hirschbach then filed a third-party complaint against Navistar and Bendix alleging negligence and strict tort liability, not breach of any warranties. *Id.* at 4–5. At most, *Lewis* could provide Navistar and Bendix with notice there was an issue with those two Hirschbach trucks, but to meet the exception Hirschbach would "need[] to do more than simply inform the seller of the mechanical problems" it would "need[] to put the seller on notice that . . . the seller breached a warranty." *Gurrola*, 774 F. Supp. 3d at 971. Additionally, *Lewis* provides no notice to Paccar or between all the other Plaintiffs and Defendants. Accordingly, Plaintiffs have not adequately alleged that *Lewis* provides sufficient notice to any of the Defendants.

Plaintiffs alternatively argue that *Lewis* fulfills the second notice exception, which occurs when a consumer plaintiff suffers a personal injury and files a complaint

16

stating a breach of warranty action against the seller. *Connick*, 174 Ill. 2d at 495. But the plaintiffs in *Lewis* were not consumers who filed breach of warranty suits against a seller, they were individuals who were rear-ended by trucks. *See* R. 98 at 4. And regardless, *Lewis* is a separate lawsuit, so even if it qualified under the second exception, that would not apply here. *See Connick*, 174 Ill. 2d at 494–95.

Plaintiffs further argue, relying on *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935 (1998), that notice is a question of fact requiring the Court to deny the motions to dismiss. However, "the sufficiency of notice is not an issue if plaintiffs do not allege notice in the first place." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020) (citations omitted) (finding that because plaintiff did not allege he contacted defendant or otherwise provided pre-suit notice, plaintiff has not identified any questions of fact that need to be determined by the court). Plaintiffs here concede they did not provide pre-suit notice. R. 93 at 16. And as just discussed, even taking all well-pleaded facts as true as the Court must at this stage, Plaintiffs' allegations regarding actual notice are insufficient to survive a motion to dismiss.

Accordingly, the Court grants Defendants' motions to dismiss as to Counts III, IV, and V. Because the Court is granting Defendants' motions to dismiss these counts based on lack of pre-suit notice, it is unnecessary at this time to consider Defendants' other arguments regarding the sufficiency of the pleadings as to the warranties.

17

## Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss. The complaint is dismissed without prejudice.[3] Plaintiffs may file an amended complaint by April 21, 2026 if they believe they can cure the deficiencies identified herein.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: March 30, 2026

---

[3] Defendants argue that the dismissal should be with prejudice because Plaintiffs have already once amended their complaint. But that amendment was filed after the Defendants agreed to give Plaintiffs leave to file an amended complaint. The Court will allow Plaintiffs an opportunity to amend their complaint consistent with this order.