**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HIRSCHBACH MOTOR LINES, INC., | ) | Case No.: 1:24-cv-11979 |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | Hon. Thomas M. Durkin |
| | ) | |
| NAVISTAR, INC. n/k/a INTERNATIONAL | ) | |
| MOTORS, LLC, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**COUNTER-DEFENDANT HIRSCHBACH MOTOR LINES, INC.'S AMENDED
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO COUNTER-
PLAINTIFF INTERNATIONAL MOTORS, LLC'S COUNTERCLAIM**

Counter-Defendant Hirschbach Motor Lines, Inc. ("Hirschbach"), by and through its undersigned counsel, and for its Amended Answer, Affirmative Defenses, and Counterclaim to the Counterclaim of Counter-Plaintiff International Motors, LLC, f/k/a Navistar, Inc. ("Navistar"), states as follows:

**AFFIRMATIVE DEFENSES**

Without admitting the facts alleged in the counterclaims, Hirschbach asserts the following defenses without prejudicing its right to argue that Navistar bears the burden of proof as to any of these defenses. Hirschbach pleads these defenses in the alternative. These defenses are not admissions. Nor are they waivers of any relief Hirschbach seeks. Hirschbach may have additional affirmative defenses of which it is not fully aware and reserves its right to assert additional defenses after they are ascertained.

**First Defense**

Navistar waived the counterclaims it makes here.

1

**Second Defense**

Navistar is estopped from making these counterclaims.

**Third Defense**

Navistar fails to state a claim for which relief may be granted.

**Fourth Defense**

**(Fraud in the Inducement)**

1. To the extent the Court construes the MaxxForce Settlement Agreement and Mutual Release (the "MaxxForce Settlement Agreement") to release, bar, or otherwise reach Hirschbach's claims arising from the Bendix Wingman Fusion System (the "Fusion System"), the MaxxForce Settlement Agreement is unenforceable as to those claims because Navistar procured it by fraud in the inducement.

2. The MaxxForce Settlement Agreement, which by its terms has a contractual Effective Date of December 30, 2020, resolved Hirschbach's claims in Hirschbach Motor Lines, Inc. v. Navistar, Inc., No. 20-cv-1031-LTS (N.D. Iowa) (the "Iowa Lawsuit"), which concerned engine defects, including brake failures leading to fires and engine problems associated with the MaxxForce engine. The Fusion System is a frontal crash avoidance and mitigation system; it is a distinct product, involving distinct components, distinct defects, and distinct representations, and was not the subject of the Iowa Lawsuit.

3. At the time the parties negotiated and executed the MaxxForce Settlement Agreement, Navistar possessed superior and exclusive knowledge, unavailable to Hirschbach, that Navistar and Bendix Commercial Vehicle Systems LLC ("Bendix") had, since no later than 2015, engaged in an active, ongoing conspiracy to fraudulently conceal the known defects

2

of the Fusion System and to misrepresent the Fusion System's performance and limitations to motor carrier customers, including Hirschbach.

4. During the negotiation of the MaxxForce Settlement Agreement, Hirschbach expressly notified Navistar of its intent to pursue a claim against Navistar and Bendix related to the Fusion System failing to perform as represented on the Hirschbach power unit operated by Eric Campbell in the crash occurring on December 13, 2020 that led to the SDIL litigation. Navistar possessed superior knowledge of the active Fusion conspiracy, had a duty to disclose it, and said nothing. Navistar did not disclose the Fusion conspiracy, did not disclose the known Fusion defects, did not disclose its own participation in the concealment, and did not disclose that it would later assert the MaxxForce agreement as a bar to Hirschbach's claims related to the Fusion system's defects and Navistar's fraudulent concealment of those defects.

5. Navistar's concealment was material. Had Navistar disclosed the active Fusion conspiracy and the known Fusion defects, Hirschbach would not have executed a general release that Navistar could later assert as a bar to Hirschbach's Fusion claims and would have insisted that any such claims be preserved explicitly in the agreement, as other claims were expressly preserved in Sections 4, 5, and 6 of the MaxxForce agreement.

6. Navistar concealed these material facts with the intent that Hirschbach would rely upon Navistar's silence and execute the MaxxForce agreement, and Hirschbach did execute the agreement without knowledge of the concealed Fusion conspiracy.

7. The MaxxForce agreement's integration, no-inducement, and non-reliance provisions do not bar this defense. A party cannot invoke a contractual disclaimer of reliance to shield its own fraudulent concealment of the very facts it had a duty to disclose, nor can a release of

3

"unknown" claims operate to release claims that the releasee fraudulently concealed from the releasor at the time of execution.

8. Hirschbach did not discover, and in the exercise of reasonable diligence could not have discovered, the concealed Fusion defects and conspiracy until January 2024, when expert testing in separate litigation first revealed the Fusion System's speed-dependent performance failures.

9. Because the MaxxForce agreement was procured by fraud in the inducement, it does not bar, release, or otherwise reach Hirschbach's Fusion claims, and provides no basis for Navistar's counterclaims.

## ANSWER

Answering the correspondingly numbered paragraphs of Navistar's Counterclaim, Hirschbach states as follows:

## NATURE OF THE CASE

1. Hirschbach admits that Exhibit 1 to the counterclaim is a "Settlement Agreement and Mutual Release." Hirschbach denies the remaining allegations in paragraph 1.

2. Hirschbach denies the allegations in paragraph 2.

3. Hirschbach denies the allegations in paragraph 3.

4. Hirschbach denies the allegations in paragraph 4.

5. Hirschbach denies the allegations in paragraph 5.

6. Hirschbach denies the allegations in paragraph 6.

7. Hirschbach denies the allegations in paragraph 7.

8. Hirschbach denies the allegations in paragraph 8.

9. Hirschbach denies the allegations in paragraph 9.

10.  Hirschbach admits that Navistar seeks money damages, attorneys' fees and costs, and other relief. Hirschbach denies Navistar is entitled to the relief it seeks and denies the remaining allegations in paragraph 10.

## THE PARTIES

11.  Hirschbach admits the allegations in paragraph 11.

12.  Hirschbach admits the allegations in paragraph 12.

## JURISDICTION AND VENUE

13.  Hirschbach denies the allegations in paragraph 13.

14.  Hirschbach denies the allegations in paragraph 14.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
## THE SETTLEMENT AGREEMENT

15.  Hirschbach admits the allegations in paragraph 15.

16.  Hirschbach admits the allegations in paragraph 16.

17.  Hirschbach admits the allegations in paragraph 17.

18.  Hirschbach admits that it, along with Grojean Leasing, Inc. and GR Equipment Leasing, Inc., and Navistar executed a Settlement Agreement and Mutual Release in December 2020. Hirschbach states that the MaxxForce Settlement Agreement speaks for itself and that, by its terms, it has a contractual Effective Date of December 30, 2020. Hirschbach denies any allegation in paragraph 18 inconsistent with the terms of the MaxxForce Settlement Agreement, including any allegation that the Effective Date is December 24, 2020.

19.  Hirschbach admits the allegations in paragraph 19.

20.  Hirschbach denies the allegations in paragraph 20.

21. Hirschbach admits that Exhibit 1 contains the quoted language. Hirschbach denies that any of the quoted language is emphasized. Hirschbach denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 21.

22. Hirschbach admits that Exhibit 1 contains the quoted language. Hirschbach denies that any of the quoted language is emphasized. Hirschbach denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 22.

23. Hirschbach admits that Exhibit 1 contains the quoted language defining "Trucks." Hirschbach states that the MaxxForce Settlement Agreement speaks for itself and that its contractual Effective Date is December 30, 2020. Hirschbach denies any allegation in paragraph 23 inconsistent with the terms of the MaxxForce Settlement Agreement, including any allegation that the Effective Date is December 24, 2020, and denies the remaining allegations in paragraph 23.

24. Hirschbach denies the allegations in paragraph 24.

25. Hirschbach denies the allegations in paragraph 25.

26. Hirschbach admits that Exhibit 1 contains the quoted language but denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 26.

27. Hirschbach admits that Exhibit 1 contains the quoted language but denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 27.

28. Hirschbach admits that Exhibit 1 contains the quoted language but denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 28.

29. Hirschbach admits that Exhibit 1 contains the quoted language. Hirschbach denies that any of the quoted language is emphasized. Hirschbach denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 29.

30. Hirschbach admits that Exhibit 1 contains the quoted language but denies that Exhibit 1 means what Navistar claims it means. Hirschbach denies the remaining allegations in paragraph 30.

31. Hirschbach denies the allegations in paragraph 31.

**THE S.D. ILLINOIS THIRD-PARTY COMPLAINT BREACHED THE SETTLEMENT AGREEMENT[1]**

32. Hirschbach admits the allegations in paragraph 32.

33. Hirschbach admits the allegations in paragraph 33.

34. Hirschbach admits the allegations in paragraph 34.

35. Hirschbach admits the allegations in paragraph 35.

36. Hirschbach admits the allegations in paragraph 36.

37. Hirschbach admits the allegations in paragraph 37.

38. Hirschbach denies the allegations in paragraph 38.

39. Hirschbach denies the allegations in paragraph 39.

40. Hirschbach denies the allegations in paragraph 40.

41. Hirschbach denies the allegations in paragraph 41.

42. Hirschbach denies the allegations in paragraph 42.

43. Hirschbach denies the allegations in paragraph 43.

44. Hirschbach denies the allegations in paragraph 44.

---

[1] Hirschbach denies that the S.D. Illinois third-party complaint breached the settlement agreement. This header is included here only because it was included in the counterclaim. This claim is transferred to the SDIL by the Court's prior ruling.

**THE INSTANT CLASS ACTION LAWSUIT BREACHES THE SETTLEMENT AGREEMENT**[2]

45.    Hirschbach admits the allegations in paragraph 45.

46.    Hirschbach denies the allegations in paragraph 46.

47.    Hirschbach denies the allegations in paragraph 47 because it is an incomplete statement of the claims and issues in this case.

48.    Hirschbach denies the allegations in paragraph 48 because they incorrectly list the claims in this case.

49.    Hirschbach denies the allegations in paragraph 49.

50.    Hirschbach denies the allegations in paragraph 50.

51.    Hirschbach denies the allegations in paragraph 51.

**COUNT I**

**BREACH OF CONTRACT**

*(Against Hirschbach for its Third-Party Complaint in the S.D. Ill. Action)*

*(Sections 3 and 19 of the Settlement Agreement and Mutual Release)*

Count I of Navistar's Counterclaim, together with the allegations in paragraphs 52 through 60 specific to that Count, was severed and transferred to the United States District Court for the Southern District of Illinois by this Court's Order of April 13, 2026 (ECF No. 108). Count I is therefore no longer pending before this Court, and no response to Count I is required in this action. Hirschbach will respond to Count I in the transferee court. To the extent any response is deemed required here, Hirschbach denies the allegations of Count I, including paragraphs 52 through 60, and denies that it is liable to Navistar thereon.

---

[2] Hirschbach denies that the instant class action lawsuit breaches the settlement agreement. This header is included here only because it was included in the counterclaim.

## COUNT II

## BREACH OF CONTRACT

*(Against Hirschbach for its Class Action Complaint in the Instant Action)*
*(Sections 3 and 19 of the Settlement Agreement and Mutual Release)*

52. Answering paragraph 61, Hirschbach incorporates by reference its answers to paragraphs 1 through 51 as though fully set forth herein, and states that paragraphs 52 through 60 of the counterclaim pertain to Count I, which has been severed and transferred to the Southern District of Illinois and to which no response is required in this action.

53. Hirschbach denies the allegations in paragraph 62.

54. Hirschbach denies the allegations in paragraph 63.

55. Hirschbach denies the allegations in paragraph 64.

56. Hirschbach denies the allegations in paragraph 65.

57. Hirschbach denies the allegations in paragraph 66.

58. Hirschbach denies the allegations in paragraph 67.

59. Hirschbach denies the allegations in paragraph 68.

60. Hirschbach denies the allegations in paragraph 69.

WHEREFORE, Hirschbach prays for judgment in its favor on Count II.

## RESPONSE TO PRAYER FOR RELIEF

Hirschbach denies that Navistar is entitled to any of the relief requested in its Prayer for Relief, including subparagraphs (a) through (e), and denies each and every allegation in Navistar's Counterclaim not expressly admitted herein.

9

**COUNTERCLAIM OF HIRSCHBACH MOTOR LINES, INC. AGAINST NAVISTAR, INC. n/k/a INTERNATIONAL MOTORS, LLC**

Counter-Defendant Hirschbach Motor Lines, Inc. ("Hirschbach"), by and through its undersigned counsel, and for its Counterclaim against Counter-Plaintiff Navistar, Inc., n/k/a International Motors, LLC ("Navistar"), states as follows:

### NATURE OF THE COUNTERCLAIM

1. This Counterclaim arises from Navistar's fraudulent inducement of the MaxxForce Settlement Agreement and Mutual Release (the "MaxxForce Settlement Agreement") upon which Navistar's own counterclaims depend. Navistar has taken the position that the MaxxForce Settlement Agreement bars Hirschbach's claims arising from damages suffered because of the defective Bendix Wingman Fusion System (the "Fusion System"). To the extent the Court agrees with Navistar and construes the MaxxForce Settlement Agreement to reach Hirschbach's Fusion claims, then Navistar procured that agreement by fraud.

2. The MaxxForce Settlement Agreement resolved an entirely different dispute — Hirschbach's claims concerning engine defects, including brake failures leading to fires and engine problems associated with Navistar's MaxxForce engines. At the time the parties negotiated that engine settlement, Navistar had known since at least April of 2015, but concealed, that it and Bendix Commercial Vehicle Systems LLC ("Bendix") were engaged in an active, ongoing conspiracy to conceal the known defects of the Fusion System and to misrepresent the Fusion System's capabilities to motor carriers, including Hirschbach.

3. Hirschbach expressly notified Navistar, during the very negotiations that resulted in the MaxxForce agreement, of its intent to seek contribution from Navistar and Bendix, under

strict liability and negligence theories, arising from the failure of a single Fusion System to perform as represented in a catastrophic crash that occurred on December 13, 2020, which notice concerned that single crash and that single Fusion System only. Navistar — sitting on years of undisclosed knowledge of the systemic Fusion defects and the Fusion conspiracy, and its own role in it — said nothing. Navistar concealed the Fusion conspiracy, concealed the known Fusion defects, and concealed that it intended to later wield the MaxxForce general release to extinguish the very Fusion claims of which Hirschbach had just given notice.

4.      Navistar's concealment worked exactly as intended. Hirschbach executed the MaxxForce release without knowledge of the active fraud Navistar was concealing, and did not discover that fraud until January 2024, when expert testing in separate litigation first revealed the Fusion System's speed-dependent performance failures.

5.      Hirschbach affirms the bargain it actually intended to strike — the resolution of its MaxxForce engine claims — and does not seek to unwind that settlement. Hirschbach instead elects to recover the damages proximately caused by Navistar's fraudulent inducement: the Fusion damages that Navistar's fraudulently procured release would strip away if enforced arising from the fraudulent concealment of the Fusion defects and the civil conspiracy to commit fraud engaged in by at least Navistar and Bendix as set out in the pleading attached hereto as Exhibit A, filed under seal. Navistar cannot be permitted to use a release obtained by fraud as both a shield against liability and a sword to extinguish the claims it fraudulently concealed.

**THE PARTIES**

11

6. Counter-Defendant Hirschbach Motor Lines, Inc. is a corporation organized under the laws of the State of Iowa, with its principal place of business in the State of Iowa.

7. Counter-Plaintiff Navistar, Inc., n/k/a International Motors, LLC, is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Illinois, in DuPage County. Navistar underwent a corporate reorganization and name change to International Motors, LLC effective October 1, 2024.

## JURISDICTION AND VENUE

8. This Counterclaim arises out of the same MaxxForce Settlement Agreement and the same transaction or occurrence as Navistar's Counterclaim, is compulsory under Federal Rule of Civil Procedure 13(a), and is within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

9. Venue is proper in this Court. Hirschbach originally selected this forum and submitted to its venue by filing the underlying class action complaint here naming Navistar as a defendant, and Navistar submitted to the venue of this Court by answering and asserting its own Counterclaim here. In addition, a substantial part of the events giving rise to this Counterclaim, including the negotiation and performance of the MaxxForce Settlement Agreement and Navistar's assertion of that agreement as a bar, occurred in or are directed to this district.

## FACTUAL ALLEGATIONS
### A. THE FUSION SYSTEM AND THE UNDISCLOSED FUSION CONSPIRACY

10. The Fusion System is a frontal crash avoidance and mitigation ("FCA") system developed by Bendix and installed as original equipment on power units manufactured and sold by

Navistar. Navistar considered the Fusion System an "off the shelf" product supplied by Bendix.

11. Prior to the launch of the Wingman Fusion System 1.0 in May 2015, Navistar and Bendix had actual knowledge that the Fusion System suffered from material, undisclosed defects, limitations, and unresolved issues, including that the system's camera, chipset, and image-identification algorithm were collectively incapable of detecting numerous common vehicle types and combinations, and that without such detection the system would provide no Stationary Vehicle Braking or Stationary Object Alert.

12. On April 24, 2015, approximately three weeks before launch, Bendix and Navistar senior management held a "go/no go" meeting concerning the Fusion System. At that time, Navistar's own internal documents still classified the camera-detection issue as a severe risk, and Bendix had told Navistar that only an upgraded camera could resolve the issue. Bendix nonetheless recommended launching on time with existing functionality, and Bendix and Navistar conditionally approved the on-time launch of the Fusion System with actual knowledge that the camera would not recognize entire categories of vehicles on America's roadways and would therefore provide no safety-related alerts or braking in those circumstances.

13. From the go/no go meeting forward, Navistar and Bendix agreed to market the Fusion System to their mutual customers with known defects, to conceal those defects, and to misrepresent the Fusion System's capabilities, all to increase their profits and to capture market share in the emerging FCA market.

14. Pursuant to that agreement, Navistar agreed to allow Bendix to control the marketing of the Fusion System to their mutual customers, agreed to use only the marketing materials

13

and information Bendix provided, and republished and adopted Bendix's representations concerning the Fusion System as its own, under Navistar branding, beginning in May 2015.

15. Navistar and Bendix carried this concealment forward through the launch of the Wingman Fusion System 2.0, which Navistar agreed to implement in its power units without any material fix to the known defects of Fusion 1.0, and which suffered from the same or substantially the same detection, alert, and braking failures at highway speeds.

16. At all relevant times, the true facts concerning the Fusion System's defects and the Navistar-Bendix conspiracy to conceal them were within Navistar's superior and exclusive knowledge and were not discoverable by Hirschbach through the exercise of reasonable commercial diligence.

## B. THE MAXXFORCE LITIGATION AND THE SETTLEMENT NEGOTIATIONS

17. On August 21, 2020, Hirschbach filed a complaint against Navistar in the United States District Court for the Northern District of Iowa, styled *Hirschbach Motor Lines, Inc. v. Navistar, Inc*., No. 20-cv-1031-LTS (the "Iowa Lawsuit"). The Iowa Lawsuit concerned engine defects, including brake failures leading to fires and engine problems associated with Navistar's MaxxForce engines. The Iowa Lawsuit did not concern the Fusion System.

18. In the fall of 2020, Hirschbach and Navistar began negotiating a resolution of the Iowa Lawsuit.

19. In early December of 2020, while those negotiations were ongoing, Hirschbach provided Navistar with notice of its intent to seek contribution from Navistar and Bendix, under strict liability and negligence theories, arising from the failure of a single Fusion System to perform as represented in a single catastrophic crash that occurred on December 13, 2020. Hirschbach's notice concerned that one crash and that one system; Hirschbach did

not then know, and did not represent, that the Fusion System suffered from a systemic or market-wide defect or that Navistar and Bendix were engaged in a conspiracy to fraudulently conceal the Fusion defects. The notice in question concerned the crash that later became the basis of Hirschbach's third-party complaint in the litigation currently pending in the Southern District of Illinois.

20. At the time Hirschbach provided that notice, Navistar possessed actual knowledge of the Fusion System's known defects and of the active, ongoing Navistar-Bendix conspiracy to conceal those defects, as set forth above. Navistar knew that Hirschbach did not possess that knowledge and was negotiating without it.

21. After receiving Hirschbach's notice of its intent to sue over the Fusion System, Navistar made no further mention of that notice. Navistar did not disclose the Fusion defects. Navistar did not disclose the Navistar-Bendix conspiracy. Navistar did not disclose its own participation in concealing the Fusion defects from Hirschbach and the motor carrier market. And Navistar did not assert, suggest, or otherwise disclose that Navistar believed or intended that the settlement of the separate MaxxForce engine litigation would bar Hirschbach's Fusion claims.

22. Navistar's silence was not inadvertent. Navistar deliberately withheld the existence of the active Fusion conspiracy so that Hirschbach would execute a general release that Navistar could later assert to extinguish the very Fusion claims of which Hirschbach had given notice.

## C. THE MAXXFORCE SETTLEMENT AGREEMENT AND NAVISTAR'S DELIBERATE OMISSIONS

23. Hirschbach and Navistar executed the MaxxForce Settlement Agreement, which resolved the Iowa Lawsuit and which, by its terms, has a contractual Effective Date of December 30, 2020 (the "Effective Date").

24. The recitals of the MaxxForce Settlement Agreement tie the agreement to the Iowa Lawsuit and to Hirschbach's claims "related to certain of the Trucks" at issue in that engine litigation.

25. The MaxxForce Settlement Agreement demonstrates that the parties knew how to preserve particular claims from the scope of the release when they intended to do so. In Sections 4, 5, and 6, the parties expressly preserved Hirschbach's claims arising from future repair obligations, claims arising from future truck fires, and Hirschbach's claim in the MaxxForce engines class settlement, respectively.

26. Despite Hirschbach's notice of its intent to sue over the Fusion System, the MaxxForce Settlement Agreement contains no carve-out, reservation, or mention of the Fusion System, the Fusion claims, or the FCA systems installed on Hirschbach's power units. Navistar's concealment of the active Fusion conspiracy is the reason no such carve-out was negotiated: Hirschbach did not know there was a Fusion fraud to preserve a claim against, and Navistar deliberately kept it that way. Further, having received notice of the separate litigation, Navistar did not seek to explicitly include that separate claim in the release.

27. Had Navistar disclosed the active Fusion conspiracy and the known Fusion defects, Hirschbach would not have executed a general release capable of being asserted to bar its Fusion claims and would have insisted upon an express preservation of those claims, as it did with respect to the claims preserved in Sections 4, 5, and 6.

16

28.     The facts Navistar concealed were material. The existence of an active, ongoing fraud by one's settlement counterparty concerning a separate, valuable line of claims is information a reasonable party would consider important in deciding whether and on what terms to grant a general release.

29.     Navistar concealed these material facts with the intent that Hirschbach would rely on Navistar's silence and execute the MaxxForce agreement without preserving its Fusion claims. Hirschbach did so in ignorance of the concealed facts.

## D. NAVISTAR'S CONTINUING COURSE OF CONDUCT IS INCONSISTENT WITH ITS LITIGATION POSITION

30.     For more than four years after the MaxxForce agreement was executed, and while Hirschbach litigated the Fusion-related third-party claim against Navistar in the Southern District of Illinois, Navistar never asserted that the MaxxForce engine settlement barred Hirschbach's Fusion claims.

31.     Since the MaxxForce agreement was executed, Navistar has performed over 199,000 discrete warranty services for Hirschbach power units that were part of Hirschbach's fleet at the time of the settlement — conduct directly contrary to the litigation position Navistar now advances, that its obligations as to those power units were extinguished by the MaxxForce agreement.

32.     Only after expert testing revealed the Fusion System's defects, and after Hirschbach and its affiliates pursued their Fusion claims in this Court, did Navistar assert the MaxxForce engine settlement as a bar — precisely the outcome Navistar's concealment during the 2020 negotiations was designed to achieve.

## E. DISCOVERY OF THE FRAUD

17

33. Hirschbach did not discover, and in the exercise of reasonable diligence could not have discovered, the concealed Fusion defects and the Navistar-Bendix conspiracy until January 2024, when expert testing conducted in separate litigation first revealed that the Fusion System fails to respond to in-path vehicles and stationary objects at highway speeds.

34. Until that discovery, Hirschbach had no reason to know that Navistar had concealed an active Fusion fraud during the 2020 settlement negotiations, and no reason to know that the general release could be, or would be, asserted against claims arising from that concealed fraud.

## COUNT I
## FRAUD IN THE INDUCEMENT
### *(By Fraudulent Concealment — Under Iowa or Illinois Law)*

35. Hirschbach incorporates by reference each of the preceding paragraphs as though fully set forth herein.

36. This Count is pleaded in the alternative, and is triggered only to the extent the Court construes the MaxxForce Settlement Agreement to release, bar, or otherwise reach Hirschbach's claims arising from the Fusion System. Hirschbach's claim is valid and affords a remedy under the law of Iowa or the law of Illinois, each of which recognizes a claim for fraud in the inducement premised on the fraudulent concealment of material facts by a party with superior knowledge and a duty to disclose.

37. At the time of the negotiation and execution of the MaxxForce Settlement Agreement, Navistar concealed and failed to disclose material facts, including: (a) that the Fusion System suffered from known, undisclosed defects; (b) that Navistar and Bendix were engaged in an active, ongoing conspiracy to conceal those defects and to misrepresent the Fusion System's capabilities to motor carriers, including Hirschbach; (c) that Navistar had

participated in and profited from that concealment; and (d) that Navistar intended to assert the general release to bar the very Fusion claims of which Hirschbach had given notice.

38.  Navistar had a duty to disclose these facts. Navistar possessed superior and exclusive knowledge of the Fusion conspiracy that was not reasonably available to Hirschbach; Hirschbach placed Navistar on direct notice of its intent to pursue Fusion claims, thereby making manifest that Hirschbach was negotiating the release under a lack of knowledge that Navistar alone could correct; and Navistar undertook to obtain a general release while knowing that Hirschbach was contracting in ignorance of material facts Navistar was actively concealing.

39.  The facts Navistar concealed were material, as alleged above.

40.  Navistar concealed these material facts intentionally and with the intent that Hirschbach would rely upon Navistar's silence by executing the MaxxForce agreement and by failing to preserve its Fusion claims from the scope of the release.

41.  Hirschbach was ignorant of the concealed facts and had no reasonable means of discovering them. In reliance upon the state of affairs Navistar's concealment created, Hirschbach executed the MaxxForce agreement without preserving its Fusion claims.

42.  Navistar's integration, no-inducement, and non-reliance provisions in the MaxxForce agreement do not bar this claim. Those provisions disclaim reliance upon representations; they do not and cannot immunize Navistar's fraudulent concealment of material facts it had a duty to disclose. Likewise, the release of "unknown" claims cannot operate to release claims that Navistar fraudulently concealed from Hirschbach at the time of execution, because a party cannot knowingly and voluntarily release claims whose factual predicate the counterparty is actively hiding.

19

43. Hirschbach affirms the MaxxForce Settlement Agreement to the extent it resolved the MaxxForce engine claims that Hirschbach actually intended to settle and does not seek to rescind or unwind that settlement. Hirschbach elects instead to recover the damages proximately caused by Navistar's fraud in the inducement, measured by the Fusion recovery that the MaxxForce agreement would bar if the Court construes it to reach Hirschbach's Fusion claims.

44. To prove the scope of the Navistar-Bendix fraudulent conspiracy, Hirschbach incorporates by reference the contents of its Second Amended Complaint, attached hereto as Exhibit A to this complaint, and filed under seal. To the extent that Navistar objects to this incorporation by reference, Hirschbach requests leave to supplement this pleading with the additional facts pled from the Second Amended Complaint.

45. As a direct and proximate result of Navistar's fraudulent concealment, and in the event and to the extent the MaxxForce agreement is construed to bar Hirschbach's Fusion claims, Navistar's fraudulent inducement is a proximate cause of Hirschbach's damages and Navistar is liable for those damages. Hirschbach has been damaged in the amount of the Fusion recovery so barred, including:

 a. the amounts Hirschbach overpaid for defective Fusion-equipped power units;

 b. the costs of retrofitting Hirschbach's power units with safer alternative products;

 c. the costs of defending claims involving high-speed rear-end collisions into stopped or slow-moving in-path vehicles caused by the failure of the Fusion System to perform as represented;

 d. out-of-pocket payments for casualty losses associated with such crashes;

     e.      out-of-pocket payments for self-insured retention, self-insurance, deductibles, and attorneys' fees and costs of litigation arising out of such crashes; and

     f.      Hirschbach's increased cost of, and impaired access to, adequate insurance coverage as a result of such crashes.

46. Navistar's concealment was intentional, deliberate, and undertaken with knowledge of its falsity and with the purpose of depriving Hirschbach of valuable claims, such that Hirschbach is also entitled to an award of punitive or exemplary damages to the fullest extent permitted by law.

**WHEREFORE**, Counter-Plaintiff Hirschbach Motor Lines, Inc. respectfully requests that the Court enter judgment in its favor and against Counter-Defendant Navistar, Inc., n/k/a International Motors, LLC, on this Counterclaim, and award: (i) compensatory damages in an amount to be proven at trial, measured by the Fusion recovery barred by the MaxxForce agreement; (ii) punitive or exemplary damages to the fullest extent permitted by law; (iii) Hirschbach's costs and, to the extent permitted by law, attorneys' fees; and (iv) such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Hirschbach demands a trial by jury on all issues so triable.

                      Respectfully submitted,

                      */s/ Nick Wooten*

                      Nick Wooten
                      NICK WOOTEN, LLC
                      3125 Carlton Road
                      Cumming, GA 30041
                      (833) 937-6389
                      nick@nickwooten.com

21

*/s/ Matthew S. Hefflefinger*

*/s/ Devin M. Taseff*

Matthew S. Hefflefinger (ARDC No. 6201281)
Devin M. Taseff (ARDC No. 6333448)
CHARTWELL LAW
7707 N. Knoxville Avenue, Suite 201-A
Peoria, Illinois 61614
(309) 225-5560
mhefflefinger@chartwelllaw.com
dtaseff@chartwelllaw.com


Counsel for Plaintiff/Counter-Defendant
Hirschbach Motor Lines, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Nick Wooten*
Nick Wooten

22